**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-00671-RM-MJW

ISABEL VALVERDE;
MARIA SONIA MICOL SIMON; and those similarly situated,

Plaintiffs,

v.

XCLUSIVE STAFFING, INC; *ET AL.*,

Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT[1]**

---

Defendants Xclusive Staffing, Inc., Xclusive Management, LLC d/b/a Xclusive Staffing,

Xclusive Staffing of Colorado, LLC, (collectively, "Xclusive") Diane Astley, Omni Interlocken

Company, LLC, Omni Hotels Management Corporation, and Marriott International, Inc.,

(collectively "Defendants") submit the following Motion to Dismiss Plaintiffs' First Amended

Class and Collective Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6)[2] ("Motion"):

---

[1] Defendants simultaneously file a Motion to Compel Arbitration Plaintiff Simon's claims.  Defendants'
primary argument relating to Plaintiff Simon is that her claims should be arbitrated.  If the Court denies
Defendants' Motion to Compel, then Plaintiff Simon's claims should be dismissed for the same reasons
asserted in this Motion.  Further, if Defendants' Motion to Compel Plaintiff Simon's claims is granted,
the Court should still grant this Motion and dismiss Plaintiff Valverde's claims.

[2] One argument in this Motion relates to Plaintiffs' lack of standing to pursue class claims on behalf of
individuals outside of Colorado and who allegedly incurred injuries outside of Colorado and, therefore,
that portion is brought pursuant to Fed. R. Civ. P. 12(b)(1).

## COMPLIANCE WITH PRACTICE STANDARD IV.M.2.a.

On August 1, 2016, the undersigned counsel for Defendants conferred with Plaintiffs' counsel regarding the relief sought in this Motion.  Plaintiffs' counsel opposes this Motion.

## FACTUAL AND PROCEDURAL HISTORY

On March 22, 2016, Plaintiff Isabel Valverde, filed a Class and Collective Action Complaint ("Complaint") alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Fair Labor Standards Act ("FLSA"), various state wage laws, breach of contract, and various claims in equity.  Comp., pp. 22-26, [Doc. 1].  On May 27, 2016, Defendants filed an Answer and, on June 28, 2016, Defendants filed a Motion for Judgment on the Pleadings and a Motion to Stay Discovery.  [Docs. 36, 43, and 44].

On July 22, 2016, Plaintiffs filed an Amended Complaint.  [Doc. 52].  Plaintiffs' Amended Complaint adds one Plaintiff – Maria Sonia Micol Simon, two Defendants – IMIR DTC Operator, LLC, and HCA-HealthONE LLC, d/b/a Sky Ridge Medical Center, and two causes of action – Count VI: Failure to Provide 10 Minute Breaks Under Colorado Law and Count V: Illegal Deductions Under Colorado Law.  Amended Comp., [Doc. 52].  Plaintiffs continue to assert all of the claims on behalf of themselves and "all others similarly situated" pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b).  *Id.*  Plaintiffs' Amended Complaint is overreaching and asserts claims for which there is no factual or legal basis.

## ARGUMENT

**A.      Standard For Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6).**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court views the motion in the light most favorable to the nonmoving party and accepts all well-pleaded facts as true.  *Teigen v.*

*Reffrow,* 511 F.3d 1072, 1079 (10th Cir. 2007).   The facts alleged must be enough to state a claim for relief that is plausible, not merely speculative.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).   A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).   "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).   The court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

**B.**      **Plaintiffs Fail To State A RICO Claim.**

Plaintiffs assert a RICO claim on behalf of themselves and those in their proposed "Rule 23 RICO Class" against Defendant Astley.   Amended Comp., paras. 133 and 160-166.  Plaintiffs' RICO claim is founded on their allegation that there was a "common purpose of maintaining their business and attracting clients with the promise that Xclusive paid its workers in compliance with federal and state wage-and-hour law, even though Xclusive knew that its pay practices violated federal and state wage-and-hour law."  Amended Comp., para. 89.  Plaintiffs also claim the purported "RICO violations caused the Plaintiffs and those similarly situated to suffer loss of past, current, and prospective wages and to spend unpaid time working as opposed to pursuing other interests."   Amended Comp., para. 165, [Doc. 52].   Thus, according to Plaintiffs, the RICO class action claim is based on Defendants' alleged FLSA violations and failure to fully compensate them.  Plaintiffs' Amended RICO claim fails because (1) Plaintiffs

lack standing to bring a RICO claim; (2) Plaintiffs' RICO claim is preempted by the FLSA; and (3) Plaintiffs cannot prove the elements of the RICO claim.

> i.    <u>Plaintiffs lack standing to bring a RICO claim.</u>

In addition to the Article III constitutional and prudential requirements to establish standing, plaintiffs asserting a RICO claim must satisfy additional standing criteria set forth in 18 U.S.C. § 1964(c), which "are more rigorous than that of the Constitution." *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006). "In order for a private plaintiff to have standing to bring a RICO claim, he or she must sufficiently allege (1) one or more violations of § 1962; (2) an injury to 'business or property;' and (3) a causal connection - both factual and proximate - between the two." *Marlow v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 1328636, at *3 (D. Colo. May 12, 2009) (citing *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 265-68 (1992)). Plaintiffs are unable to satisfy these requirements.

> a.    *Plaintiffs' alleged injury is not based on a concrete financial loss.*

To sustain a claim under Section 1964(c), Plaintiffs' alleged injury must be based on "a concrete financial loss, and not merely injury to a valuable intangible property interest." *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1232 (D. Colo. 2010) (quoting *Maio v. Aetna, Inc.*, 221 F.3d 472 , 483 (3d Cir. 2000)). "The logical corollary to the rule that RICO injury must be concrete and tangible is that it cannot be speculative." *Ivar*, 705 F. Supp. 2d at 1235; *see also McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008) ("A plaintiff asserting a claim under 18 U.S.C. § 1964(c) must allege *actual*, quantifiable injury.") (emphasis in original); *Steele v. Hospital Corp. of America*, 36 F.3d 69, 70 (9th Cir. 1994) ("speculative injuries do not confer standing under RICO unless they become concrete and actual"). In other words, "[t]o

qualify as a 'concrete financial loss,' a plaintiff's injury cannot be speculative or contingent on future events.  Rather, it must be an ascertainable out-of-pocket loss." *FL Receivables Trust 2002-A v. Bagga*, 2005 WL 563535, at *3 (E.D. Pa. Mar. 8, 2005).

Plaintiffs' alleged injury supporting the RICO claim is wages they claim should have been paid for time worked.  Amended Comp., para. 165.  The only harm purportedly suffered by Plaintiffs and the putative class members is Defendants' alleged violation of "federal and state wage and hour law" and failure to pay certain wages and overtime.  *See* Amended Comp., paras. 122, 142, 144, and 165.  Plaintiffs simultaneously seek to recover the allegedly lost wages by prosecution of their RICO claim and also attempt to recover the same amounts by asserting claims for a violation of the FLSA and various state laws.[3]  Amend. Comp., paras. 167-190.  As a result, Plaintiffs cannot demonstrate a concrete financial loss to support the RICO claim unless and until they prevail on the FLSA and/or state wage claims.

If Plaintiffs prevail on the FLSA or state wage claims, they will have been fully compensated for the alleged wage violations and will have suffered no injury.  Thus, Plaintiffs' Amended Complaint creates a catch-22: they must prevail on the FLSA or state wage claims to demonstrate a concrete financial loss in support of the RICO claim, but, if they prevail on the FLSA or wage claims and are compensated for the alleged wage violations, then they will have

---

[3] In an effort to distort the fact that the RICO claim is simply a restated wage claim, Plaintiffs deleted the allegation in the original Complaint that, "the enterprises acted with a common purpose of violating state and federal wage and hour laws, and thus paying its employees less than legally required in order to capture more revenue and profit from the contracts with Xclusive's clients and more market share from its competitors in the temporary labor market."  Red-Lined Version of Amended Comp., para. 89, [Doc. 52-6] (noting the deletion of the above quoted statement).  Plaintiffs' attempts are unavailing.  Despite Plaintiffs' efforts, the Amended Complaint still makes it clear the RICO claim is based on alleged wage violations.  Indeed, all of the allegations supporting the purported racketeering activity stem from Xclusive's pay practices and statements regarding its pay practices.  *See* Amended Comp., paras. 89-131.

been made whole and will have no injury to confer RICO standing.  Either way, Plaintiffs have

not suffered a concrete financial loss and they lack standing to assert a RICO claim.

In *Bagga*, the plaintiff brought RICO claims against defendants alleging they had

fraudulently induced certain loans.  2005 WL 563535, at *1.  Plaintiff simultaneously also

brought an action to collect on the loans.  That action had yet to be resolved.  The *Bagga* court

concluded plaintiff's RICO claim was not ripe until the underlying collection action had been

concluded.  In so holding, the court stated, "Plaintiff's injury in this case - the money it lost due

to the borrowers' failure to honor the loan agreements - depends directly on the results of

Plaintiff's currently pending collection action.  To that extent, Plaintiff's injury does not confer

standing to bring a RICO claim."  2005 WL 563535, at *4.  Similarly, here, Plaintiffs' purported

injury is speculative and does not confer standing to bring a RICO claim.

Multiple other courts have similarly held that a plaintiff lacks standing to bring a RICO

claim when the injury depends on the success of another claim.  *See e.g., Lincoln House, Inc. v.*

*Dupre*, 903 F.2d 845 (1st Cir. 1990) (holding that plaintiff lacked standing to bring a RICO

claim based on defendants' attempts to conceal their assets because underlying breach of

contract claim was unresolved); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d

Cir. 1994) (lender lacks standing under RICO until it has foreclosed on all of its loans); *Walter v.*

*Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) ("RICO liability cannot

attach to future contingent damages."); *LaBarbara v. Angel*, 95 F. Supp. 2d 656, 663 (E.D. Tex.

2000) (holding that the plaintiffs lacked standing because the other litigation was still ongoing).

Plaintiffs' RICO claim is not based on *any* concrete financial loss and, therefore, must be

dismissed.

ii.     Plaintiffs' RICO claim is preempted by the FLSA.

It is a "well-established principle that, in most contexts, a precisely drawn, detailed statute pre-empts more general remedies." *Hinck v. United States*, 550 U.S. 501, 506 (2007). The purpose of the FLSA is "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Congress set forth a comprehensive remedial enforcement scheme to ensure compliance with the minimum wage and overtime requirements of the FLSA. By doing so, "Congress manifested a desire to exclusively define the private remedies available to redress violations of [the FLSA's] terms." *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1999);[4] *see also Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998) ("[T]he FLSA is the exclusive remedy for enforcement of rights created under the FLSA.").

Several circuit courts, including the Tenth Circuit, have held that the FLSA's broad remedial scheme is exclusive and can preclude parallel actions brought under federal and state law. *See e.g., Kendall*, 174 F.3d at 439; *Roman v. Maietta Constr., Inc.,* 147 F.3d 71, 76 (1st Cir. 1998); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997); *Armani v. Maxim Healthcare Services, Inc.*, 53 F. Supp. 2d 1120, 1132 (D. Colo. 1999).

In *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 515 (E.D.N.Y. 2011), the court applied the same logic in holding that the FLSA preempted the plaintiffs' RICO claim. Similar to what has been pled in this case, in *DeSilva*, the plaintiffs claimed they were not properly compensated under the FLSA, that the defendants fraudulently misrepresented to the plaintiffs that they were being properly compensated, and that the

---

[4] *Kendall's* holding regarding the FLSA's preemptive effect was cited with approval by this district in *Barnett v. Pikes Peak Cmty. Coll. Police Dep't*, 2015 WL 4245822 at *4 (D. Colo. July 14, 2015).

defendants committed mail fraud and violated RICO.  *Id.* at 511.  In dismissing the plaintiffs'

RICO claim, the court stated:

> allowing plaintiffs to recover under civil RICO for claims that are, at their core, FLSA claims would thwart the careful and comprehensive scheme established by Congress to remedy wage and hour violations falling under the FLSA's scope. In particular, allowing plaintiffs to pursue a civil RICO claim grounded in the same facts as plaintiffs' FLSA claim would, essentially, create a new private right of action that would allow plaintiffs to seek treble damages—instead of merely seeking unpaid wages and liquidated damages . . . .

*Id.* at 515.  Here too, Plaintiffs' attempt to bring both an FLSA and RICO claim on the premise

that they were not properly compensated would thwart the careful and comprehensive scheme

established by Congress to remedy wage and hour violations falling under the FLSA's scope.

Plaintiffs' RICO claim is based on the exact same factual allegations and purported injury as

their FLSA claim and, therefore, is preempted by the FLSA claim.

Similarly, in *Choimbol v. Fairfield Resorts, Inc.*, 2006 WL 2631791 (E.D. Va. Sept. 11,

2006), the court found plaintiffs' RICO claim to be preempted by the FLSA.  The court reasoned

that "[b]ut for the proscriptions of the FLSA, the Defendant's conduct would not constitute the

fraudulent scheme Plaintiffs allege" and that the "FLSA provides direct relief for such

violations."  *Choimbol*, 2006 WL 2631791 at *7 (internal footnote omitted).  The same is true

here; stripped to its core, Plaintiffs' RICO claim hinges on their allegations that Defendants

violated the FLSA by failing to pay employees for all wages owed.  *See* Amended Comp. para.,

165 ("Among other things, each of these RICO violations caused the Plaintiffs and those

similarly situated to suffer loss of past, current, and prospective wages and to spend unpaid time

working as opposed to pursuing other interests.").  Thus, Plaintiffs' RICO claim is precluded by

Active/43403611.1

the FLSA's specific statutory remedies and, therefore, must be dismissed.[5]   *See Gordon v. Kaleida Health*, 847 F. Supp. 2d 479, 490 (W.D.N.Y. 2012) ("A RICO claim that merely recasts alleged FLSA violations under a different label is precluded by the FLSA's broad remedial scheme."); *Barba v. Seung Heun Lee*, 2009 WL 8747368 at *17 n.14 (D. Ariz. Nov. 4, 2009) ("To the extent that Plaintiffs' civil RICO claim is based on their claim under the FLSA, the RICO claim is likely preempted by the FLSA.").

    iii.    <u>Plaintiffs cannot prove the elements of the RICO claim.</u>

"The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."   *Dewey v. Lauer*, 2009 WL 3234276 at *3 (D. Colo. Sep. 30, 2009) (quoting *Tal v. Hogan,* 453 F.3d 1244, 1261 (10th Cir. 2006)) (internal quotation marks omitted).

    *a.*    *The Amended Complaint does not allege an appropriate enterprise.*

RICO defines an enterprise as "any individual . . . corporation, association . . . and any . . . group of individuals associated in fact although not a legal entity."   18 U.S.C. § 1961(4).   An association-in-fact enterprise is "'a group of persons associated together for a common purpose of engaging in a course of conduct' and requires evidence 'of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"   *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 769 (D. Colo. 2007) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Plaintiffs allege two association-in-fact enterprises.   The first purported enterprise is identical to the sole enterprise alleged in the original Complaint, which is described "[a]s the

---

[5] It should also be noted that RICO claims have been found preempted by other statutes with remedial schemes similar to that of the FLSA.   *See e.g., Choimbol*, 2006 WL 2631791 (collecting cases).

owner of Xclusive, Defendant Astley formed an association-in-fact with Xclusive and all of its associated entities and subsidiaries, which shall be referred to as the 'Astley Enterprise'" (referred to herein as the "First Purported Enterprise"). Amended Comp. para. 85. With regard to the Second Purported Enterprise, which was alleged for the first time in the Amended Complaint, Plaintiffs state, "[i]n the alternative, Xclusive and all of its associated entities and subsidiaries formed an[] association-in-fact called the 'Astley Enterprise.'" (referred to herein as the "Second Purported Enterprise") Amended Comp., para. 86. Plaintiffs' allegations fail.

A.     The First Purported Enterprise fails. [6]

"Enterprise liability under RICO depends on showing that the defendant conducts or participates in the conduct of the enterprise's affairs, not just its own affairs . . . . A separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predicate acts in the conduct of its own business." *Internet Archive v. Shell,* 505 F. Supp. 2d 755, 769 (D. Colo. 2007) (quoting *Brannon v. Boatmen's First Nat. Bank of Okla.*, 153 F.3d 1144, 1146 (10th Cir. 1998) (internal quotations omitted); *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Moreover,

> [T]he plaintiff in a RICO case must establish that "defendants were part of an enterprise which had an existence and purpose distinct from any one of them." . . . It is for this reason that "officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself."

---

[6] Despite the extensive and controlling case law cited in Defendants' Motion for Judgement on the Pleadings and recited below, which makes it clear that Defendant Astley cannot form an enterprise with companies she owns, Plaintiffs continue to assert such an enterprise in support of their RICO claim. Plaintiffs' continued assertion of the First Purported Enterprise, despite their knowledge that the alleged enterprise fails as a matter of law is in bad faith and violates the requirements of Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

*George v. Urban Settlement Servs.*, 2014 WL 4854576 at *8 (D. Colo. Sep. 30, 2014) (quoting

*Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp.*, 965 F.2d 879, 885-86 (10th Cir. 1992))

(emphasis added).   Similarly, the District of Columbia in *Yellow Bus Lines, Inc. v. Drivers,*

*Chauffeurs & Helpers Local*, 883 F.2d 132 (D.C. Cir. 1989), stated,

> Several courts . . . have disallowed a § 1962(c) claim where the relationship
> among the members of the enterprise association is the relationship of parts to a
> whole. That is, while the corporate or organizational defendant may itself be a
> member of the enterprise association, the member of the enterprise association
> may not simply be subdivisions, agents, or members of the defendant
> organization.

*Id.* at 141.   Here, Plaintiffs allege Defendant Astley owns Xclusive and that she and Xclusive

"formed an association-in-fact."   Amended Comp. para., 85.   As part of her ordinary duties as

owner of Xclusive, Defendant Astley established Xclusive's pay practices, was responsible for

meeting with the DOL during their investigations, and it was Defendant Astley's representations

to the DOL that form the basis for the RICO claim.   *See* Amended Comp., paras. 87, 94-109.

Accordingly, Defendant Astley is part-of, and not separate-from, Xclusive and Plaintiffs are

unable to meet the requirements of an enterprise.

Again, the court's reasoning in *Yellow Bus Lines* is instructive,

> [A]n organization cannot join with its own members to do that which it normally
> does and thereby form an enterprise separate and apart from itself.   Where, as
> here, the organization is named as defendant, and the organization associates with
> its member to form the enterprise "association-in-fact," the requisite distinctness
> does not obtain.

883 F.2d at 141.   Here, too, Xclusive Staffing and its affiliated entities are named as Defendants

in this case and Plaintiffs allege those organizations associated with its owner to form an

enterprise.   Thus, "the requisite distinctness does not obtain" and Plaintiffs' RICO claim must be

dismissed.

Another court in the District of Colorado recently rejected similar association-in-fact allegations. In *LLacua v. Western Range Association*, Civil Action No. 15-1889-RED-CBS, (June 3, 2016),[7] Magistrate Judge Shaffer considered a complaint which alleged, among other things, that a corporate officer was engaged in an enterprise between himself and the corporation-defendant. *See* Exhibit A, p. 39. In the complaint, plaintiffs claimed the officer-defendant "was substantially involved in WRA's alleged fraudulent policy of representing to state agencies and the DOL . . . that shepherds would be reimbursed for their expenses and would not have unreasonable fees deducted from wages, knowing that this would not happen." *Id.* Magistrate Judge Shaffer found these allegations "not legally possible" to create an association-in-fact enterprise. *Id.* at p. 40. The court also stated, "as a matter of law, a corporation and its officer cannot be a RICO association-in-fact regarding conduct undertaken in the corporation's regular business as an officer of the corporation." *Id.* at p. 38 (footnote omitted).

Plaintiffs here make nearly identical allegations regarding Astley's involvement in Xclusive's purported misconduct. Plaintiffs allege Defendant Astley is "involved in the daily operations of Xclusive" and made "fraudulent" promises to the DOL regarding Xclusive's intention to comply with the FLSA. Amended Comp., paras. 87, 94-109 (internal quotations omitted). Thus, here, like in *LLacua*, it is not legally possible for Defendant Astley to create an association-in-fact enterprise with Xclusive. Plaintiffs' RICO claim fails.

B.    The Second Purported Enterprise fails.

As noted above, Plaintiffs' Amended Complaint asserts a Second Purported Enterprise, stating, "[i]n the alternative, Xclusive and all of its associated entities and subsidiaries formed

---

[7] The court's Recommendation on Defendants' Motion to Dismiss in *LLacua v. Western Range Association*, Civil Action No. 15-1889-RED-CBS, (June 3, 2016) is attached as ***Exhibit A***.

an[] association-in-fact called the 'Astley Enterprise.'"   Amended Comp., para. 86.  Plaintiffs'

attempt to add a second association-in-fact enterprise in the Amended Complaint is a sham.

Plaintiffs make no factual allegations relating to the Second Purported Enterprise and, instead,

simply name the Second Purported Enterprise the same as the first, and rely on all of the same

allegations for the First Purported Enterprise.   Amended Comp., paras. 85 & 86.   As such,

Plaintiffs have failed to allege sufficient facts showing the existence of an enterprise between

"Xclusive and all of its associated entities and subsidiaries."

Moreover, because the RICO claim is only brought against Astley and not the other

Xclusive Defendants, Defendant Astley is a required component of the RICO claim and,

therefore, must be part of the underlying enterprise. *See Internet Archive*, 505 F. Supp. 2d at 769

("Enterprise liability under RICO depends on showing that the *defendant conducts or*

*participates* in the conduct of the enterprise's affairs, not just its own affairs . . . .") (emphasis

added); *George*, 2014 WL 4854576 at *8 (the plaintiff in a RICO case must establish that

"*defendants* were part of an enterprise which had an existence and purpose distinct from any one

of them.") (emphasis added).   Because, as described above, Defendant Astley cannot engage in

an association-in-fact enterprise with the Xclusive Defendants and the RICO claim is only

brought against Defendant Astley, Plaintiffs' Second Purported Enterprise fails.

Even if Plaintiffs did allege facts regarding the Second Purported Enterprise and did

assert the RICO claim against the Xclusive Defendants in addition to Defendant Astley, the

RICO claim still fails.   Circuits from around the country, including the Tenth Circuit, regularly

hold that a parent company and its wholly owned subsidiaries cannot form an enterprise for

RICO purposes. *See e.g., Chagby v. Target Corp.,* 358 F. App'x 805, 808 (9th Cir. 2009)

13

(holding that allegations of an enterprise between a parent "and its wholly-owned subsidiaries fail[ ] to meet the distinctiveness requirement of civil RICO claims."); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP,* 329 F.3d 923, 934 (7th Cir. 2003) ("A parent and its wholly owned subsidiaries no more have sufficient distinctness to trigger RICO liability than to trigger liability for conspiring in violation of the Sherman Act . . . unless the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity."); *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439, 449 (1st Cir. 2000) ("In most cases, a subsidiary that is under the complete control of the parent company is nothing more than a division of the one entity.  Without further allegations, the mere identification of a subsidiary and a parent in a RICO claim fails the distinctiveness requirement."); *Fogie v. THORN Americas, Inc.,* 190 F.3d 889, 898 (8th Cir. 1999) (holding that "as a matter of law a parent corporation and its wholly owned subsidiaries are legally incapable of forming a conspiracy with one another."); *Brannon v. Boatmen's First Nat. Bank of Oklahoma,* 153 F.3d 1144, 1149 (10th Cir. 1998) ("It is insufficient . . . merely to assert that a defendant corporation accused of racketeering is a subsidiary and therefore automatically conducts the affairs of its parent"; the plaintiff instead must show how the relationship between the subsidiary and parent "allowed the [subsidiary] to perpetrate or conceal the alleged mail fraud."); *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1064 (2d Cir. 1996) (holding that subsidiaries and a parent company cannot be liable under RICO where "the individual defendants were acting within the scope of a single corporate structure, guided by a single corporate consciousness."), *vacated on other grounds by NYNEX Corp. v. Discon, Inc.,* 525 U.S. 128 (1998); *Brittingham v. Mobil Corp.,* 943 F.2d 297, 302–303 (3d Cir. 1991) (requiring "additional allegations" beyond the subsidiary-parent relationship to "constitute

14

the enterprise through which a defendant parent corporation conducts racketeering activity."), *overruled on other grounds by Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258 (3d Cir. 1995). Plaintiffs' cannot prove a RICO enterprise and the RICO claim must be dismissed.

     iv.    <u>The Complaint fails to state a racketeering activity</u>.

An essential element of Plaintiffs' RICO claim is proof of a "racketeering activity." 18 U.S.C. § 1962(c). The Amended Complaint relies only upon alleged violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, as predicate acts of a racketeering activity.

Plaintiffs allege four "interrelated wire fraud schemes (1) the USDOL Scheme, (2) the Website Scheme, (3) the Electronic Timekeeping Scheme, and (4) the Faxed Timesheet Scheme." Amended Comp., para. 92. Plaintiffs describe the "USDOL Scheme" as consisting of Defendant Astley's purported statements to DOL investigators regarding Xclusive's intention to comply with the FLSA. Amended Comp., paras. 94-109. With regard to the "Website Scheme," Plaintiffs allege the "Astley Enterprise uses the internet to fraudulently advertise its compliance with state and federal minimum wage laws." Amended Comp., paras. 110. Plaintiffs' third alleged wire fraud scheme alleges there exists an "Electronic Timekeeping Scheme" consisting of Xclusive's use of electronic timekeeping systems that allegedly "consistently report 30-minute breaks that employees rarely take . . . ." Amended Comp., para 121. Finally, Plaintiffs allege Xclusive engaged in a "Faxed Timesheet Scheme" whereby Xclusive allegedly uses "the wires to transmit underreported employee work hours" on handwritten timesheets. Amended Comp., paras. 124-131. Plaintiffs' only assertions in support of the alleged mail fraud is that the Astley Enterprise used the mail to further its fraudulent schemes by "transmitting fraudulent pay records and checks" to the DOL and by mailing employee pay checks. Amended Comp., paras. 103-104.

Active/43403611.1

Plaintiffs fail to state the elements of mail or wire fraud.  The essential elements of an offense under Section 1341 for mail fraud are: (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises to the complaining individual; (2) an intent to defraud; and (3) use of the mails to execute the scheme.  *U.S. v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001).  The first and second elements of federal mail and wire fraud are identical.  The third element of wire fraud as defined in 18 U.S.C. § 1343 is the use of interstate wire or radio communications to execute the scheme.  *U.S. v. Smith*, 133 F.3d 737, 742 (10th Cir. 1997).

> a.     *The Astley Enterprise did not make false representations.*

In support of both the mail and wire fraud allegations, Plaintiffs allege the Astley Enterprise used the mail and wires in furtherance of the fraudulent scheme by using them to transmit the fraudulent pay records and checks to the DOL, employees, and clients.  Amended Comp., paras. 103-104.  This allegation fails to state a mail or wire fraud racketeering activity because paychecks are not statements and, therefore, cannot contain misrepresentations.

Payroll records cannot constitute misrepresentations as a matter of law.  *Williams v. U.S.*, 458 U.S. 279, 284-85 (1982).  In *Williams*, the defendant was convicted of violating 18 U.S.C. § 1014, a statute which makes it a crime to knowingly make any false statement for the purpose of influencing the action of certain financial institutions.  The conviction was obtained based on the fact that defendant had deposited checks that were not supported by sufficient funds.  In reversing the Fifth Circuit's affirmance of the conviction, the Supreme Court said:

> Although petitioner deposited several checks that were not supported by sufficient funds, that course of conduct did not involve the making of a "false statement," for a simple reason: technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as "true" or "false."

*Id.* at 284.  As the Supreme Court noted, bank checks "serve only to direct the drawee banks to pay the face amount to the bearer."  *Id.*  Thus, a check carries with it no implicit representation that it constitutes payment of all that its payee is entitled to receive.  Plaintiffs' entire mail fraud racketeering activity is based on the mailing of employee paychecks and payroll records to the DOL, employees, and clients.  Amended Comp., paras. 103-104.  Because paychecks cannot contain false representations, Plaintiffs' mail fraud allegations fail.

The Astley Enterprise also did not make any misrepresentations as part of the "Electronic Timekeeping Scheme."  Plaintiffs allege "Xclusive and its clients have access to and use [electronic timekeeping] platforms, and therefore the Astley enterprise uses these online platforms to make repeated, intentionally-false statements over the wires regarding employee work hours."  Amended Comp., para. 120.  Plaintiffs, however, make no allegations regarding who actually inputs the information into the electronic timekeeping systems and who is making the "statements" regarding hours worked in the electronic timekeeping systems.  The electronic timekeeping systems only track information regarding employee work time that is input by employees.  It does not represent affirmative statements made by the Astley Enterprise.  Accordingly, even assuming information relating to employee hours found in the electronic timekeeping system is false, which Defendants dispute, Plaintiffs fail to allege sufficient facts to find such false statements are being asserted by the Astley Enterprise.

Finally, Plaintiffs' allegations relating to the "Website Scheme" do not support a finding that the Astley Enterprise made fraudulent representations regarding Xclusive's compliance with federal and state law.  *See* Amended Comp., paras. 110-114.  Xclusive's statements on its website regarding its belief that it complies with the FLSA and other laws cannot serve as a

predicate act for mail or wire fraud because misrepresentations of law are not actionable as fraud. *See Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 620-21 (9th Cir. 2004); *see also Presidio Expl., Inc. v. Alexander Energy Corp.*, 986 F.2d 1428 (10th Cir. 1993) ("a plaintiff cannot predicate a fraud claim on a misrepresentation of law because everyone is presumed to know the law, both civil and criminal, and is bound to take notice of it.   Hence one has no right to rely on such representations or opinions and will not be permitted to say that he was misled by them.").

In *Miller*, a plaintiff-employee sought to transform a California state wage and hour claim into a federal RICO claim under 18 U.S.C. 1962(c) and (d).   The employee alleged he was a victim of a mail fraud scheme by his employer and its managers "who misrepresented his entitlement to overtime pay and consequently underpaid him." *Id.*   The Ninth Circuit affirmed the dismissal of the RICO claim on the ground that the employee's complaint did not allege an actionable fraud at common law.   Citing *Neder v. United States*, 527 U.S. 1 (1999), the Ninth Circuit noted that the "term 'defraud' in the mail fraud statute is given its established common law meaning," and that "[i]t is . . . well-settled, as a general rule, that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law."   358 F.3d 621 (citation omitted).   The court stated, "where a misrepresentation of law is only one of opinion, rather than one that includes a misrepresentation of fact, the recipient can only justifiably rely on it to the extent that he can justifiably rely on other opinions." 358 F.3d at 621; s*ee also Virginia Sur. Co. v. Macedo*, 2009 WL 3230909 at *8 (D.N.J. Sept. 30, 2009) (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 616, 621 (9th Cir. 2006) ("It is well established that "misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes because statements of the law are considered merely opinions and may not be relied upon absent special

circumstances."). Accordingly, Xclusive's statement on its website regarding its compliance with the law is not actionable as fraud.

> b.   *The Astley Enterprise did not use the mails or wires in furtherance of a fraudulent scheme.*

The Complaint fails to adequately allege that the mail or wires were used in furtherance of the alleged fraudulent scheme. Use of the mail or wires must be "incident to an essential part of the scheme or a step in the plot." *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989). Mailings and wires that are sent after the fraudulent scheme comes to fruition are generally not considered "for the purpose of executing." *See United States v. Maze*, 414 U.S. 395, 403 (1974). Thus, in *Maze*, where the defendant stole a credit card and used it to make purchases, the Supreme Court found that the subsequent mailings of invoices from merchants to the bank, and from the bank to the cardholder for payment, were not in furtherance of the fraudulent scheme because the scheme already came to fruition when the defendant received the goods and services he purchased with the stolen card. *Id.* at 396-97, 402.

The same is true here. Some of Plaintiffs' allegations relate to Xclusive's alleged failure to pay them overtime and purported automatic deductions of meal periods; the alleged mechanism by which this scheme was accomplished is through the electronic timekeeping system which allegedly automatically deducted 30-minutes from employees' daily work time. Amended Comp., paras. 115-123. Similarly, as part of the Faxed Timesheet Scheme, Plaintiffs allege they were deprived compensation for meal breaks when an unnamed individual "at client locations" filled out certain handwritten time recordings and later faxed those recordings to Xclusive headquarters. Amended Comp., paras. 124-131. These alleged schemes came to fruition when the deductions were made depriving Plaintiffs of amounts they allege should have

been paid, not when the time was allegedly improperly recorded in the timekeeping system or when hand written time records were faxed to Xclusive headquarters.

Similarly, Plaintiffs claim the Astley Enterprise used the mail and wires in furtherance of the fraudulent scheme by using them to transmit the fraudulent pay records and checks to the DOL, employees, and clients.  Amended Comp., paras. 103-104.  Xclusive transmitted Plaintiffs' paychecks *after* the allegedly fraudulent withholdings and failure to pay overtime occurred. Thus, Xclusive's use of the mail and wires to transmit Plaintiffs' paychecks and payroll information was not for the purpose of executing the scheme, as the statute requires.

      *c.*    *Plaintiffs alleged racketeering activity based on representations to the DOL fail.*

To the extent Plaintiffs rely on Defendant Astley's statements to the DOL in support of their alleged racketeering activity, the RICO claim still fails.  Plaintiffs' allegations regarding Defendant Astley's meetings and representations to the DOL fall short of demonstrating Defendant Astley made false representations through the wires or mail to the DOL for the purpose of executing a fraudulent scheme.  Indeed, Plaintiffs even admit Defendant Astley met with the DOL in person to discuss Xclusive's pay practices.  Amended Comp., para. 94. Because Defendant Astley's alleged misrepresentations to the DOL occurred in person, she could not have used the mail or wires in furtherance of a fraudulent scheme.

Plaintiffs' only allegations regarding the Astley Enterprises' alleged misrepresentations to the DOL through the mail or wires is that "[t]he Astley Enterprise used the mail and wires in furtherance of the fraudulent scheme directed toward the DOL by transmitting fraudulent pay records and checks between Xclusive branches, and Xclusive employees and clients.  These fraudulent pay records indicated, among other things, that Xclusive had taken 30 minute unpaid

breaks when, in fact, the workers generally worked during these unpaid periods." Amended Comp., para. 103. As described above, however, Xclusive's alleged improper payment of employees already occurred by the time the records were transmitted to the DOL. Thus, such transmission could not have been *in furtherance* of the Astley Enterprises' purported fraudulent scheme and, therefore, such allegations fail to state a claim. *See Schmuck*, 489 U.S. at 710-11; *Maze*, 414 U.S. at 403.

Plaintiffs also cannot ground their RICO claim in Defendant Astley's purported misrepresentations to the DOL because in such circumstances, it is the DOL, not Plaintiffs, who suffered the alleged injury. Plaintiffs cannot satisfy the causation requirements of their RICO claim when their alleged injuries indirectly resulted from Astley's alleged fraud on the DOL. In *Anza v. Ideal Steel,* 547 U.S. 451 (2006), the Supreme Court held that a plaintiff could not prove a RICO violation against a business competitor based on that competitor's fraud against the State of New York. *Id.* at 457. In so holding, the Court found plaintiff could not show proximate causation because "[i]t was the State that was being defrauded and the State that lost tax revenue as a result." *Id.* at 458. The Court acknowledged that the plaintiff suffered harm when the competitor did not charge customers sales tax, but noted that "[t]he cause of [plaintiff's] asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* The same is true regarding Plaintiffs' claims that Defendant Astley defrauded the DOL; it was the DOL, not Plaintiffs that was allegedly defrauded and suffered a direct injury. Thus, Plaintiffs cannot ground their racketeering activity in Astley's communications with the DOL and the RICO claim must be dismissed. *See also Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 2010 WL 5300803 (9th Cir. 2010) (holding

21

that plaintiff lacked standing to bring civil RICO claim against organizers, since it was United States, as third-party, that lost tax revenue as a direct result of organizers' fraud, and plaintiff's asserted injury only indirectly resulted from organizers' fraudulent activity).

## C.   Plaintiffs Fail To State An FLSA Claim.

To prove a claim for violation of the FLSA's overtime pay requirements, Plaintiffs must allege: (i) Defendants are employers as defined by the Act; (ii) Plaintiffs are employees as defined by the Act; (iii) Defendants employed their services; (iv) for more than 40 hours in a single work week; and (v) that they did not receive compensation at a rate of 1.5 times their normal hourly rate for the hours they worked over 40 in that week.  *Perez*, 2013 WL 1149567 at *7 (citing 29 U.S.C. § 207(a)(1); *Figueroa v. District of Columbia Metropolitan Police Dept.*, 633 F.3d 1129, 1134–35 (D.C. Cir. 2011)).  In support of their FLSA overtime claim, Plaintiffs make the following allegations regarding Plaintiff Valverde,

> 39.   During his second stint with Xclusive – from the Fall of 2014 to the Winter of 2015 – Mr. Valverde frequently worked overtime. In particular, he remembers working considerable overtime during November and December of 2014 because he helped to cater many holiday parties.

> 40.   Attached as Exhibit 2 is one weekly paystub from this period dated 12/7/2014 and reporting that Mr. Valverde worked 11.5 hours of overtime and that he worked at the Omni Interlocken, the Marriott Denver Tech Center, and the Hyatt Denver Tech Center during that week.

Amended Comp., paras. 39-40.  Similarly, regarding Plaintiff Simon, the Amended Complaint states,

> 45.   Attached as Exhibit 3 are two weekly paystubs representing weeks where Ms. Simon worked overtime at the Sky Ridge Medical Center.  One of the paystubs is dated 10/25/2015 and reports 1 hour of overtime.  The second paystub is dated 11/15/2015 and reports 1.83 hours of overtime.

Active/43403611.1

Amended Comp., para. 45.   Based on these factual assertions, Plaintiffs claim, "the Defendants named in this claim were required to pay the Plaintiffs and those similarly [situated] overtime pursuant to 29 U.S.C. § 207 and failed to do so."   Amended Comp., para. 171.   Plaintiffs, however, never assert they were not paid at a rate of 1.5 times their normal hourly rate for hours they worked over 40 in a particular week; likely for good reason – Plaintiffs were always appropriately compensated for overtime.   In fact, the paystubs Plaintiffs attached to the Amended Complaint demonstrate Plaintiffs were paid overtime at a rate of 1.5 times their normal hourly rate for hours over 40 they worked during that week.   *See* Amended Comp., Exhibits 2 & 3. Thus, Plaintiffs fail to state an FLSA claim for overtime.

In a case brought last year by Plaintiffs' lawyer against many of the same defendants, Magistrate Hegarty discussed the appropriate pleading standard for asserting an FLSA claim for overtime, stating,

> The Tenth Circuit would likely follow the First, Second, Third and Ninth Circuits' opinions that to state a plausible claim for overtime pay under the FLSA, a plaintiff must allege that he or she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week.

*See Martinez v. Xclusive Management, LLC*, Civil Action No. 15-cv-00047-MSK-MEH, at pp. 11-12 (August 12, 2015).[8]   This approach is consistent with the elements of an FLSA overtime claim, which require Plaintiffs to prove they did not receive compensation at a rate of 1.5 times their normal hourly rate for the hours they worked over 40 in that week.   *See Perez*, 2013 WL 1149567 at *7.   Plaintiffs' bare assertion that they worked overtime and should be compensated for such overtime is insufficient to meet this standard.

---

[8] The court's Recommendation on Defendants' Motion to Dismiss in *Martinez v. Xclusive Management, LLC*, Civil Action No. 15-cv-00047-MSK-MEH, (August 12, 2015) is attached as ***Exhibit B***.

In *Martinez*, Magistrate Hegarty found similar allegations to be deficient,

> In this case, the Plaintiffs' allegations are close but fail to meet the *Iqbal/Twombly* standard for plausibly stating FLSA claims in that they fail to allege they worked hours for which they were not compensated at the minimum wage set forth in the statute, nor do they identify a given workweek during which they worked more than 40 hours but were not properly compensated.

pp. 12-13. (internal footnote omitted). Similarly, here, Plaintiffs neither allege they worked more than 40 hours for which they were not properly compensated nor do they identify a given workweek in which Xclusive failed to appropriately compensate them at 1.5 times their hourly rate. To be sure, the pay stubs Plaintiffs attached to the Amended Complaint belie any such allegation. Accordingly, Plaintiffs' FLSA overtime claim fails and must be dismissed.[9]

**D.      Plaintiffs' Colorado State Wage Claims Fail As A Matter Of Law.**

Plaintiffs' Third, Fourth, and Fifth Causes of Action in the Amended Complaint allege various violations of Colorado law, including a failure to pay overtime, Amended Comp., paras 176-180 (Third Cause of Action), a failure to provide 10-minute breaks, Amended Comp., paras. 181-185 (Fourth Cause of Action), and unlawful deductions from employee paychecks, Amended Comp., paras. 186-190 (Fifth Cause of Action). Plaintiffs bring these claims on their

---

[9] To the extent Plaintiffs' FLSA claim is also based on their allegation that they were not provided lunch breaks, the claim still fails. *See* Amended Comp., para. 172. The FLSA does not regulate or require meal breaks. *See e.g., California Dairies Inc. v. RSUI Indem. Co.,* 617 F. Supp. 2d 1023, 1043 (E.D. Cal. 2009) ("[N]othing in the FLSA or its implementing regulations requires an employer to provide meal periods."); *Harris v. Reliable Reports Inc.*, 2014 WL 931070 at *4 (N.D. Ind. Mar. 10, 2014) (dismissing plaintiff's FLSA claim for meal breaks for failure to state a claim and noting that "the FLSA does not require an employer to give meal breaks.") (citing U.S. Dept. of Labor Wage and Hour Division, Handy Reference Guide to the Fair Labor Standards Act 1 (WH Publication 1282 *rev'd* April 2011), *available at* https://www.dol.gov/whd/regs/compliance/hrg.htm); *see also Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1246 (10th Cir. 2016) (noting the district court's modification of its original order because "it had incorrectly assumed in its first order that a 30–minute meal break was required under the FLSA."). Accordingly, Plaintiffs cannot assert a claim that Defendants violated the FLSA by purportedly not providing meal breaks.

own behalf and the behalf of all others similarly-situated pursuant to Rule 23.  Amended Comp., paras. 182, 187, and 192.

      i.      <u>Plaintiffs lack standing to bring the Third, Fourth, and Fifth Causes of Action on behalf of classes outside of Colorado.</u>

Plaintiffs' Third, Fourth, and Fifth Causes of Action are brought on behalf of themselves and various Rule 23 classes.  Plaintiffs lack standing to bring a claim on behalf of Rule 23 classes that arise outside of Colorado.  The Tenth Circuit has made clear that "Rule 23's requirements must be interpreted in keeping with Article III constraints."  *Vallario v. Vandehey,* 554 F.3d 1259, 1269 n.7 (10th Cir. 2009) (internal citation omitted).  "Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies."  *Chamber of Commerce of United States v. Edmondson*, 594 F.3d 742, 756 (10th Cir. 2010).  In order to have standing to bring a claim, a plaintiff must have suffered an "injury in fact."  *Tandy v. City of Wichita,* 380 F.3d 1277, 1283 (10th Cir. 2004).

The District of Colorado recently considered the showing required to demonstrate standing in a Rule 23 class action.  *Morris v. DaVita Healthcare Partners, Inc.*, 308 F.R.D. 360, 367-68 (D. Colo. 2015).  The court concluded that for purposes of pre-certification standing in a Rule 23(b)(3) case, "only the named plaintiffs must demonstrate an injury in fact."  *Id.* at 368.  Thus, for Plaintiffs to represent classes outside of Colorado, they must allege they personally suffered an injury in fact in states other than Colorado.

Plaintiffs allege the Third, Fourth, and Fifth Causes of Action on behalf of the "Rule 23 Wage Class," which is defined as "[a]ll current and former hourly employees of Xclusive Staffing, Inc., or one of its subsidiaries that worked at a client location."  Amended Comp., paras. 135 & 184, pp. 30-32.  Plaintiffs' Rule 23 Wage Class is further divided into subclasses

consisting of the "Rule 23 Omni Subclass," "Rule 23 Hyatt Subclass," and the "Rule 23 Marriot Subclass." Amended Comp., paras. 137-139. Plaintiffs also bring the Third, Fourth, and Fifth Causes of Action on behalf of these hotel subclasses. Amended Comp., pp. 30-32. The Rule 23 Wage Class and the three hotel subclasses, however, are not limited to individuals residing in Colorado or who have suffered an alleged injury in Colorado. Moreover, the two named Plaintiffs have not alleged they suffered an "injury in fact" in states other than Colorado. Thus, to the extent the Third, Fourth, and Fifth Causes of Action are based on conduct and injuries occurring outside of Colorado, Plaintiffs do not have standing to bring those claims. *See Smith v. Pizza Hut, Inc.*, 2011 WL 2791331 at *8 (D. Colo. July 14, 2011).

  ii.  <u>Plaintiffs fail to state a claim for overtime pursuant to Colorado law.</u>

  Like the FLSA, Colorado's Minimum Wage Order 32 requires that employees be paid time and one-half of the regular rate of pay for any work in excess of forty hours in a workweek. 7 Colo. Code Regs. § 1103-1:4. As described above in Section Argument C(iii), Plaintiffs utterly fail to allege they worked more than forty hours in a work week and were not compensated at a rate of 1.5 times their hourly rate for those hours worked. Instead, Plaintiffs only allege they worked overtime and should be compensated for such overtime. *See* Amended Comp., paras. 39, 40, 45, and 171. These allegations fail to state a claim for overtime.

  Despite Plaintiffs' knowledge that their bare and conclusory allegations are insufficient, Plaintiffs did not add any allegations in the Amended Complaint that show they are entitled to overtime under Colorado's Minimum Wage Order. Plaintiffs' continued assertion of these deficient allegations in their Amended Complaint represents a tacit admission that they have no factual evidence to support their overtime claim. Plaintiffs conduct is especially egregious

considering they *added* the Colorado state claim for overtime, despite attaching pay stubs that prove Plaintiffs were appropriately compensated for the overtime they worked. Plaintiffs are not permitted to pursue claims for which they have no evidentiary support whatsoever. *See* 28 U.S.C. § 1927; Fed. R. Civ. P. 11. Plaintiffs' overtime claim must be dismissed.

iii.   <u>Plaintiffs fail to state a claim relating to 10-minute rest breaks.</u>

Plaintiffs' Fourth Cause of Action alleges Defendants failed to provide rest breaks required by Minimum Wage Order 32. Amended Comp., paras. 181-185. The Fourth Cause of Action fails because Plaintiffs do not sufficiently allege they were denied rest breaks.

Plaintiffs neither allege a day or week in which Plaintiff Simon worked and did not receive a rest break, nor do they allege at what client location Plaintiff Simon allegedly worked and did not receive rest breaks. The Amended Complaint only vaguely states Plaintiff Simon "did not receive *any* 10 minute rest breaks, except at the Sky Ridge Medical Center." Amended Comp., para 79 (emphasis in original). Plaintiff Simon's pay stubs attached to the Amended Complaint relates to two weeks in which she worked at Sky Ridge Medical Center. Amended Comp., para. 45. Thus, according to the allegations in the Amended Complaint, Plaintiff Simon received her 10-minute breaks during those weeks.

Plaintiffs also fail to allege when Plaintiff Valverde allegedly did not receive a rest break or for what client location Plaintiff Valverde worked when he allegedly did not receive his rest breaks. Plaintiffs only allege Plaintiff Valverde "did not receive *any* 10 minute rest breaks, except for when he worked at the Hyatt Regency Denver and at the Denver Convention Center." Amended Comp., para. 76 (emphasis in original). Plaintiffs' bare assertions that Plaintiffs Valverde and Simon worked without receiving rest breaks, without any allegations regarding

when and where such deprivations occurred are nothing more than formulaic recitations of the law. *See Twombly*, 550 U.S. at 555 (plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

iv.     Plaintiffs fail to state a claim for Xclusive's deductions from their paychecks.

Plaintiffs' Fifth Cause of Action alleges Defendants unlawfully took deductions from employees' paychecks "as a processing fee" and "for things such as uniforms, name badges, and background checks." Amended Comp., paras. 54 and 186-190. Plaintiffs bring this claim pursuant to the Colorado Wage Act ("CWA"), Colo. Rev. Stat. § 8-4-105. Amended Comp., para. 188. Plaintiffs, however, fail to state a CWA claim because they agreed to the deductions.

The CWA provides that "[n]o employer shall make a deduction from the wages or compensation of an employee except . . . . [d]eductions for loans, advances, goods or services, and equipment or property provided by an employer to an employee pursuant to a written agreement between such employer and employee, so long as it is enforceable and not in violation of law . . . ." Colo. Rev. Stat. § 8-4-105(1)(b). Plaintiffs make contradictory statements in the Amended Complaint regarding deductions from employees' paychecks. In Paragraph 56 of the Amended Complaint, Plaintiffs allege "[n]either of the Workers agreed to these deductions either implicitly or expressly." Amended Comp., para. 56. In the *very next* paragraph, however, Plaintiffs admit Valverde "signed a contract, written in Spanish, that refers to a $3.00 deduction in each check without explaining the purpose of the $3.00 deduction." Amended Comp., para. 57. It cannot both be true that Plaintiffs did not agree "implicitly or expressly" to the $3.00 deduction and have signed written contracts approving such deductions. Because Plaintiffs

Active/43403611.1

admit Valverde signed a contract approving of the $3.00 deduction, Plaintiffs fail to state a CWA claim for the deductions.

The contracts between Xclusive and Plaintiffs further support the fact that Plaintiffs approved of the deductions from their paychecks.  As Plaintiffs correctly note, Valverde executed a contract giving his approval for Xclusive to deduct the costs associated with employees' uniforms and nametags, as well as his approval for Xclusive to deduct $3.00 from each pay check.  Amended Comp., para. 57.  Plaintiff Simon executed an identical Agreement. Plaintiffs' executed Agreements regarding Xclusive's employment policies is attached hereto as *Exhibit C*.[10]  An English version of Plaintiff Valverde's Agreement is attached hereto as *Exhibit D*.  Pursuant to these Agreements, Plaintiffs consented to Xclusive's deductions from their paychecks.  As such, Plaintiffs' Fifth Cause of Action fails and the CWA claim must be dismissed.

In addition, although Plaintiffs assert the CWA claim against Omni Interlocken Company, LLC, Omni Hotels Management Corporation, Marriott International, Inc., and HCA-HealthONE LLC, d/b/a Sky Ridge Medical Center, Plaintiffs make absolutely no factual allegations regarding how those Defendants are liable for such deductions.  Plaintiffs do not even allege these Defendants were aware of, or participated in, the deductions from employees' paychecks.  Thus, Plaintiffs fail to state their Fifth Claim for Relief against these Defendants.

---

[10]Because Plaintiffs' employment agreements are central to Plaintiffs' claims and they specifically refer to the agreements throughout the Amended Complaint, it is appropriate for the Court to consider those agreements without converting this Motion into one for summary judgment.  *See Alvarado v. KOBTV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

**E.  Plaintiffs' Breach Of Contract And Quasi-Contract Claims Fail.**

In Count VI, Plaintiffs allege breach of contract, and "equity under the laws of the several states."  Amended Comp., p. 33.  In support of Plaintiffs' breach of contract claim, they allege, they entered into hourly employment contracts, which "promised payment of a fixed amount per hour worked," "incorporated state and federal wage and hour laws," and Defendants breached the contracts by "not compensating employees for all hours worked."  Amended Comp., paras. 193-196.  In a single paragraph, Plaintiffs also allege promissory estoppel and unjust enrichment claims.  Amended Comp., para. 198.  Plaintiffs' breach of contract and quasi-contract claims fail as a matter of law because (1) Plaintiffs' breach of contract and quasi-contract claims are preempted by the FLSA; (2) Xclusive's general statements about its intent to comply with the law are too vague to support Plaintiffs' promissory estoppel claim; and (3) Plaintiffs' unjust enrichment claims are barred by the existence of Plaintiffs' employment agreement.

i.   Plaintiffs' contract and quasi-contract claims are preempted by the FLSA.

As noted above, the FLSA's broad remedial scheme is exclusive and can preclude parallel actions brought under federal and state law.  *See e.g., Kendall*, 174 F.3d at 439; *Roman*, 147 F.3d at 76; *Conner*, 121 F.3d at 1399.  "[S]tate claims [are] preempted by the FLSA where those claims have merely duplicated FLSA claims."  *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (collecting cases).

Plaintiffs' breach of contract, promissory estoppel, and unjust enrichment claims are all based on the same factual allegations as the FLSA claim, *i.e.*, that Defendants failed to pay them certain wages.  *See* Amended Comp., para. 196 ("The Defendants breach the contracts by, among other things, not compensating employees for all hours worked.").  Accordingly,

Plaintiffs' contract and quasi-contract claims are preempted by the FLSA and must be dismissed with prejudice.

In *Barnett v. Pikes Peak Cmty. Coll. Police Dep't*, 2015 WL 4245822 (D. Colo. July 14, 2015), the court considered whether plaintiffs' breach of contract claim was preempted by the FLSA. There, plaintiffs alleged "that Defendants 'agreed to pay Plaintiffs their full hourly wages for all hours they worked as law enforcement officers' and then 'breached [their] contract with Plaintiffs when [they] failed to pay Plaintiffs their full wages for all service Plaintiffs performed.'" *Id.* at 5. The court found this claim was preempted by the FLSA because it is "clearly just a restatement of their FLSA claims." *Id.* Similarly, here, Plaintiffs' breach of contract, promissory estoppel, and unjust enrichment claims are just a restatement of their FLSA claim. Thus, Plaintiffs' breach of contract and quasi-contract clams must be dismissed. *See e.g., Chytka v. Wright Tree Service, Inc.*, 925 F. Supp. 2d 1147, 1173 (D. Colo. 2013) (ruling that a plaintiff's unjust enrichment claim was preempted by the FLSA); *Lilani v. Noorali*, 2011 WL 13667 at *8 (S.D. Tex. Jan. 3, 2011); *see also Armani*, 53 F. Supp. 2d at 1132 (plaintiff's state common law claim barred by the FLSA's statutory remedies).

     ii.    <u>Xclusive's general statement regarding its intent to comply with the law does not support Plaintiffs' promissory estoppel claim.</u>

Although not clear, it appears Plaintiffs assert Defendants are liable on a promissory estoppel theory because Plaintiffs' employment contract stated Xclusive's intent to comply with state and federal wage and hour laws. *See* Amended Comp., para. 195 ("The implied-in-fact contracts also incorporated state and federal wage and hour laws."). This claim fails because general policy statements and assurances to comply with the law are too vague to create a legally enforceable right.

Active/43403611.1

With regard to Plaintiffs' promissory estoppel claim, it is well-established that "general policy statements are too equivocal to constitute a promise upon which Defendant could expect Plaintiff to reasonably rely." *Aragon v. Life Quotes, Inc.*, 2005 WL 1661737 at *12 (D. Colo. July 15, 2005) (citing *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1464 (10th Cir. 1994) (holding that "if the alleged promises are nothing more than 'vague assurances'" then there can be no implied contract)); *see also Rosario v. J.C. Penney*, 463 F. Supp. 2d 228, 232 (D. Conn. 2006) ("a claim for breach of implied contract cannot be premised on an employer's general obligation to comply with the federal and state anti-discrimination laws."). Thus, Plaintiffs' promissory estoppel claim must be dismissed with prejudice.

iii.     Plaintiffs' unjust enrichment claim is barred by the existence of a contract.

The concept of unjust enrichment exists as an equitable theory "of recovery arising out of the need to avoid unjust enrichment to a party in the absence of an actual agreement to pay for services rendered." *Perez*, 2013 WL 1149567 at *9 (citing *Melat, Pressman & Higbie, LLP v. Hannon Law Firm, LLC,* 287 P.3d 842, 847 (Colo. 2012)); *see also Jorgensen v. Colorado Rural Properties, LLC,* 226 P.3d 1255, 1259 (Colo. App. 2010). "Thus, the claim(s) cannot be maintained where the parties have reached an agreement between themselves as to the terms upon which compensation will be paid []absent an allegation that the agreement is invalid or unenforceable . . . ." *Id.* In *Perez*, the court dismissed plaintiff's unjust enrichment and quantum meruit claims where plaintiff alleged "a contractual relationship existed between [herself] and Defendants wherein Defendants agreed to pay [her] for all hours worked." *Id.*

Here, Plaintiffs admit they were a party to an employment contract with Xclusive Staffing, Inc. that "promised payment of a fixed amount per hour worked" and "incorporated

state and federal wage and hour laws."  Amended Comp., paras. 194-195.  Plaintiffs do not

allege the employment contracts are invalid or unenforceable.  Thus, Plaintiffs' unjust

enrichment claim is barred by the existence of their employment agreement.[11]

In the Amended Complaint, Plaintiffs attempt to avoid the dismissal of their unjust

enrichment claim by alleging the employment contracts are "implied-in-fact."  Amended Comp.,

paras. 193-195.  Plaintiffs, however, neither make any allegations regarding the basis of such

"implied-in-fact" contracts nor state how they are different from the written contracts Plaintiffs

executed regarding their employment at Xclusive.  *See* Amended Comp., para. 57 (noting that

Valverde executed a written contract); para. 179 (claiming "Plaintiffs and those similarly situated

worked for the Defendants under an employment contract . . .").  Because Plaintiffs admit they

worked for Xclusive pursuant to a "written" "employment contract," the unjust enrichment claim

fails.

## F.  Plaintiffs' Class And Collective Action Claims Are Inherently Incompatible.

In addition to the specific deficiencies in Plaintiffs' Complaint enumerated above,

Plaintiffs cannot simultaneously maintain a class and collective action in this matter because they

are inherently in conflict.  In order to be included in a collective action under the FLSA, a

plaintiff must give written consent, or opt-in.  29 U.S.C. § 216(b).  In a class action, on the other

hand, a putative class member that does not want to be included in a class action must opt-out, or

else is assumed to be part of the class, and is bound by any judgment.  Fed. R. Civ. P.

---

[11] Plaintiffs' promissory estoppel and unjust enrichment claims should also be dismissed because they utterly fail to state a claim on these theories of recovery.  Plaintiffs only state, "In the alternative, if the contracts fail, Defendants are liable to Plaintiffs and those similarly situated in quasi-contract, including promissory estoppel and unjust enrichment."  Amended Comp., para. 198.  Plaintiffs' single conclusory statement in the Amended Complaint fails to state claims for promissory estoppel or unjust enrichment.

23(c)(2)(B)(v), (vii).  The ability to opt-out of a so-called hybrid action – one involving both an opt-in collective action under § 216(b) and an opt-out class action under Rule 23 – is not sufficient because an employee may not respond to an opt-out notice due to "inertia" or confusion, and then be estopped down the road from pursuing an FLSA claim.  *Woodward v. Fedex Freight East, Inc.*, 250 F.R.D. 178, 185 (M.D. Pa. 2008).  Regardless of the reason that an employee might fail to respond to a notice and opt-out, "the requirement that an employee opt out of a hybrid action to preserve the employee's FLSA claim is contrary to the letter and spirit of § 216(b).  By crafting the opt-in scheme, Congress envisaged employees taking affirmative action to assert, not to preserve, their FLSA rights." *Id.* at 187 n.7; *see also Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263, 266 (D. Colo. 1990) ("the 'opt-in' feature of § 216(b) is manifestly 'irreconcilable' with the 'opt-out' feature of rule 23").

In this case, an irreconcilable conflict exists between Plaintiffs' FLSA collective action and their Rule 23 class action.  As described above, Plaintiffs' class claims are entirely dependent upon their FLSA claim.  Thus, pursuing those claims on a class action basis will necessarily require a determination of rights under the FLSA, which in turn could prejudice the rights of employees who do not wish to opt-in to the collective action, but fail to opt-out of the class action.  Even Plaintiffs recognized the conflict between their claims and the likelihood that they and other putative class members would be confused by the opt-in and opt-out provisions in this case.  In the Motion for Protective Order, Plaintiffs argued Xclusive's dissemination of its Arbitration Agreement to employees "transformed the Rule 23 opt-out class into an opt-in class. That conduct is antithetical to the Rule 23 scheme and therefore improper."  [Doc. 27 at p. 7].

Plaintiffs' simultaneous pursuit of both Rule 23 class and Section 216 collective action claims is similarly "antithetical" and "improper."

## <u>CONCLUSION</u>

The Court should dismiss the Amended Complaint in its entirety and with prejudice.

Respectfully submitted this 8th day of August, 2016.

SHERMAN & HOWARD L.L.C.

<u>*s/ Jonathon M. Watson*</u>
Jonathon M. Watson
W.V. Bernie Siebert
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Telephone:  (303) 299-8286
Email:  jwatson@shermanhoward.com
          bsiebert@shermanhoward.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on this 8th day of August, 2016, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood, Esq.
Towards Justice
1535 High Street, Suite 300
Denver, CO 80218
Email:  alex@towardsjustice.org

<u>*s/ Lynn Zola Howell*</u>

35