**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-00671-RM-MJW

ISABEL VALVERDE;
MARIA SONIA MICOL SIMON; and those similarly situated,

Plaintiffs,

v.

XCLUSIVE STAFFING, INC; *ET AL.*,

Defendants.

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Xclusive Staffing, Inc., Xclusive Management, LLC d/b/a Xclusive Staffing, Xclusive Staffing of Colorado, LLC, (collectively, "Xclusive") Diane Astley, Omni Interlocken Company, LLC, Omni Hotels Management Corporation, Marriott International, Inc., (collectively "Defendants") submit the following Reply in Support their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) & (6) ("Reply"), and state as follows:[1]

### **INTRODUCTION**

On September 1, 2016, Plaintiffs' filed their Response to Defendants' Motion to Dismiss ("Response"). [Doc. 91]. Plaintiffs' response is riddled with conclusory statements presenting their case theory as undisputed fact. When stripped of its conjecture and attacks on Xclusive, the Response fails to resolve the fatal deficiencies in Plaintiffs' Amended Complaint. The Court should dismiss the Amended Complaint in its entirety.

---

[1] On September 13, 2016, Defendant JMIR filed an Unopposed Joinder of the Motion to Dismiss. The Court has not yet ruled on that Joinder.

## ARGUMENT

**A.      Plaintiffs' RICO Claim Should Be Dismissed.**

     i.      <u>Plaintiffs lack standing to bring a RICO claim.</u>

To sustain a claim under Section 1964(c), Plaintiffs' alleged injury must be based on "a concrete financial loss, and not merely injury to a valuable intangible property interest."[2] *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1232 (D. Colo. 2010). Plaintiffs' alleged injury supporting the RICO claim is wages they claim should have been paid for time worked. Amend. Comp., para. 165. Plaintiffs' also bring various wage and hour claims in an attempt to recover the same unpaid wages. Amend. Comp., paras. 167-190. Thus, Plaintiffs' RICO injury – the money they are allegedly owed for lost wages – depends directly on the result of their wage claims. Unless Plaintiffs prevail on their underlying wage claims, they have no RICO injury.

Plaintiffs attempt to characterize Defendants' argument as "foreclos[ing] civil RICO liability in any case where the plaintiff also asserts a non-RICO claim seeking recovery of damages for the plaintiffs' monetary harm . . . ." Response, p. 5. Plaintiffs' description of the standing principle outlined in the Motion is a logical fallacy. The deficiency in Plaintiffs' RICO claim is *not* that it is brought simultaneously with other claims, but that Plaintiffs cannot prove a "concrete financial loss" unless and until they prevail on their other claims in this case. The only purported financial injury underlying Plaintiffs' RICO claim is allegedly unpaid wages and Plaintiffs are only able to show they are entitled to such wages if they prevail on their wage claims. Accordingly, Plaintiffs are unable to show any "concrete financial loss."

---

[2] Plaintiffs assert this standard is "oft-rejected." Response, p. 6. It is unclear on what Plaintiffs rely for that position. *Ivar* has not been overruled by the Tenth Circuit and other courts in this district have cited it with approval. *Safe Streets All. v. Alt. Holistic Healing*, 2016 WL 1084372 (D. Colo. Mar. 21, 2016)

Plaintiffs' reliance on *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339 (11th Cir. 2008) is similarly misplaced. In *Renta*, the Eleventh Circuit – like Plaintiffs here – construe the standing argument as being grounded in a theory that both a RICO claim and other claim may not proceed simultaneously. *See* 503 F. 3d at 1351. Again, Defendants do not suggest a broad sweeping rule that RICO claims may only be brought in isolation. Rather, RICO claims may only be founded on an actual, cognizable, and non-speculative injury. Indeed, as Plaintiffs quoted from *Renta* in their Response, "whether a plaintiff must pursue other remedies before a RICO claim depends on whether those other contingencies are sufficiently likely to mitigate the plaintiff's loss that damages in the RICO case cannot be ascertained, or may not have occurred at all." Response, p. 8 (quoting *Renta*, 503 F. 3d at 1351). Plaintiffs' RICO injury depends entirely on the success of their wage claims and, therefore, those damages "cannot be ascertained or may not have occurred at all." Plaintiffs' RICO claim fails and must be dismissed.

    ii.    <u>Plaintiffs' RICO claim is preempted by the FLSA.</u>

As noted above, Plaintiffs' RICO claim and their FLSA claim are founded on their allegation that Xclusive failed to compensate them for certain wages. Amend. Comp., paras. 165, 171-174. Indeed, Plaintiffs' RICO and FLSA claims are based on the exact same facts and seek to recover the exact same alleged unpaid wages. Plaintiffs' do not attempt to dispute this fact in their Response. Nor do Plaintiffs make any attempt to distinguish between this matter and several of the cases cited in the Motion that specifically hold the FLSA preempts RICO claims under these circumstances. *See e.g.,* Motion, pp. 8-9 (collecting cases).

In the Response, Plaintiffs assert "there is **nothing about RICO** that precludes its application to a wrongful course of conduct that also involves violations of the FLSA."

Response, p. 12 (emphasis in original). The question, however, is not what RICO precludes, but whether the FLSA is the exclusive remedy for wage and hour violations. There can be no question that it is. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194–95 (4th Cir. 2007) ("Congress prescribed exclusive remedies in the FLSA for violations of its mandates. And we note that we are not alone in so concluding.") (collecting cases).

Moreover, contrary to Plaintiffs' assertion, the relevant inquiry is whether the non-FLSA claim is based on the same factual allegations as the FLSA claim. *See e.g., Anderson*, 508 F.3d at 194-95; *Stephenson v. All Resort Coach, Inc.*, 2013 WL 4519781, at *9 (D. Utah Aug. 26, 2013); *Mickle v. Wellman Prod. LLC*, 2008 WL 3925266, at *3 (N.D. Okla. Aug. 20, 2008). Because Plaintiffs' RICO claim is based on the exact same factual allegations and purported injury as their FLSA claim, the RICO claim is preempted and must be dismissed.

    iii.    <u>Plaintiffs fail to state a RICO claim.</u>

        a.    *Plaintiffs' First Purported Enterprise fails.*

Plaintiffs' First Purported Enterprise is an alleged association-in-fact between Defendant Astley and "Xclusive and all of its associated entities and subsidiaries." Amend. Comp., para. 85. Plaintiffs further allege Defendant Astley owns Xclusive, established Xclusive's pay practices, was responsible for meeting with the DOL during their previous investigations, and it was Defendant Astley's past representations to the DOL that form the basis for the RICO claim. *See* Amended Comp., paras. 20, 87, 94-109. Accordingly, Defendant Astley is part-of, and not separate-from, Xclusive and Plaintiffs are unable to meet the requirements of an enterprise. *See Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp.*, 965 F.2d 879, 885-86 (10th Cir. 1992); *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local*, 883 F.2d 132 (D.C. Cir. 1989).

Nearly identical RICO allegations were recently rejected by Magistrate Judge Shaffer in *Llacua v. Western Range Association*, Civil Action No. 15-1889-REB-CBS, (June 3, 2016). *See* Recommendation attached to the Motion as **Exhibit A**. In that case, one of plaintiffs' alleged RICO enterprises, the "Richins Enterprise," consisted of an association-in-fact between "WRA (Western Range Association) and Richins, its former executive director and president." **Exhibit A**, p. 36. Moreover, plaintiffs claimed the corporate officer-defendant "was substantially involved in WRA's alleged fraudulent policy of representing to state agencies and the DOL . . . that shepherds would be reimbursed for their expenses and would not have unreasonable fees deducted from wages, knowing that this would not happen." *Id.* at p. 39. Magistrate Judge Shaffer rejected these allegations as insufficient to allege a RICO enterprise because "as a matter of law, a corporation and its officer cannot be a RICO association-in-fact regarding conduct undertaken in the corporation's regular business as an officer of the corporation." *Id.* at p. 38.

Like in *Llacua*, here, Plaintiffs allege a corporate officer (Defendant Astley) was engaged in an enterprise between herself and the corporation-defendants ("Xclusive and all of its associated entities and subsidiaries.") Amend. Comp., para. 85. Also like in *Llacua*, here, Plaintiffs claim Astley, in her role as owner of Xclusive, was involved in conduct relating to Xclusive's ordinary business as an officer of Xclusive, including the conduct that underlies Plaintiffs' RICO claim. *See* Amend. Comp., paras. 87, 94-109. Thus, Plaintiffs have not alleged sufficient distinctness between Astley and Xclusive and the First Purported Enterprise fails.

Plaintiffs' Response relies entirely on *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001). In that case Cedric Kushner "sued Don King, the president and sole shareholder of Don King Productions, a corporation, claiming that King had conducted the boxing-related

5

affairs of Don King Productions in part through a RICO 'pattern,' . . ." 533 U.S. at 160. Notably, Plaintiffs' counsel made nearly identical arguments in *Llacua* regarding their alleged enterprise as they make here, including relying almost exclusively on *Cedric Kushner*. *See* ***Exhibit A***, pp. 40-41. Magistrate Judge Shaffer considered Plaintiffs' counsel's arguments and had little trouble distinguishing *Cedric Kushner*, stating, "[t]he case is inapposite because it did not involve an overlapping association-in-fact." *Id*. at p. 40. Magistrate Judge Shaffer also said,

> Plaintiffs do not allege that Richins was acting other than in his capacity as executive director of WRA in the regular business of WRA. Plaintiffs also do not allege that Richins took over or influenced WRA so as to obtain an appearance of propriety for job orders or applications, nor to engage in criminal conduct that could not be as easily discovered as if Richins submitted job orders or applications on behalf of only his own ranch.

***Exhibit A***, p. 41 (also noting that "lower courts have declined to extend *Cedric Kushner* beyond its specific factual scenario). Based on these factual distinctions, Magistrate Judge Shaffer held that "because Plaintiffs do not allege any enterprise distinct from the persons alleged to have engaged in them, Counts IV and V fail as a matter of law."[3] *Id.* The same is true here. Plaintiffs do not allege Defendant Astley was acting other than in her capacity as owner of Xclusive in the regular business of Xclusive. *See* Amend. Comp., paras. 87, 94-109. Thus, Plaintiffs do not allege an enterprise distinct from Defendant Astley and the First Purported Enterprise fails.

        a.    *Plaintiffs' Second Purported Enterprise fails.*

Plaintiffs' Second Purported Enterprise consists of "Xclusive and all of its associated entities and subsidiaries . . ." Amend. Comp., para. 86. Plaintiffs' Second Purported Enterprise fails for two reasons.

---

[3] Judge Blackburn fully adopted Magistrate Judge Shaffer's recommendations and found "nothing to support any suggestion that the magistrate judge misstated the relevant law or misapplied it to the factual allegations of the operative complaint." *See* Judge Blackburn's Order, p. 2, attached hereto as ***Exhibit E***.

First, the RICO claim is only alleged against Defendant Astley. Amend. Comp. p. 28. Thus, as currently formulated, without Defendant Astley, there can be no RICO claim. Plaintiffs argue they asserted "both enterprise formulations – one including the RICO person in the enterprise and one not – to avoid dismissal on exactly this technical question." Response, pp. 16-17. Plaintiffs' response misses the point, however, and ignores the fact that the RICO claim is *only* alleged against Defendant Astley. Plaintiffs cannot state a RICO claim against the Xclusive Defendants when they have not alleged the RICO claim against those Defendants.

Even assuming, *arguendo*, Plaintiffs can overcome their pleading deficiencies, the Second Purported Enterprise still fails. It is well-established that a company cannot form a RICO enterprise with its subsidiaries. Motion, pp. 13-14 (collecting cases). In the Response, Plaintiffs neither address this legal principle nor the relevant cases.

  iv. <u>Plaintiffs fail to state a racketeering activity.</u>

Plaintiffs allege four "interrelated wire fraud schemes (1) the USDOL Scheme, (2) the Website Scheme, (3) the Electronic Timekeeping Scheme, and (4) the Faxed Timesheet Scheme." Amended Comp., para. 92. Plaintiffs' Response conflates its allegations relating to these separate schemes and fails to overcome the individual deficiencies in each of the schemes.

In the Response, Plaintiffs conclusorily state without citation to any law, that paychecks can constitute fraudulent misrepresentations. Response, p. 17. This conclusion, however, is in derogation of *Williams v. U.S.*, 458 U.S. 279 (1982), which held that an individual's deposit of checks that were not supported by sufficient funds did not constitute a false statement. The Supreme Court in *Williams* did not limit its holding to whether paychecks may constitute fraudulent misrepresentations if combined with other statements, as Plaintiffs claim. Rather, the

Court stated unequivocally that "a check is not a factual statement at all and therefore cannot be characterized as 'true' or 'false.'" *Id.* at 284. Thus, Plaintiffs' allegations relating to Xclusive's transmission of paychecks are insufficient to state a racketeering activity and must be dismissed.

Plaintiffs claim, aside from their paychecks, that their timesheets demonstrate a racketeering activity. Response, pp. 17-19. Plaintiffs' argument is illusory. In the Motion, Defendants argued the "Astley Enterprise did not make any misrepresentations as part of the 'Electronic Timekeeping Scheme.'" Motion, p. 17. In support of that argument, Defendants noted that Plaintiffs make no allegations as to who actually inputs the information into the electronic timekeeping system and who is making the "statements" regarding hours worked in the *electronic timekeeping systems*. In Response, Plaintiffs point to their allegations regarding the *Faxed Timesheet Scheme* to argue that Xclusive supervisors enter the time records for employees. Response, pp. 20 (citing Amend. Comp. paras. 116 & 127).[4] Because the electronic timekeeping system does not contain statements made by the Astley Enterprise, the Electronic Timekeeping Scheme fails.

Plaintiffs' Website Scheme also fails. As relevant here, Xclusive's statements on its website involve its belief that it complies with all applicable state and federal laws and, therefore, cannot serve as the predicate act for mail or wire fraud because misrepresentations of law are not actionable. *See* Motion, pp. 17-18 (citing cases). In essence, Plaintiffs' Response is nothing more than their opinion that Xclusive violated the law and, according to Plaintiffs, any statements by Xclusive on its website to the contrary are fraud. Response, p. 21-22. The fact is,

---

[4] Paragraph 116 of the Amended Complaint avers that Xclusive has advertised a "Property Manager" position who is responsible for "managing timekeeping systems." Amend, Comp., para. 116. This allegation has nothing to do with who enters employees' time.

8

Xclusive's website contains statements regarding its compliance with federal and state law. Amend. Comp., paras. 110-114. "It is . . . well-settled, as a general rule, that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 621 (9th Cir. 2004); *Virginia Sur. Co. v. Macedo*, 2009 WL 3230909 at *8 (D.N.J. Sept. 30, 2009).

Finally, Plaintiffs argue the USDOL Scheme should not be dismissed because, according to Plaintiffs, the alleged fraud was directed at a government agency, but it harmed third parties – Defendants' employees." Response, p. 23. Plaintiffs rely on *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) in support of their argument. In *Bridge*, the Court held a plaintiff asserting a RICO claim predicated on mail fraud need not show it *relied* on defendant's alleged misrepresentations. *Id.* at 661. The issue in this case, however, is not reliance, but causation. *See* Motion, p. 21-22. The Supreme Court, in *Anza v. Ideal Steel,* 547 U.S. 451 (2006) considered the required showing for causation.[5] In *Anza*, the Court held that plaintiff could not show proximate causation because "[i]t was the State that was being defrauded and the State that lost tax revenue as a result." *Id.* at 458. Similarly, here, it was the DOL, not Plaintiffs that was allegedly defrauded and suffered a direct injury. Thus, Plaintiffs cannot ground their racketeering activity in Astley's communications with the DOL.

Plaintiffs' USDOL Scheme should also be dismissed because Plaintiffs do not allege Defendant Astley communicated with the DOL through the mail or wires and, instead, admit that Defendant Astley met with the DOL in person to discuss Xclusive's pay practices. Motion, p. 20. In addition, the conduct giving rise to the purported USDOL Scheme, i.e. Xclusive's alleged

---

[5] Plaintiffs ignore the Court's holding in *Anza* and the Court did not modify or overrule that holding in *Bridge*. *See Bridge*, 553 U.S. 639, 646 n. 4.

9

transmission of employee paychecks and pay records, Amend. Comp., para. 103, occurred *after* the alleged improper payments and, therefore, could not have been in furtherance of the Astley Enterprises' purported scheme. *See Schmuck v. United States*, 489 U.S. 705, 710-11 (1989).

### B.     Plaintiffs' Overtime Claims Should Be Dismissed.

Plaintiffs allege two overtime claims: one pursuant to the FLSA and a second pursuant to the Colorado Wage Act ("CWA").  Amend. Comp., paras. 167-180.  In the Amended Complaint, Plaintiffs fail to allege they worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty hours during that week as required to assert a claim for overtime compensation.  *See Martinez v. Xclusive Management, LLC*, Civil Action No. 15-cv-00047-MSK-MEH, pp. 11-12 (August 12, 2015), attached to the Motion as ***Exhibit B***.

In the Response, Plaintiffs appear to argue that because they were allegedly denied rest breaks and meal periods, they should have been compensated for overtime relating to those periods.  Response, p. 24.  If such an allegation is the basis for Plaintiffs' overtime claims, then it must be alleged in the Complaint.  Plaintiffs cannot overcome a motion to dismiss with new allegations in their response. *Smith v. Pizza Hut*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010). Because Plaintiffs do not make these allegations in the Complaint, their overtime claims fail.

### C.     Plaintiffs' Colorado State Wage Claims Should Be Dismissed.[6]

In addition to their CWA claim for overtime, Plaintiffs' Fourth Cause of Action alleges a failure to provide 10-minute breaks, Amend. Comp., paras. 181-185, and their Fifth Cause of Action alleges Xclusive took unlawful deductions from employee paychecks.  Amend. Comp., paras. 186-190.  Plaintiffs' Colorado state wage claims fail and must be dismissed.

---

[6] Plaintiffs only address their CWA claim in the context of their overtime claims.  Thus, Defendants do not address the deficiencies in Plaintiffs' Fourth claim that are outlined in the Motion.  Motion, p. 27.

10

  i. <u>Plaintiffs lack standing to bring Colorado claims for classes outside of Colorado.</u>

Plaintiffs' "Rule 23 Wage Class" and the three hotel subclasses identified in the Amended Complaint are not limited to individuals residing in Colorado or who have suffered an alleged injury in Colorado. Amend. Comp., paras. 132-152. The two named Plaintiffs have not alleged they suffered an "injury in fact" in states other than Colorado. Thus, to the extent the Third, Fourth, and Fifth Causes of Action are based on conduct occurring outside of Colorado, Plaintiffs do not have standing to bring those claims. *Pizza Hut*, 2011 WL 2791331 at *8.

In the Response, Plaintiffs urge the Court to defer the standing issue until after class certification. Response, pp. 31-32. This argument was considered and specifically rejected by the court in *Pizza Hut*. There, the court found "that the issue of plaintiff's standing is appropriately addressed [at the motion to dismiss stage]." 2011 WL 2791331, at *7 (citing *Warth v. Seldin,* 422 U.S. 490, 498 (1975) ("Whether a Plaintiff has Article III standing is a threshold issue that 'determine[s] the power of the court to entertain the suit.'")). In so holding, the court stated that "this case presents the question of whether the only named plaintiff has standing to bring claims under the laws of various states. This question is relevant whether or not the class is certified." *Id.* The same is true here; the relevant question is whether the two Plaintiffs have standing to bring claims for alleged injuries occurring in other states by other individuals. Here, as in *Pizza Hut*, they do not. Plaintiffs Third, Fourth, and Fifth Causes of Action must be dismissed to the extent they are based on conduct occurring outside of Colorado.

  ii. <u>Plaintiffs' fail to state a claim for Xclusive's deductions from their paychecks.</u>

Plaintiffs' Fifth Cause of Action alleges Defendants unlawfully took deductions from employees' paychecks "as a processing fee" and "for things such as uniforms, name badges, and

11

background checks." Amend. Comp., paras. 54 and 186-190. Plaintiffs bring this claim pursuant to the CWA. Amend. Comp., para. 188.

Plaintiffs' Response claims, for the first time, that the $3.00 deduction resulted in unpaid overtime pursuant to the FLSA and CWA. Response, pp. 26-28. There are no such allegations in the Amended Complaint and, therefore, these arguments cannot save Plaintiffs' Fifth Claim.

Plaintiffs also argue the deductions violate the CWA because, according to Plaintiffs, the deductions were not for a "good or service." Response, pp. 28-29. First, the CWA does not permit only deductions for goods or services. *See* Colo. Rev. Stat. § 8-4-105(1)(b). Second, Xclusive's deductions from Plaintiffs' checks were lawful pursuant to the CWA. Plaintiffs neither dispute the existence of the agreements nor that the agreements provide for a $3.00 payroll deduction, as well as deductions for the cost of uniforms and nametags.[7] Rather, Plaintiffs argue, without legal citation, that [a] written agreement to deduct $3.00 per pay check with no description of the purpose of the deduction cannot suffice as a written agreement for a 'good or service.' And a vague agreement to deduct $3.00 per pay check for 'placement/process' should not either." Response, p. 29. Plaintiffs' argument fails.

There is no requirement in the statute that payroll deduction agreements contain specific language or describe the purpose of the agreement in great detail. The only requirements are the agreement be enforceable and the deduction be for "loans, advances, goods or services, and equipment or property by an employer to an employee." C.R.S. § 8-4-105(1)(b). Plaintiffs' tools, nametags, and uniforms are equipment or property given by Xclusive to the employees.

---

[7] Plaintiffs state they "object to the authenticity" of the agreements executed by Plaintiffs. Response, p. 25, n. 12. Plaintiffs, however, provide no basis for such objection and have not claimed they did not execute the agreements. Nor could they; Plaintiffs specifically allege Plaintiff Valverde executed the agreement in the Amended Complaint. Amend. Comp., para. 57.

12

Xclusive's distribution of paper checks to employees is also a service under the CWA. Plaintiffs argue providing a check is not a "service" because Xclusive is required to compensate employees. Response, p. 29. Plaintiffs' argument misses the point. The CWA requires that Xclusive compensate employees. Colo. Rev. Stat. § 8-4-103. There are a variety of ways Xclusive could do so, including via direct deposit, cash, check, or deposit onto debit cards. *See* Colo. Rev. Stat. § 8-4-102. The service, therefore, is providing employees a paper check, as opposed to some other method of compensation. Plaintiffs' Fifth Claim must be dismissed.

      iii.    <u>Xclusive's clients should be dismissed from the Fifth Cause of Action.</u>

Plaintiffs argue Xclusive's clients should be held liable for the payroll deductions under a joint employer theory. Response, p. 30. Plaintiffs, however, have not alleged Xclusive and its clients were joint employers. Indeed, the paragraph Plaintiffs cite for this proposition does not contain any factual allegations showing Xclusive and its clients are joint employers. Response, p. 30 (citing Amend. Comp., para. 34). That paragraph only alleges the DOL found Xclusive's "employees are an integral part of the clients' business activities" and "client supervisors take part in training, controlling, and inspecting the work of Xclusive's employees." *Id.* That paragraph falls well short of actually alleging facts supporting joint employer status. Absent allegations supporting a finding of joint employer status, Xclusive's clients cannot be held liable for Xclusive's alleged violations of the law.

**D.**    **Plaintiffs' Breach Of Contract And Quasi-Contract Claims Should Be Dismissed.**

In Count VI, Plaintiffs allege breach of contract and "equity under the laws of the several states." Amended Comp., p. 33. Count VI should be dismissed in its entirety.

13

First, these claims are preempted by the FLSA. In Response, Plaintiffs' argue state law can provide "remedies and procedural advantages th[e] FLSA does not provide." Response, p. 33. The deficiency in Plaintiffs' Sixth Claim, however, is that it is simply a restatement of the FLSA claim. The District of Colorado recently held a breach of contract claim was preempted by the FLSA because it was "clearly just a restatement of the[] FLSA claims." *Barnett v. Pikes Peak Cmty. Coll. Police Dep't*, 2015 WL 4245822, at *5 (D. Colo. July 14, 2015). The same is true here. Plaintiffs' breach of contract, promissory estoppel, and unjust enrichment claims are all based on the same factual allegations as the FLSA claim, *i.e.*, that Defendants failed to pay them certain wages. *See* Amend. Comp., para. 196. Thus, Plaintiffs Sixth Claim is preempted by the FLSA. *Chytka v. Wright Tree Service, Inc.*, 925 F. Supp. 2d 1147, 1173 (D. Colo. 2013).

Plaintiffs' promissory estoppel claim also fails because it is based on Xclusive's statement regarding its intent to comply with the law. Amend. Comp., para. 195. Plaintiffs argue Xclusive made "public and explicit communications about wage policies, and that Plaintiffs justifiably relied" on those statements. Response, p. 34. Plaintiffs' promissory estoppel claim, however, is not based on alleged "public and explicit communications" and there is no allegation in the Amended Complaint regarding those purported communications. Moreover, Plaintiffs wholly failed to allege they were aware of such communications, much less that they "justifiably relied" on those communications in the Amended Complaint. Plaintiffs' new allegations in the Response are insufficient to state a claim. *Pizza Hut*, 694 F. Supp. 2d at 1230.

Finally, Plaintiffs' unjust enrichment claim is precluded by the existence of a contract between Xclusive and Plaintiffs. Motion, pp. 32-33. In the Response, Plaintiffs cite *Robert W Thomas & Anne McDonald Thomas Trust v. Inland Pac. Colo.*, 2012 WL 2190852 (D. Colo.

14

June 14, 2012) and argue their unjust enrichment claim may be pled in the alternative. Response, p. 34.  Importantly, the plaintiff in *Inland* was only permitted to plead his unjust enrichment and breach of contract claims in the alternative because there was a chance the underlying contract would be found unenforceable.  *Id.* at 14-15.  In contrast, here, Plaintiffs have not alleged their agreements are not valid and enforceable.  Thus, there is no basis to permit Plaintiffs to plead the unjust enrichment and breach of contract claims in the alternative.

**E.     Plaintiff Cannot Simultaneously Maintain Class And Collective Action Claims.**

As described in the Motion, Plaintiffs cannot simultaneously maintain a class and collective action in this matter because Rule 23 and Section 216(b)'s requirements are inherently incompatible.  *See* Motion, pp. 33-35.  In the Response, Plaintiffs do not address the fact that their claims are in direct conflict and the opt-in and opt-out procedures will likely confuse putative plaintiffs.  Response, p. 34.  Because of this conflict, Plaintiffs should not be permitted to simultaneously pursue class and collective action claims.

## CONCLUSION

Plaintiffs have not requested leave to amend the Amended Complaint and the time for doing so without leave has expired.  [Doc. 41].  The Court should dismiss the Amended Complaint in its entirety and with prejudice.

Respectfully submitted this 29th day of September, 2016.

                                               SHERMAN & HOWARD L.L.C.

                                               *s/ Jonathon M. Watson*
                                               Jonathon M. Watson
                                               W.V. Bernie Siebert
                                               633 Seventeenth Street, Suite 3000
                                               Denver, CO  80202
                                               Email:  jwatson@shermanhoward.com

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 29th day of September, 2016, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood, Esq.
David Seligman, Esq.
Towards Justice
1535 High Street, Suite 300
Denver, CO 80218
Email:  alex@towardsjustice.org
         david@towardsjustice.org

Lisa Hogan Esq.
Martine Wells, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202
Email:  lhogan@bhfs.com
         mwells@bhfs.com

*s/ Lynn Zola Howell*

16

Active/43785401.1