**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-00671-RM-MJW

ISABEL VALVERDE;
MARIA SONIA MICOL SIMON; and those similarly situated,

Plaintiffs,

v.

XCLUSIVE STAFFING, INC; *ET AL.*,

Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Defendants Xclusive Staffing, Inc., Xclusive Management, LLC d/b/a Xclusive Staffing, Xclusive Staffing of Colorado, LLC, (collectively, "Xclusive") Diane Astley, Omni Interlocken Company, LLC, Omni Hotels Management Corporation, Marriott International, Inc., (collectively "Defendants") submit the following Reply in Support their Motion to Compel Arbitration as to Plaintiff Simon ("Reply"), and in support thereof, state as follows:

**ARGUMENT**

**A.    The Arbitration Agreement is Enforceable under the FAA.**

In light of the FAA's strong policy in favor of arbitration, and in the absence of binding precedent holding that a class waiver provision is unenforceable as a matter of law, the Mutual Arbitration Agreement (the "Agreement")[1] should be enforced consistent with this district's case law, the federal courts' majority view, and the Supreme Court's precedent. Because arbitration

---

[1] For purposes of this Motion, Defendants cite and quote the English version of the Agreement, attached to Defendants' Motion to Compel Arbitration as Exhibit A [Doc. 66-1].

agreements must be enforced as written, and because class waivers are not prohibited by the NLRA, Plaintiff must be compelled to arbitrate her claims on an individual basis.

      i.    <u>The FAA requires enforcement of arbitration agreements according to their terms.</u>

The FAA's primary substantive provision provides that a written agreement to arbitrate a controversy arising out of that contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Consistent with that provision, "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify *with whom* [the parties] choose to arbitrate their disputes." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. —, 133 S. Ct. 2304, 2309 (2013) (citation and internal quotation marks omitted). The "overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so far as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). At all times, however, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (internal quotation marks omitted).

Plaintiff Simon and Defendants agreed to resolve various claims through binding arbitration. Plaintiff does not dispute that her claims against Defendants fall within the scope of the Agreement. Nor does Plaintiff dispute that the Agreement explicitly waives her right to any representative claims. Rather, in her Response to Defendants' Motion to Compel Arbitration [Doc. 89] ("Response"), Plaintiff argues the Agreement is unenforceable because it waives her right to bring collective and class claims. Response, pp. 8-12. Because § 7 of the NLRA grants employees the right "to engage in other concerted activities," 29 U.S.C. § 157, Plaintiff argues

2

she has the "fundamental," unwaivable right "to engage in class and collective litigation." Response, p. 10.[2] That was the Board's position in *In re D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (N.L.R.B. Jan. 3, 2012) ("*Horton I*"), a position decisively reversed by the Fifth Circuit in *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013) ("*Horton II*"), and a position subsequently rejected by a majority of courts analyzing the issue. Because that position is neither supported by the NLRA nor Supreme Court precedent, the Court should reject it.

      ii.      <u>The NLRA contains no express prohibition of class waivers.</u>

The FAA's requirement that arbitration agreements be enforced according to their terms may be overridden by a "contrary congressional command." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see Morton v. Mancari*, 417 U.S. 535, 551 (1974) (courts are "not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective"). Plaintiff, who opposes arbitration, has the burden to show that Congress clearly intended to preclude a waiver of the judicial forum. *Gilmer*, 500 U.S. at 26.

Plaintiff, however, points to no contrary congressional command capable of overriding the FAA's strong policy of enforcing arbitration agreements as written. When Congress has restricted the use of arbitration, "it has done so with clarity." *CompuCredit Corp. v. Greenwood*,

---

[2] Plaintiff also conclusively states in a footnote that the Court "may deny enforcement of the arbitration agreement based on the Norris-LaGuardia Act." Response, p. 8 n.1. Plaintiff provides no support for her request other than to quote the Act's preamble, which notes generally that employees should be "free of 'interference' or 'restraint' by employers when they engage in 'concerted activities . . . .'" *Id.* (citing 29 U.S.C. § 102). The substantive provisions of that Act, however, have nothing to do with concerted litigation or arbitration, but instead focus on employees' right to strike and to join a labor organization. *See* 29 U.S.C. § 104 ("No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute [from doing certain acts].").

3

132 S. Ct. 665, 672 (2012).  Such clarity is lacking here.  Section 7 of the NLRA does not mention arbitration, nor does it specify the right to take legal action, be it individually or collectively.  Nowhere does the NLRA create a substantive right to bring class claims that can override the FAA's preference for enforcing arbitration agreements as written.[3]  Section 7 simply ensures employees can self-organize, join labor unions, bargain collectively, and otherwise act "concerted[ly]."  Judge Ikuta, dissenting in a recent Ninth Circuit opinion, aptly explains:

> A natural reading of § 7's right "to engage in other concerted activities . . ." enables employees to jointly arrange, plan, and carry out group efforts to dispute employer positions.  In a legal context, this could include joint legal strategies, shared arguments and resources, hiring the same attorneys, or even requesting the Department of Labor to bring an independent action against the employer.

*Morris v. Ernst & Young, LLP*, 2016 WL 4433080, at *15 (9th Cir. Aug. 22, 2016) (Ikuta, J., dissenting).  Taken further, employees could attempt mutual pre-dispute resolution, file a joint charge with the NLRB or EEOC, or testify on one another's behalf.[4]  In all instances, the employees are acting concertedly.

---

[3] Congress reenacted the FAA in 1947, twelve years after the NLRA, fifteen years after the Norris-LaGuardia Act, and nine years after the FLSA.  "The decision to reenact the FAA suggests that Congress intended its arbitration protections to remain intact even in light of the earlier passage of three major labor relations statutes."  *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053 (8th Cir. 2013).

[4] Additionally, the Court should find this case is not controlled by the Board's holding in *Horton I*, which was limited to arbitration agreements barring *all* protected concerted action.  *Horton I* at *16.  Even if *Horton I* had not been overruled, this case is distinguishable "because [the Agreement] does not preclude an employee from filing a collective claim or charge with a governmental agency, such as the NLRB."  *Hickey v. Brinker Int'l Payroll*, No. 1:13-cv-00951-REB-BNB, 2014 WL 622883, at *2 n.2 (D. Colo. Feb. 18, 2014) (citing *Owen*, 702 F.3d at 1055).  In *Owen*, the court held that an arbitration agreement falls outside the parameters of *Horton I* where it "does not preclude an employee from filing a complaint with an administrative agency such as the Department of Labor" nor prevent any such agency "from investigating and, if necessary, filing suit on behalf of a class of employees."  702 F.3d at 1053-54.  Because the present Agreement does not prohibit concerted activity, but instead simply seeks the voluntary waiver of an employee's use of one procedural mechanism, *Horton I* does not apply.

That certain *types* of concerted activity might be unavailable is unsurprising. Employees frequently waive their right to act concertedly, such as when no-strike provisions are included in collective bargaining agreements, and when putative plaintiffs opt out of class litigation. Other concerted activities are procedurally constrained, such as the statutory requirements for proceeding as a Rule 23 class action or a § 216(b) collective action. And others are outright illegal, such as concerted threats and coercion and unlawful secondary activity (NLRA § 8(b)(4)).

Undoubtedly, concerted activity is not "guaranteed" at all times and under all circumstances. The NLRA does "not expressly preserve any right for employees to use a specific *procedural* mechanism to litigate or arbitrate disputes collectively," and it certainly does not create "an unwaivable right to such mechanism." *Morris*, 2016 WL 4433080, at *15 (Ikuta, J., dissenting). Plaintiff's "attempt to equate a substantive right to concerted action with a legal procedural mechanism for resolving disputes has no basis in history or Supreme Court precedent." *Id.* at *16; *see also Gilmer*, 500 U.S. at 32 ("the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred").

    iii.    <u>The majority view and precedent from this district supports the enforcement of class waivers.</u>

Although the Tenth Circuit has not yet addressed the class waiver issue, at least two courts in this District have. Both joined the majority of courts—including the Fifth, Eighth, and Second Circuit Courts of Appeal—to uphold class waivers and compel individual arbitration. This case merits the same outcome.

5

Less than five months ago, the District of Colorado directly addressed class waivers in the context of a motion to compel arbitration in *Pollard v. ETS PC, Inc.*, No. 16-cv-0097-WJM-MJW, 2016 WL 2983530, at *10 n.6 (D. Colo. May 12, 2016). The court, agreeing with the majority view,[5] held that the right under the NLRA to proceed as a class action was waivable through an arbitration clause and, thus, plaintiffs' claims "must proceed in arbitration individually, not by way of any class or collective procedure." *Id.* at *1. In its analysis, the court addressed the NLRB's "crucial argumentative move," which is "to declare that the NLRA § 157 right to act concertedly is 'substantive.'" *Id.* at *12. Plaintiff makes the same argument here. Response, p. 10. But the court in *Pollard*, following a majority of courts that have analyzed the issue, rejected that argument. 2016 WL 2983530, at *14.

"When discussing rights that may be waived (procedural) versus those that may not (substantive), the Supreme Court has never used 'substantive' to mean anything but the statutory rights that give rise to the plaintiff's cause of action." *Id.* Because Plaintiff is suing under the FLSA[6], RICO, and state laws—and not the NLRA—there is "no sound basis for adopting the label 'substantive'" that was unsuccessfully applied by the Board in *Horton I*. *Id.* Moreover, "any claim to a right to try to proceed as a class is waivable, regardless of whether the rights under the NLRA (or the FAA) are considered substantive or procedural." *Id.* (citing *Italian Colors*, 133 S. Ct. at 2309-10).

Because "the success of a particular concerted action will depend on many uncontrollable factors," the NLRA right purportedly at stake is not an *absolute* right to proceed as a class, but an

---

[5] *See Pollard*, 2016 WL 2983530, at *10 n.6 (collecting cases).

[6] "Supreme Court precedents inexorably lead to the conclusion that the waiver of collective action claims is permissible in the FLSA context." *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 (2d Cir. 2013).

6

*attempt* to proceed as one. *Id.* at *13. As the court in *Pollard* put it, it is "the right to attempt to bring a class or collective action free of an *a priori* prohibition on such an attempt." *Id.*

One of the many cases the *Pollard* court cited with approval was an earlier District of Colorado decision, *Hickey v. Brinker Int'l Payroll*, No. 1:13-cv-00951-REB-BNB, 2014 WL 622883 (D. Colo. Feb. 18, 2014). In *Hickey*, plaintiffs asked the court to stay determination of defendant's motion to compel arbitration of plaintiffs' wage and hour claims until after the NLRB resolved a charge plaintiffs filed. *Id.* at *2. In their charge, filed after plaintiffs filed their lawsuit, plaintiffs argued the arbitration agreements "improperly infringe on their right to engage in concerted activity" under the NLRA. *Id.* Because the case upon which plaintiffs relied (*Horton I*) had been overruled outright by the Fifth Circuit (*Horton II*), the *Hickey* court saw no reason for staying a decision on the motion to compel. Moreover, as the Fifth Circuit concluded,

> The NLRA should not be understood to contain a congressional command overriding application of the FAA. . . . Because the Board's interpretation does not fall within the FAA's 'savings clause,' and because the NLRA does not contain a congressional command exempting the statute from application of the FAA, the Mutual Arbitration Agreement must be enforced according to its terms.

*Horton II*, 737 F.3d at 362 (internal citation omitted).

The Seventh and Ninth Circuit's recent adoption of the NLRB's flawed position from *Horton I* does not change the outcome here. Those courts based their decision to invalidate class waivers on the following reasoning: (1) an arbitration agreement's class waiver is "illegal" because it violates the NLRA, (2) illegality is a defense to contracts, including arbitration agreements, and (3) an "illegal" arbitration agreement is unenforceable under the FAA's savings clause. *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016); *Morris*, 2016 WL 4433080. As

7

described above, such reasoning is fatally flawed because it is based on the false premise that an employee's voluntary waiver of the right to proceed collectively is "illegal." Such a waiver would be illegal only if the NLRA contained a "contrary congressional command," and no such command exists.

Plaintiff Simon asks the Court to ignore her contractual obligation to arbitrate her claims individually. Under Plaintiff Simon's theory, and the Board's failed theory from *Horton I*, class litigation should be required, and arbitration should be permitted only when an employee brings an individual claim. "In other words, whether the employer may go to arbitration is effectively at the election of the employee." *Pollard*, 2016 WL 2983530, at *16. But Plaintiff's fabrication of an NLRA-based "fundamental" right to class action is not only contrary to Supreme Court precedent, it "exhibits the very hostility to arbitration that the FAA was passed to counteract." *Morris*, 2016 WL 4433080, at *17 (Ikuta, J., dissenting); *see Concepcion*, 563 U.S. at 342 (recognizing that pre-FAA judicial antagonism to arbitration agreements "manifested itself in a great variety of devices and formulas declaring arbitration against public policy") (internal quotation marks omitted).

For these reasons, and the reasons set forth by a majority of courts that have addressed this issue, Plaintiff must be compelled to arbitrate her claims on an individual basis.

**B.     The Agreement's Enforceability is Not Affected by Execution after Litigation Began.**

Plaintiff again argues the Agreement is unenforceable "because Xclusive presented the arbitration agreement to Simon after a Rule 23 class action had already been filed on her behalf" Response, p. 12, which simply restates the unsupported arguments Plaintiff made in the previously-filed Motion for Protective Order. *See* [Doc. 27, pp. 6-7]. Contrary to Plaintiff's

8

empty assertion, employees are not required to "affirmatively reject the arbitration requirement." Response, p. 13. The Agreement is not self-effectuating; it becomes effective only if an employee *voluntarily* agrees to its terms and executes the Agreement. An employee's inaction by not entering into the Arbitration Agreement is all that is required for the Agreement *not* to be effective. Further because the Agreement does not conflict with Rule 23's opt-out process—indeed, Plaintiff provides *no* cases to support the proposition—the argument must be rejected.

**C.     Whether Simon Signed the Arbitration Agreement is a Question for the Arbitrator.**

i.     <u>The Arbitration Agreement delegates formation disputes to the arbitrator.</u>

In her Response, Plaintiff tries to create an issue of fact regarding whether she entered into the Agreement by introducing a declaration filled with conjecture and unsupported by facts. Faced with the FAA's "liberal federal policy favoring arbitration agreements," *Concepcion*, 563 U.S. at 346, Plaintiff's only hope is to persuade the Court there is no such agreement. Despite the existence of an Agreement bearing her signature and a declaration from the employee who distributed the Arbitration Agreements, Plaintiff unbelievably claims she never signed the Agreement. But Plaintiff's argument, however incredible, is not properly before this Court. Rather, arbitrability itself must be decided at arbitration.

The Supreme Court has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70.

9

> The Agreement contains the following delegation provision:
>
> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.

Agreement at § 4. Plaintiff Simon argues (1) she did not sign the Agreement and (2) even if she did, she can void the Agreement. Response, pp. 4-5.

First, this provision represents a "clear and unmistakable" agreement to arbitrate the validity of the Agreement. *See Rent-A-Center*, 561 U.S. at 79. The parties specifically delineated the areas in which the arbitrator would have jurisdiction, including to evaluate "the interpretation, applicability, enforceability, or formation of th[e] Agreement." Agreement at § 4. Moreover, the parties contemplated and agreed the arbitrator would consider claims that the Agreement is "void or voidable." *Id.* The parties also agreed that the arbitration would be administered "under the AAA's Employment Dispute Resolution Rules." In light of the specific delegation provision and the incorporation of the AAA rules, the parties clearly and unmistakably agreed to arbitrate the validity of the Agreement. *Getzelman v. Trustwave Holdings*, 2014 WL 3809736, at *5 (D. Colo. Aug. 1, 2014).

Second, because Plaintiff challenges the validity of the Agreement as a whole, rather than the delegation provision specifically, the challenge must be reserved for the arbitrator. *See Rent-A-Center*, 561 U.S. at 72 ("unless [the employee] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator"); *see also Getzelman*, 2014 WL 3809736 at *5 ("[B]ecause Plaintiff failed to challenge the delegation clause, the arbitrator, not this Court, must construe Plaintiff's claim of unconscionability.").

10

### ii. The evidence demonstrates Plaintiff Simon voluntarily executed the Agreement.

Even assuming, *arguendo*, it is proper for the Court to consider the enforceability of the Agreement, the evidence demonstrates Simon voluntarily executed the Agreement. Employees' paychecks are available each Monday, and employees regularly pick up their paychecks directly from Xclusive's offices.[7] To do so, employees enter Xclusive's office and wait in line until it is their turn to get their check. Selene Hockenberger was responsible for distributing paychecks while she worked at Xclusive. Along with the paychecks, Hockenberger kept two stacks of Arbitration Agreements on her desk – one of English Agreements and another of Spanish Agreements. When an employee reached the front of the line, Hockenberger verified their identification and retrieved their paycheck. Simultaneously, Hockenberger asked the employee to take an Arbitration Agreement, review it, and sign it. If employees had questions about the Agreement, Hockenberger referred them to their supervisors. Hockenberger never told employees they had to sign the Agreement, they could not get their paycheck if they did not sign the Agreement, or the Agreement related to work injuries.

Plaintiff Simon claims she "would never have signed [the Agreement] because it is written in Spanish" and, according to her, "I don't speak Spanish." Simon Decl. II at ¶ 14. But Hockenberger did not give Simon the Agreement; Plaintiff Simon was responsible for taking the Agreement off Hockenberger's desk. Simon was free to choose whichever Agreement she preferred, or to choose to sign neither. Moreover, if Simon mistakenly took a Spanish version, she could have told Hockenberger, "I don't speak Spanish," and picked up the English version.

---

[7] On September 28, 2016, Plaintiffs took Selene Hockenberger's deposition in preparation for the October 13, 2016 hearing. This Reply incorporates information from that deposition, and Defendants will supplement this Reply with portions of the deposition transcript once it is available.

11

But she did not. Furthermore, in June 2016, when Defendants attached her signed Spanish-language Agreement to its Response to Plaintiff's Motion for Protective Order, Plaintiff remained silent. *See* [Doc. 38-2, Ex. 1]. Also, notably, Simon's signature on her newest declaration—like that on her first declaration—matches the signature on the Agreement. *See* Doc. 66-2.

Plaintiff claims she "would not" and "did not" sign the Agreement. Simon Decl., Aug. 31, 2016 [Doc. 89-1] at ¶¶ 10, 13. In the same breath, however, Simon argues, "if [she] did sign the arbitration agreement, she did so under duress." Response, p. 5. Defendants are left trying to hit a moving target. Why claim duress if she is certain she did not sign the Agreement? Because the overwhelming facts demonstrate she *did* sign it. And, other than the unsupported allegations in the Response, Plaintiff provides nothing—least of all, *facts*—to support a duress defense.

### D. Because Plaintiff Asserts Intertwined Claims Against Alleged "Joint Employer" Defendants, All Defendants Are Entitled To Enforce The Agreement.[8]

Plaintiff's final argument is that the Agreement is not enforceable against the Defendants who did not sign the Agreement. Response, pp. 14-15. For support, Plaintiff references only the "general rule" that a contract cannot bind a non-party. *Id.* That argument ignores the many exceptions to the general rule that permit a non-signatory to compel a signatory to arbitrate claims.

One such exception "relies on agency principles, and allows a non-signatory to compel arbitration when the relationship between the non-signatory and signatory is so close that failing

---

[8] As explained above, whether all or some Defendants have agreed to arbitrate is an issue reserved for the arbitrator. *See Rent-A-Center*, 561 U.S. at 72 ("unless [the employee] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator"). The rebuttal in Part D is set forth in the unlikely event the Court decides the Agreement's delegation provision is irrelevant.

12

to do so would 'eviscerate the arbitration agreement.'" *Arnold v. DirecTV, Inc.*, No. 4:10-CV-00352-JAR, 2013 WL 6159456, at *1 (E.D. Mo. Nov. 25, 2013) (quoting *PRM Energy Sys., Inc. v. Primenergy, LLC*, 592 F.3d 830, 834 (8th Cir. 2010)). In *Arnold*, the court was confronted with a situation analogous to the case at hand. Rejecting plaintiffs' argument that an arbitration agreement could not be enforced by a non-signatory, the court held that "the close relationship" between defendants, and plaintiffs' "allegations of joint employment and conduct in violation of the FLSA" by the defendants, warranted enforcement of the agreement. *Id.* at *4. The court reasoned, "'Plaintiffs cannot be permitted to argue Defendants are joint employers while, at the same time, argue their relationship is not so close that all Defendants cannot compel arbitration.'" *Id.* (quoting *Carter v. Affiliated Computer Servs., Inc.*, 2010 WL 5572078, at *4 (W.D. Ark. Dec. 15, 2010)).

Similarly, in *Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628, 630-33 (S.D. W. Va. 2001), plaintiffs brought FLSA claims against Labor Ready (a temporary employment agency) and then sought to add 64 businesses for whom plaintiffs worked through Labor Ready (i.e., Labor Ready's customers). Although it was not directly at issue in the case, the court noted "that Labor Ready's customers, if added as defendants in this action, may be entitled to arbitration of the claims against them" because "plaintiff does not seek to distinguish his claims against Labor Ready from those against the Labor Ready customers" who he alleges are joint employers. *Id.* at 640-41. "[I]t appears that the plaintiff may be equitably estopped" from raising that defense. *Id.* at 641.

Under the equitable estoppel theory, compelling arbitration of claims against a nonsignatory is appropriate when "the signatory to the contract containing the arbitration clause

13

raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp., v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds*, *Arthur Andersen LLP v. Carisle*, 556 U.S. 624, 631 (2009). Limiting enforcement of the Agreement to its signatories would cause "the arbitration proceeding [between the two signatories to] be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.*

The District of Colorado applied equitable estoppel in a similar context in *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159 (D. Colo. 2001). There, a former employer brought various trade secret claims against its former employee and his new employer. Both Defendants moved to compel arbitration under the employee's employment agreement with the former employer. *Id.* at 1161-62. The new employer acknowledged it did not sign the employment agreement, but argued that the doctrine of equitable estoppel allows it to compel arbitration of plaintiff's claims. *Id.* at 1165. The claims plaintiff brought against the new employer "involve allegations of substantially interdependent and concerted misconduct by both [defendants]." *Id.* at 1167. The claims were alleged against both defendants, and the allegations used to support those claims were the same for both defendants; the claims against both defendants are "inherently inseparable." *Id.* For those reasons, the District of Colorado held that the "intertwined-claims" equitable estoppel doctrine should apply, and the non-signatory defendant could compel arbitration of the claims against it. *Id.*

Plaintiff's claims in the present case present an even stronger case for equitable estoppel. For example, Plaintiff attempts to bring a class and collective action, alleging "[t]here are questions of law or fact common to the classes that predominate over any individual issues that

14

might exist," including "the Defendants' pay practices" and "the Defendants' failure to pay employees all they are legally owed." Amend. Comp. [Doc. 52] at ¶ 142. Plaintiff also asserts that "Defendants Employed the Plaintiffs" and "Defendants are joint [sic] and severally liable to the Plaintiffs" as "joint employers." *Id.* at ¶¶ 169, 175. Throughout her allegations, Plaintiff refers collectively to "Defendants." The allegations used to support Plaintiff's claims against Xclusive are the same allegations used to support her claims against the other Defendants. As such, the claims are "inherently inseparable." *Weakland*, 171 F. Supp. 2d at 1167; *see also RMES Commc'ns, Inc. v. Qwest Bus. Gov't Servs., Inc.*, No. 05-cv-02185-LTB-MJW, 2006 WL 2128692, at *3 (D. Colo. July 27, 2006) (holding individual defendant met burden of demonstrating claims against him were intertwined with those of the signatory parties and could join arbitration). Significantly, Plaintiff does not contest that her claims are intertwined.

Plaintiff cannot argue Defendants are joint employers while arguing their relationship is not so close to permit the non-signatories from compelling arbitration. She cannot have it both ways and, therefore, all Defendants are entitled to compel arbitration of Plaintiff Simon's clams.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Compel Arbitration should be granted and Plaintiff Simon's claims should be referred to arbitration.

Respectfully submitted this 29th day of September, 2016.

                                            SHERMAN & HOWARD L.L.C.

                                            *s/ Jonathon M. Watson*
                                            Jonathon M. Watson
                                            W.V. Bernie Siebert
                                            633 Seventeenth Street, Suite 3000
                                            Denver, CO  80202
                                            Email:  jwatson@shermanhoward.com

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 29th day of September, 2016, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alexander Hood, Esq.
David Seligman, Esq.
Towards Justice
1535 High Street, Suite 300
Denver, CO 80218
alex@towardsjustice.org
david@towardsjustice.org

Lisa Hogan Esq.
Martine Wells, Esq.
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202
lhogan@bhfs.com
mwells@bhfs.com

*s/ Lynn Zola Howell*

16