# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00671-RM-MJW

ISABEL VALVERDE;
MARIA SONIA MICOL SIMON, and those similarly situated,

Plaintiffs,

v.

XCLUSIVE STAFFING, INC;
XCLUSIVE MANAGEMENT, LLC D.B.A. XCLUSIVE STAFFING;
XCLUSIVE STAFFING OF COLORADO, LLC;
DIANE ASTLEY;
OMNI INTERLOCKEN COMPANY, L.L.C.;
OMNI HOTELS MANAGEMENT CORPORATION;
MARRIOTT INTERNATIONAL, INC.;
JMIR DTC OPERATOR LLC; and
HCA-HEALTHONE LLC D.B.A. SKY RIDGE MEDICAL CENTER,

Defendants.

---

**DEFENDANTS' PARTIALLY UNOPPOSED MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY REGARDING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

---

Defendants, except HCA-HealthOne, LLC, through their attorneys, file this Partially Unopposed Motion for Leave to Submit Supplemental Authority Regarding Defendants' Motion to Compel Arbitration [Doc 66], and in support thereof state as follows:

## COMPLIANCE WITH D.C.COLO.L.Civ.R. 7.1(a)

On February 6, 2017, undersigned counsel for Defendants conferred with Plaintiffs' counsel regarding this Motion. Plaintiffs' counsel stated he has no objection to Defendants' Motion with regard to supplementing the Reply in Support of the Motion to Compel with

citations to Selene Hockenberger's deposition and Plaintiff Simon's testimony at the October 13, 2016 hearing. Plaintiffs' counsel does, however, oppose Defendants' supplementing the Motion to Compel briefing with the Tenth Circuit's recent decision in *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017). Because Plaintiffs' counsel oppose supplementation with *Belnap*, Defendants provide a more robust explanation of *Belnap* and its relevance to this case below.

## MOTION

### A. Unopposed Supplementation Of The Reply In Support Of The Motion To Compel With Citations To The Record.

Defendants move the Court to accept supplemental authority regarding its Reply in Support of the Motion to Compel. At the time Defendants' Reply was filed, Plaintiffs had taken Selene Hockenberger's deposition, but the parties had not yet received the deposition transcript. Because the parties did not have the transcript, Defendants were unable to cite the transcript in their Reply. To explain these circumstances, Defendants included the following Footnote in the Reply,

> On September 28, 2016, Plaintiffs took Selene Hockenberger's deposition in preparation for the October 13, 2016 hearing. This Reply incorporates information from that deposition, and Defendants will supplement this Reply with portions of the deposition transcript once it is available.

Defendants' Reply in Support of the Motion to Compel, p. 11, fn. 7, [Doc. 105]. While recently reviewing the briefing relating to the Motion to Compel, Defendants realized that it failed to supplement its Reply with citations to Hockenberger's deposition transcript. The below statements of fact were included in Defendants' Reply, without citation. Defendants restate the statements of fact here and include the appropriate citations to Hockenberger's deposition.

Defendants also attach the relevant portions of Hockenberger's deposition transcript to this Motion as *Exhibit 1*.

> Even assuming, *arguendo*, it is proper for the Court to consider the enforceability of the Agreement, the evidence demonstrates Simon voluntarily executed the Agreement. Employees' paychecks are available each Monday, and employees regularly pick up their paychecks directly from Xclusive's offices. Hockenberger Depo. Tr. 11:3-18. To do so, employees enter Xclusive's office and wait in line until it is their turn to get their check. Hockenberger Depo. Tr. 12:3-24; 54:24-25; 55:1-17. Selene Hockenberger was responsible for distributing paychecks while she worked at Xclusive. Hockenberger Depo. Tr. 11:3-18. Along with the paychecks, Hockenberger kept two stacks of Arbitration Agreements on her desk – one of English Agreements and another of Spanish Agreements. Hockenberger Depo. Tr. 57:17-25; 58:1-25. When an employee reached the front of the line, Hockenberger verified their identification and retrieved their paycheck. *Id.* Simultaneously, Hockenberger asked the employee to take an Arbitration Agreement, review it, and sign it. Hockenberger Depo. Tr. 18:22-25; 19:1-10; 58:2-25; 59:1-7. If employees had questions about the Agreement, Hockenberger referred them to their supervisors. Hockenberger Depo. Tr. 60:18-23. Hockenberger never told employees they had to sign the Agreement, they could not get their paycheck if they did not sign the Agreement, or the Agreement related to work injuries. Hockenberger Depo. Tr. 24:3-24; 60:3-25; 61:1-2.
>
> Plaintiff Simon claims she "would never have signed [the Agreement] because it is written in Spanish" and, according to her, "I don't speak Spanish." Simon Decl. II at ¶ 14. But Hockenberger did not give Simon the Agreement; Plaintiff Simon was responsible for taking the Agreement off Hockenberger's desk. Tr. 58:2-25; 59:1-7. Simon was free to choose whichever Agreement she preferred, or to choose to sign neither. Tr. 58:2-25; 59:1-7, 24-5; 60:3-4. Moreover, if Simon mistakenly took a Spanish version, she could have told Hockenberger, "I don't speak Spanish," and picked up the English version. Hockenberger Depo. Tr. 61:3-11. But she did not. Furthermore, in June 2016, when Defendants attached her signed Spanish language Agreement to its Response to Plaintiff's Motion for Protective Order, Plaintiff remained silent. *See* [Doc. 38-2, Ex. 1]. Also, notably, Simon's signature on her newest declaration—like that on her first declaration—matches the signature on the Agreement. *See* Doc. 66-2.

Defendants' Reply in Support of the Motion to Compel, pp. 11-12, [Doc. 105] (internal footnote omitted) (citations added).

Active/44732849.1

Also relevant[1] is Plaintiff Simon's admission during the October 13, 2016 hearing before this Court that it is her signature on the Arbitration Agreement. *See* October 13, 2016 Hearing Tr. 58:2-12, attached hereto as ***Exhibit 2***. In particular, Plaintiff Simon testified,

> Q    Now, you testified on Direct Examination that that signature is not yours?
>
> A    I did not say that. I said that it [is] my signature.
>
> Q    Oh, that is your signature on that?
>
> A    Yes.
>
> A    I don't know how it did into Spanish, because I don't sign Spanish. It's not even English. I am not sure why I sign in Spanish. Why is it here?
>
> Q    But you agree that that's your signature on the bottom of the page?
>
> A    Yes. However it got there, good question.

October 13, 2016 Hearing Tr. 58:2-12, attached hereto as ***Exhibit 2***. The executed Arbitration Agreement was attached to the Motion to Compel as Exhibit A. This testimony is directly relevant to whether Plaintiff Simon executed the Arbitration Agreement. Because the October 13, 2016 hearing occurred after Defendants were required to file their Reply, they were unable to incorporate Plaintiff Simon's testimony into the Reply. Accordingly, Defendants now request that the Court accept and incorporate the foregoing statements and evidence into their Reply in Support of the Motion to Compel. As noted above, Plaintiffs do not oppose supplementing the Motion to Compel briefing with this information.

---

[1] Defendants maintain that whether Plaintiff Simon executed the Arbitration Agreement should be resolved by the Arbitrator pursuant to the Tenth Circuit's recent decision in *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017) discussed below. Defendants, therefore, only present evidence that Plaintiff Simon did sign the Agreement as an alternative position *if* the Court declines to refer the existence of an enforceable arbitration agreement to an arbitrator.

B.  **Opposed Supplementation Of The Motion To Compel Briefing With *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017).**

Defendants also attach to this Motion as ***Exhibit 3*** a recent Tenth Circuit decision in *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017). In that decision, the Tenth Circuit considered whether issues of arbitrability of a dispute should be resolved by the Court or an arbitrator. Specifically, the Court concluded that when the parties incorporated the JAMS Rules into the relevant arbitration agreement, they "clearly and unmistakably agreed to submit arbitrability issues to an arbitrator, 'including disputes over the interpretation or scope of the agreement under which Arbitration is sought.'" 844 F.3d at 1284. Further, the court concluded "that when the parties clearly and unmistakably agreed to arbitrate arbitrability, all questions of arbitrability – including the question of whether claims fall within the scope of the agreement to arbitrate – had to be resolved by an arbitrator." *Id.* Defendants submit Exhibit 3 as relevant to its Motion to Compel and whether the Court should refer the enforceability of the Arbitration Agreement and arbitrability of Plaintiff Simon's claims to an arbitrator.

As noted in the Reply in Support of the Motion to Compel, the Arbitration Agreement incorporated the American Arbitration Association's Employment Dispute Resolution Rules. *See* Reply in Support of Motion to Compel, p. 10, [Doc. 105] (quoting Section 4 of the Arbitration Agreement, which states that the arbitration would be administered "under the AAA's Employment Dispute Resolution Rules."). AAA's Employment Dispute Resolution Rules – like JAG's rules in *Belnap* – specifically provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA's Employment Dispute Resolution Rules, p. 17, Section 6, attached hereto as ***Exhibit 4***. Moreover, AAA's Rules state

5

that "[t]he arbitrator shall have the power to determine the *existence or validity of a contract* of which an arbitration clause forms a part." *Id.* (emphasis added). Thus, because AAA's Rules – which are incorporated into the Arbitration Agreement – contemplate that the arbitrator, not the Court, will consider *both* the existence of an enforceable arbitration agreement, as well as the arbitrability of the dispute, the parties "clearly and unmistakably" agreed to arbitrate the validity of the Arbitration Agreement, including whether Plaintiff Simon entered the Agreement. *See Belnap*, 844 F.3d at 1284.

WHEREFORE, Defendants respectfully request that the Court accept and consider the supplemental authority attached as Exhibits 1-4 and included in this Motion, in deciding the Motion to Compel Arbitration of Plaintiff Simon's claims. [Doc. 66].

DATED this 7th day of February, 2017.

    Respectfully submitted,

    SHERMAN & HOWARD L.L.C.

    */s Jonathon M. Watson*
    Jonathon M. Watson
    633 Seventeenth Street, Suite 3000
    Denver, CO  80202
    Telephone:  (303) 297-2900
    Facsimile:  (303) 298-0940
    Email:  bsiebert@shermanhoward.com
    Email:  jwatson@shermanhoward.com

    ***Attorneys for Defendants***

# CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 7th day of February, 2017, I electronically filed the foregoing **DEFENDANTS' PARTIALLY UNOPPOSED MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY REGARDING DEFENDANTS' MOTION TO COMPEL ARBITRATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Alexander Hood, Esq. | Lisa Hogan, Esq. |
| David H. Seligman, Esq. | Martine T. Wells, Esq. |
| Towards Justice | Brownstein Hyatt Farber Schreck, LLP |
| 1535 High Street, Suite 300 | 410 Seventeenth Street, Suite 2200 |
| Denver, CO 80218 | Denver, CO 80202-4432 |
| Email: alex@towardsjustice.org | Email: lhogan@bhfs.com |
| Email: david@towardsjustice.org | Email: mwells@bhfs.com |
| ***Attorneys for Plaintiffs*** | ***Attorneys for Defendant HCA-HealthONE LLC d/b/a Sky Ridge Medical Center*** |

                                                  */s Lynn Zola Howell*

7
Active/44732849.1