IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  16-cv-00671-RM-MJW

ISABEL VALVERDE;
MARIA SONIA MICOL SIMON; *and those similarly situated*,

Plaintiffs,

v.

XCLUSIVE STAFFING, INC.,
XCLUSIVE MANAGEMENT, LLC, *dba Xclusive Staffing*,
XCLUSIVE STAFFING OF COLORADO, LLC,
DIANE ASTLEY,
OMNI INTERLOCKEN COMPANY, L.L.C.,
OMNI HOTELS MANAGEMENT CORPORATION,
MARRIOTT INTERNATIONAL, INC., and
HCA-HEALTHONE LLC D.B.A. SKY RIDGE MEDICAL CENTER,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
(Docket No. 65)**

---

**Michael J. Watanabe**
United States Magistrate Judge

        This matter is before the Court on Defendants Xclusive Staffing, Inc., Xclusive

Management, LLC d/b/a Xclusive Staffing, Xclusive Staffing of Colorado, LLC,

(collectively, "Xclusive") Diane Astley, Omni Interlocken Company, LLC, Omni Hotels

Management Corporation, and Marriott International, Inc.'s (collectively "Defendants")

Motion to Dismiss Plaintiffs' Complaint (Docket No. 65). [1] Judge Raymond P. Moore

---

[1]  Defendant JMIR DTC Operator LLC (hereinafter "Hyatt") joined in Defendants' Motion
to Dismiss Plaintiffs' Amended Complaint (Docket Nos. 97 & 120). Defendant HCA-
HealthONE LLC d/b/a Sky Ridge Medical Center has reached a proposed settlement

referred the subject motions to the undersigned magistrate judge (Docket No. 74). The

Court has reviewed the subject motion (Docket No. 65), Plaintiffs Isabel Valverde and

Maria Sonia Micol Simon's ("Plaintiffs") Response (Docket No. 91), and Defendants'

Reply (Docket No. 104). The Court has taken judicial notice of the Court's file, and

considered the applicable Federal Rules of Civil Procedure and case law. The Court

now being fully informed makes the following findings of fact, conclusions of law, and

recommendations.

## I.  Background

The following facts are taken from the First Amended Complaint. (Docket No.

52.) The Court assumes these facts (as opposed to legal conclusions, bare assertions

or merely conclusory allegations) to be true for purposes of deciding this motion and

construes them in the light most favorable to Plaintiffs, the non-movants.

Plaintiffs are former employees of Defendant Xclusive Staffing, Inc., a staffing

agency owned by Defendant Astley. (*Id.* ¶ 20). Xclusive operates subsidiaries in at least

10 states, which are all owned and operated by Defendant Astley. (*Id.* ¶¶ 22-26.)

Xclusive and its subsidiaries provide laborers for their clients, which are mainly hotels

like Defendants Omni, Hyatt, and Marriott. (*Id.* ¶ 28.)

Plaintiffs allege that Xclusive maintains the following practices that violate state

and federal wage laws: (1) Xclusive deducts $3.00 from each paycheck as an

"administrative charge" and deducts other expenses for things like uniforms, tools, and

criminal background checks (*id.* ¶¶ 50-59); (2) Xclusive deducts 30 minutes from their

with Plaintiff Maria Sonia Micol Simon (Docket No. 161).

employees timesheets regardless of whether they actually took the 30 minute break (*id.* ¶¶ 60-74); and (3) Xclusive failed to provide compensated ten minute breaks for every four hours worked, as is required by Colorado law (*id.* ¶¶ 75-82).

Plaintiffs allege that Defendant Astley, Xclusive, and Xclusive's subsidiaries (dubbed the "Astley Enterprise") have engaged in racketeering activities through four wire fraud schemes. (*Id.* ¶ 92.) The first, labeled the "USDOL Scheme," involves the Astley Enterprise continuing its illegal pay practices after Defendant Astley promised the United States Department of Labor's Wage and Hour Division's Denver District Office (the "USDOL"), which had performed investigations in 2012 and 2014, that it would comply with applicable laws. (*Id.* ¶¶ 94-100.) The Astley Enterprise used the mail and wires in furtherance of this fraud when it mailed the USDOL fraudulent pay records and "continually and repeatedly made false representations" regarding the violations through written communications. (*Id.* ¶¶ 103-09.)

The Astley Enterprise uses the "Website Scheme" to intentionally and falsely advertise on its website that Xclusive is compliant with labor laws. (*Id.* ¶¶ 110-12.) This false representation serves to recruit workers and clients alike, which allows the Astley Enterprise to maintain its harmful and illegal pay policies. (*Id.* ¶¶ 113-14.)

The "Electronic Timekeeping Scheme" is based on Xclusive's use of online timekeeping platforms to submit and maintain false records. For example, the records consistently indicate that Xclusive's workers, including Plaintiffs, took 30 minute breaks even though Plaintiffs allege that they rarely did. (*Id.* ¶¶ 120-121.) This underreporting allowed Xclusive to either charge clients less or keep money that should have gone to

3

workers. (*Id.* ¶ 122.)

Finally, the "Faxed Timesheet Scheme" involved handwritten time sheets typically created by Xclusive supervisors and signed and submitted by the clients via fax. (*Id.* ¶ 126-27.) These time sheets contained the same fraudulent information regarding work hours. (*Id.* ¶¶ 130-31.)

Based on these actions, Plaintiffs, on behalf of themselves and "all other similarly situated," brought six Fed. R. Civ. P. 23 class action and 29 U.S.C. § 216(b) collective action claims against Xclusive and Xclusive's owner and clients. Those claims are as follows:

1.  Rule 23 class action claim against Defendant Astley for Racketeer Influenced and Corrupt Organizations Act ("RICO") violations (*id.* ¶¶ 160-66);

2.  Section 216(b) collective action claim against all Defendants for Fair Labor Standards Act ("FLSA") violations (*id.* ¶¶ 167-75);

3.  Rule 23 class action claim against Defendants for failure to pay statutorily required wages under the laws of several states (*id.* ¶¶ 176-80);

4.  Rule 23 class action claim against Defendants for failure to provide 10 minute breaks under Colorado law (*id.* ¶¶ 181-85);

5.  Rule 23 class action claim against Defendants for illegal deductions under Colorado law (*id.* ¶¶ 186-90); and

6.  Rule 23 class action equity claim against Defendants (*id.* ¶¶ 191-99).

Defendants seek dismissal of all of Plaintiffs' claims pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6). After setting forth the general legal standard, the Court will address each argument.

## II.  Legal Standard

### A.  Fed. R. Civ. P. 12(b)(1)

Defendants challenge Plaintiffs' standing to bring certain causes of action under Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case; rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). Rule 12(b)(1) motions generally take one of two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1003.

"[T]he term 'standing' subsumes a blend of constitutional requirements and prudential considerations." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). To establish standing

under Article III of the United States Constitution, a plaintiff must show: (1) that he or she has personally suffered an injury in fact; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Beyond these constitutional requirements, a plaintiff must also satisfy the following prudential principles: (1) the plaintiff generally must assert his or her own legal rights; (2) the court must refrain from adjudicating "generalized grievances"; and (3) the plaintiff's complaint must fall within the zone of interest to be protected or regulated by the statute or constitutional right in question. *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450–51 (10th Cir. 1994).

## B. Fed. R. Civ. P. 12(b)(6)

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The Court's function on a Rule 12(b)(6) motion . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim." *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Investment II, LLC*, 2014 WL 4400764, at *2 (D. Colo. Sept. 5, 2014). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" *Cutter v. RailAmerica, Inc.*, 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

6

(2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[A] plaintiff must 'nudge [ ] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F. 3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" *Id*. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id*.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126–27 (10th Cir. 1998); *Seamons v. Snow*, 84 F. 3d 1226, 1231–32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . .." *Khalik*, 671 F.3d at 1190 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* at 1191.

### III.  Analysis

**A.  RICO**

Defendants argue that Plaintiffs' RICO claim should be dismissed because: (1) Plaintiffs lack standing to bring a RICO claim; (2) their RICO claim is preempted by the FLSA; and (3) they cannot prove any elements of a RICO claim. Normally, the Court would first address the issue of RICO standing because, while some courts outside this Circuit analyze RICO standing under Rule 12(b)(6), s*ee, e.g., Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129–30 (2d Cir. 2003), courts in this Circuit treat RICO standing as a jurisdictional inquiry governed by Rule 12(b)(1). *See Gillmor v. Thomas,* 490 F.3d 791, 797 (10th Cir. 2007); *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1231 (D. Colo. 2010). However, for the reasons set forth below, Plaintiffs' RICO claim is precluded by the FLSA's exclusive remedial mechanisms. Therefore, in the interests of

judicial efficiency, the Court will forego engaging in an in-depth standing analysis, which

necessarily requires an examination of the merits, *see Deck v. Engineered Laminates,*

349 F.3d 1253, 1257 (10th Cir. 2003), and focus instead on the issue of preemption.

### 1. FLSA Preemption

Federal preemption occurs in three situations: (1) "express preemption" applies

where Congress defines explicitly the extent to which its enactment preempts state

laws; (2) "field preemption" applies when state law "regulates conduct in a field that

Congress intended the Federal Government to occupy exclusively;" and (3) "conflict" or

"obstacle preemption" applies when "it is impossible for a private party to comply with

both state and federal requirements, or where state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Gilles*

*v. Ford Motor Co.*, 24 F. Supp. 3d 1039, 1045 (D. Colo. 2014) (quoting *English v.*

*General Elec. Co.*, 496 U.S. 72, 79 (1990)).

Several courts, including at least one in this district, have held that by enacting

the FLSA, Congress has set forth comprehensive and exclusive remedies for violations

of the statute's provisions. *See, e.g., Barnett v. Pikes Peak Cmty. Coll. Police Dep't*,

2015 WL 4245822 at *4 (D. Colo. July 14, 2015) (citing *Kendall v. City of Chesapeake*,

174 F.3d 437, 443 (4th Cir. 1999) (holding that the mechanisms established by the

FLSA preclude a 42 U.S.C. § 1983 action to enforce FLSA rights). *See also Conner v.*

*Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997) (ruling that a common law

retaliation claim, brought by employee who alleged that he was terminated for claiming

unpaid overtime compensation under Kansas law, was precluded by adequate statutory

9

remedy provided by FLSA); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194-95 (4th Cir. 2007) (FLSA preempts certain state law claims) (collecting cases). Similarly, courts have found that where a federal statute provides an exclusive remedy, concurrent RICO claims based on the same conduct should be dismissed. *See, e.g., Danielson v. Burnside-Ott Aviation, Training Center*, 746 F. Supp. 170 (D.D.C. 1990); (RICO claims preempted by the Service Contract Act); *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637-638 (2nd Cir.1989) (RICO claim dismissed where Energy Reorganization Act provided exclusive remedy for plaintiff's claims); *Bodimetric Health Servs., Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 486-87 (7th Cir. 1990) (RICO claim preempted by the Social Security Act's administrative benefits determination procedure). It is therefore unsurprising that various courts have held that RICO claims based upon FLSA violations are preempted. *See, e.g., Choimbol v. Fairfield Resorts, Inc.*, 2006 WL 2631791, at *7 (E.D. Va. Sept. 11, 2006); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 515 (E.D.N.Y.  2011); *Eldred v. Comforce Corp.*, 2010 WL 812698, at *10 (N.D.N.Y. Mar. 2, 2010). *But see Kuznyetsov v. W. Penn Allegheny Health Sys.*, Inc., 2009 WL 2175585, at *3 (W.D. Pa. July 20, 2009) (finding that find that the general goals of RICO and the FLSA vary and therefore not applying preemption).

The most detailed analysis of this issue is found in the *DeSilva* decision. There, the plaintiffs brought a civil RICO cause of action against the defendants alleging that the defendants devised a scheme to defraud plaintiffs by concealing the fact that they were withholding the required rate of pay by mailing false and deceptive payroll checks.

*DeSilva*, 770 F. Supp. 2d at 511. The court found that portions of the plaintiff's RICO

claim were duplicative of the plaintiff's FLSA claims for unpaid overtime and therefore

preempted. *Id.* The court recognized that because RICO is a federal and not a state

cause of action, the label of conflict or obstacle preemption is inexact, but determined

that the same principles apply. *Id.* at 518. Those principles demonstrate that permitting

a plaintiff to pursue a RICO claim to remedy violations of a FLSA right would stand as

an obstacle to the enforcement of the FLSA. *Id.* This is because the FLSA's "broad

remedial statutory scheme is exclusive and can preclude parallel actions brought under

federal and state law." *Id.* at 513. The FLSA's "unusually elaborate enforcement

scheme," *Anderson*, 508 F.3d at 192, provides for the following:

> [It] establishes criminal penalties for willful violations of the Act, 29 U.S.C. § 216(a), and specifies the damages that can be sought against employers who violate the FLSA, namely, unpaid wages, liquidated damages, and, in retaliation cases, appropriate legal and equitable relief, including reinstatement and promotion. *See id.* § 216(b). In addition, the Secretary of Labor is authorized to bring an action in a court of competent jurisdiction to seek unpaid wages and liquidated damages, injunctive relief, and appropriate equitable relief, and to supervise the payment of any unpaid minimum wages or overtime compensation. *See id.* §§ 216-217. An employee may also institute an action against an employer in either federal or state court to recover unpaid wages, liquidated damages, attorneys' fees, and costs, but, significantly, this private right of action terminates upon the filing of a complaint by the Secretary of Labor. *See id.* § 216(b)-(c).

*DeSilva*, 770 F. Supp. 2d at 514.

Thus, by setting forth the exclusive remedy for wage and hour violations that fall

within the statute's scope, the FLSA precludes the use of other statutes or common law

11

causes of action. *Id.* at 514. *See also Kendall*, 174 F.3d at 439; *Anderson*, 508 F.3d at 194. This includes federal civil RICO claims:

> [A]llowing plaintiffs to pursue a civil RICO claim grounded in the same facts as Plaintiffs' FLSA claim would, essentially, create a new private right of action that would allow plaintiffs to seek treble damages--instead of merely seeking unpaid wages and liquidated damages--and would render meaningless the Secretary of Labor's right to terminate any private party's suit should the secretary decide to file a complaint.

*DeSilva*, 770 F. Supp. 2d at 115. *See also Eldred*, 2010 WL 812698, at *10 (dismissing a duplicative RICO claim "ensures that the '[a]rtful invocation of controversial civil RICO, particularly when inadequately pleaded' does not endanger the uniform administration of core concerns of the primary enforcement scheme") (quoting *Norman*, 873 F.2d at 637)).

In the absence of controlling authority from the Tenth Circuit, the Court finds the detailed analysis contained in *DeSilva* persuasive. Therefore, "the key question for the court to resolve is whether, and to what extent, plaintiff's civil RICO claims are duplicative of their FLSA claims." *DeSilva*, 770 F. Supp. 2d at 115. This question turns on whether, "'[b]ut for the proscriptions of the FLSA,'" the defendant's conduct would constitute a fraudulent scheme. *Id.* at 516 (quoting *Choimbol*, 2006 WL 2631791 at *7). *See also Butchers' Union, Local No. 498 v. Sdc Inv.,* 631 F. Supp. 1001, 1011 (E.D. Cal. 1986) ("*[B]ut for* the proscriptions of the labor laws, defendants' conduct simply would not be either mail or wire fraud.") (emphasis in original). All duplicative RICO claims are preempted by the FLSA's comprehensive administrative scheme. *Id.* at 517

(citing *Danielson*, 746 F. Supp. at 176).

Here, Plaintiffs' RICO claim, distilled to its essence, stems from their FLSA claim for unpaid overtime. Defendant Astley's various fraudulent schemes all plainly center on Xclusive's pay practices. The "USDOL Scheme" revolves around Xclusive's policy to automatically deduct lunch breaks from workers' timesheets, regardless of whether the breaks were taken, as well as Xclusive's false and misleading statements about these policies to the Department of Labor. (Docket No. 52 ¶¶ 94-109.) The "Website Scheme" involves Xclusive's use of the internet "to fraudulently advertise its compliance with state and federal minimum wage laws." (*Id.* ¶ 110.) The "Electronic Timekeeping Scheme" alleges that Xclusive engaged in wire fraud by using timekeeping programs that underreported employee work hours. (*Id.* ¶¶ 120-23.) Similarly, the "Faxed Timesheet Scheme" involves faxing handwritten timesheets that underreported Plaintiffs' hours. (*Id.* ¶¶ 124-131.) These practices allegedly caused "Plaintiffs and those similarly situated to suffer loss of past, current, and prospective wages and to spend unpaid time working as opposed to pursuing other interests." (*Id.* ¶ 165.)

Plaintiffs acknowledge that RICO claims based on misrepresentations that are merely collateral and incidental consequences of the underlying FLSA violation are not permitted. (Docket No. 91 at 13.) However, they argue that the alleged fraud is not the "ongoing transmission of illegally low wage payments," but rather the "explicit and public lie about Xclusive's employment practices." (*Id.*) The problem is that Plaintiffs do not explain how these lies, absent the offending employment practices, would give rise to any RICO liability. In other words, Plaintiffs cannot meaningfully separate the facts that

13

form the basis of their RICO claim from those that support their FLSA claim. It is apparent that "but for" the FLSA's wage and overtime rules, Defendants' conduct would not be actionable under RICO. *See DeSilva*, 770 F. Supp. 2d at 515 ("[P]laintiffs would not have any claim for mail fraud or interference with their rights if they did not have an independent right under the FLSA to compensation for all overtime hours worked."). Plaintiffs' rather perfunctory attempt to distinguish the case law discussed above is unavailing.

For these reasons, the Court finds that Plaintiffs cannot maintain a RICO claim against Defendant Astley because such a claim is preempted by the FLSA. Accordingly, the Court RECOMMENDS that Count I of Plaintiffs' First Amended Complaint (Docket No. 52) be DISMISSED WITH PREJUDICE.

## B.  FLSA

Defendants next allege that Plaintiffs cannot state a FLSA claim. The Court finds this true as to Plaintiff Simon, but concludes that Plaintiff Valverde states a plausible claim for relief.

The purpose of the FLSA is to ensure minimum wages and working conditions to workers in industries throughout the states. *See Bayles v. American Medical Response of Colorado, Inc.,* 937 F. Supp. 1477, 1482 (D.Colo.1996). The FLSA requires employers to compensate employees for hours in excess of 40 per week at a rate of 1.5 times the employee's regular wages." 29 U.S.C. § 207(a)(1). The FLSA creates a private right of action against any employer who violates § 206 (the minimum wage requirement) or § 207 (the overtime compensation requirement). *See* 29 U.S.C. §

14

216(b) (permitting an employee to recover from his or her employer the amount of their unpaid minimum wages or their overtime compensation).

To prove a claim for violation of the FLSA's overtime pay requirements, Plaintiffs must allege: (i) that the Defendant is an employer as defined by the Act; (ii) that she is an employee as defined by the Act; (iii) that the Defendant employed her services; (iv) for more than 40 hours in a single work week; and (v) that she did not receive compensation at a rate of 1.5 times her normal hourly rate for the hours she worked over 40 in that week. *Perez v. Pinon Mgmt., Inc.*, 2013 WL 1149567, at *7 (D. Colo. Mar. 19, 2013) (citing 29 U.S.C. § 207(a)(1)). "To make a case for overtime compensation, plaintiffs must show that they performed more than forty hours of work in a week but were not paid for the excess time." *Chytka v. Wright Tree Serv., Inc.*, 925 F. Supp. 2d 1147, 1171–72 (D. Colo. 2013), *aff'd*, 617 F. App'x 841 (10th Cir. 2015) (citing *Beasley v. Hillcrest Medical Ctr.*, 78 Fed. Appx. 67, 69 (10th Cir. 2003). Thus, Plaintiffs have the burden of proving that they have in fact performed work for which they were improperly compensated and must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

While the Tenth Circuit has not ruled on what constitutes sufficient factual allegations to state plausible FLSA claims, the Court is guided by Magistrate Judge Michael E. Hegarty's approach in a recent case involving Plaintiffs' attorney and many of the same defendants. *See Martinez v. Xclusive Management, LLC,* Civil Action No. 15-cv-00047-MSK-MEH. After surveying circuit and district decisions on the issue,

Magistrate Hegarty found that:

> [T]he Tenth Circuit would likely follow the First, Second, Third and Ninth Circuits' opinions that to state a plausible claim for overtime pay under the FLSA, a plaintiff must allege that he or she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week. . . .  the Plaintiffs need only draw on their own memory and experience to recall basic facts about their own work experience, such as when they worked overtime; whether they came to work early, stayed late, or took on additional shifts; approximately how many extra hours they  worked per week; and the types of tasks they performed during their overtime hours. In other words, the Plaintiffs need allege only both an estimate of the hours worked and a general idea of the type of work performed.

*Id.* at 11-12 (citations and quotation marks omitted).

Under this pleading standard, the Court finds that Plaintiff Simon cannot state a plausible claim for relief under the FLSA against Xclusive. [2]  On the other hand, the Court finds that Plaintiff Valverde adequately alleges his FLSA claims against Defendants .

Turning to Plaintiff Simon first, the Court notes that nowhere in the First Amended Complaint does it allege that she worked over 40 hours in any given week and was not compensated accordingly. Plaintiffs attached two exhibits purporting to support Plaintiff Simon's claims. The first is a pay stub from Sky Ridge Medical Center that shows that Plaintiff worked (and was paid for) overtime during that workweek.

---

[2]  The Court again notes that Plaintiff Simon and Defendant HCA-HealthONE LLC d/b/a Sky Ridge Medical Center have reached a settlement. (Docket No. 161.) Plaintiff Simon's only remaining FLSA claim is against Xclusive. (Docket No. 52 at 29.)

(Docket No. 52-3.) On its face, this does not support a finding of a FLSA violation; indeed, it demonstrates that Plaintiffs were paid at least some of their overtime wages. Moreover, unlike Plaintiff Valverde, Plaintiff Simon does not allege that she worked through her unpaid lunch break during this pay period. In fact, she admits that "[a]t Sky Ridge Medical Center--where Ms. Simon was supervised by a supervisor from the medical center, rather than Xclusive--Ms. Simon did regularly receive the [30 minute] break." (Docket No. 52 ¶ 67.) Accordingly, this pay stub does little to support a plausible FLSA claim against Xclusive.

The second document is a group timesheet from Marriott dated April 30, 2016 in which Plaintiffs allege Plaintiff Simon's supervisor just drew a squiggly line through the entire "Break" column for each worker. (Docket No. 52-4.) Plaintiffs claim that Plaintiff Simon did not take and was not paid for her 30 minute break on this day. (Docket No. 52 ¶ 71.) Even accepting Plaintiff Simon's allegation as true, this document does not prove that she worked more than 40 hours that **week** for Marriott, which is the standard for an overtime wage claim under the FLSA.

As to work she performed for Xclusive or its clients apart from Sky Ridge Medical Center, while Plaintiff Simon generally claims that she was forced to work through her 30 minute break, she does not sufficiently allege that she was working more than 40 hours per week for any of them. The First Amended Complaint does not contain even basic details of any uncompensated overtime work. She does not provide a given workweek in which she worked in more than 40 hours (other than at Sky Ridge Medical Center); she does not provide an estimate for the amount of overtime she worked; she

17

does not state what type of work she performed or for whom. Therefore, the Court finds that Plaintiff Simon has not plausibly stated a FLSA claim against Defendant Xclusive under the *Iqbal/Twombly* standard.

Conversely, the allegations regarding Plaintiff Valverde are sufficient to state a claim for relief under the FLSA. Like Plaintiff Simon, Plaintiff Valverde generally alleges that 30 minute meal breaks were automatically deducted from his work time, regardless of whether that time was taken. He too attaches a pay stub as an exhibit to the First Amended Complaint that indicates that he worked over ten hours of overtime during a given workweek. (Docket No. 52-2.) Unlike Plaintiff Simon, however, Plaintiff Valverde alleges that he did not receive his unpaid 30 minute break during this week but instead continued performing his normal tasks. (Docket No. 52 ¶ 62.) Thus, he does allege that he worked over 40 hours during a given workweek and that his pay stub for that week is missing time for meal breaks; i.e., that he was not compensated for at least some of the time worked in excess of forty during that week. Accordingly, Plaintiff Valverde has plausibly stated a claim under the FLSA.

For these reasons, the Court finds that Plaintiff Simon fails to state a FLSA claim against Defendant Xclusive, and RECOMMENDS Count II of Plaintiffs' First Amended Complaint (Docket No. 52) be DISMISSED WITH PREJUDICE as it relates to Plaintiff Simon. The Court finds that Plaintiff Valverde has stated and FLSA claim against Defendants and therefore RECOMMENDS that Defendants' motion to dismiss Count II be DENIED as to him.

## C. State Wage Claims

Defendants challenge Plaintiffs standing to bring their Rule 23 class action state law claims (Counts III, IV, and V) on behalf of classes outside of Colorado. They also seek to dismiss these claims as a matter of law. The Court will address these issues in turn.

### 1. Standing

Defendants argue that for Plaintiffs to assert state law claims on behalf of class members who reside outside the state of Colorado, they must allege that they personally suffered injuries in the other states. Plaintiffs urge the Court to resolve this standing issue after class certification. The Court agrees with Defendants.

District Judge Arguello addressed this question at length in *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *9 (D. Colo. July 14, 2011). There, the plaintiff was not permitted to bring claims on behalf of a class under the laws of states to which he has never been subjected. *Id.* at *10. This is rational as "[i]t is well established that a plaintiff does not have standing to allege claims on his own behalf under the laws of states where he has never lived or resided because he has not suffered an injury under those laws, nor is he protected by those laws." *Id.* at *8. "While the Court **may** defer standing until after the class certification stage, ordinarily a court 'must be sure of its own jurisdiction before getting to the merits.'" *Id.* at *7 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612 (1997)) (emphasis in original). Although the Supreme Court has carved out an exception to that rule when class certification issues are "'logically antecedent' to Article III concerns," *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999),

here, as in *Pizza Hut*, the question of whether Plaintiffs, who are or were Colorado residents, have standing to bring claims under the laws of various other states is relevant whether or not the class is certified. Thus, addressing the issue of Plaintiffs' standing is appropriate at this time because "Article III standing is a threshold issue that 'determine[s] the power of the court to entertain the suit.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

It is clear that Plaintiffs lack standing to bring claims under state laws to which Plaintiffs have never been subjected. Therefore, to the extent the class action claims are based on conduct occurring outside the state of Colorado, the Court RECOMMENDS that Counts III, IV, and V of Plaintiffs' First Amended Complaint (Docket No. 52) be DISMISSED for lack of standing.

### 2. State Overtime

Plaintiffs bring a state statutory wage claim based on Defendants' failure to pay them overtime. (Docket No. 52 ¶ 179.) Similar to the FLSA, the Colorado Minimum Wage Order 32 ("CMWO") requires that "employees shall be paid time and one-half of the regular rate of pay for any work in excess of: (1) forty (40) hours per workweek; (2) twelve (12) hours per workday, or (3) twelve (12) consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages." 7 Colo. Code Regs. § 1103-1:4. Section 8-6-118 of the Colorado Revised Statutes provides that "[a]n employee receiving less than the legal minimum wage applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such

minimum wage, together with reasonable attorney fees and court costs, notwithstanding

any agreement to work for a lesser wage."

As discussed above, Plaintiff Valverde has alleged that he worked in excess of

40 hours in December 2014. (Docket No. 52-2.) He also claims he was not fully

compensated for all of the hours worked. (Docket No. 52 ¶ 74.) He has therefore stated

a claim for overtime payment. Plaintiff Simon has not stated a claim because she does

not allege anywhere in the First Amended Complaint that she worked in excess of 40

hours per workweek, 12 hours per workday, or 12 consecutive hours during any given

period of time without being compensated at a rate of 1.5 times their hourly rate.

Therefore, her claim fails; his claim survives.

Plaintiffs argue in their Response that the $3.00 deduction from Plaintiffs'

paychecks results in unpaid FLSA and CMWO overtime. (Docket No. 91 at 26-28.) As

far as the Court can tell, these allegations were not raised in the First Amended

Complaint. Neither the FLSA nor the state overtime claim refer to these deductions in

any meaningful way, which makes Plaintiffs' aside, contained in a footnote, that they

"assert first that Defendants have waived, by not raising, any argument that the

allegations regarding the $3.00 fee do not constitute a FLSA overtime claim" (*id.* at 26 n.

14)  puzzling. Defendants cannot waive a defense to a claim that was never pled in the

first place. Moreover, Plaintiffs brought a separate claim for illegal deductions under

Colorado law that specifically referenced the $3.00 fee. In any event, Plaintiffs did not

plead that the allegedly illegal deductions violated the FLSA or state overtime laws and

21

the Court will not entertain their *post hoc* arguments to the contrary.[3]

Therefore, the Court RECOMMENDS that Defendants' motion to dismiss Count III of Plaintiffs' First Amended Complaint be GRANTED as to Plaintiff Simon and DENIED as to Plaintiff Valverde.

### 3.   10 Minute Breaks

Defendant asks the Court to dismiss Plaintiffs' claim that Defendants failed to provide 10 minute rest breaks as required by Colorado law. The Court agrees as to Plaintiff Simon because the First Amended Complaint only contains conclusory allegations as to this cause of action. Plaintiff Simon alleges that she did not receive any 10 minute rest breaks, except at Sky Ridge Medical Center. But as addressed above, the only pay stub attached to her complaint was from that particular defendant. Otherwise, she fails entirely to state which Defendants deprived her of her breaks or provide any dates or times when she worked and was not provided a break. The Court could presume that one such place and time was the Marriott in the Denver Tech Center on April 30, 2016, as this was the timesheet attached by Plaintiffs to demonstrate the lunch break problem. (Docket No. 52-4.) However, "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" *Apa v. Qwest Corp.*, 2005 WL 1489646, at *5 (D. Colo. June 23, 2005) (quoting *Gross v. Burggraf Construction Co.*, 53 F.3d 1531

---

[3] The Court's conclusion that Plaintiff did not plead that the $3.00 deduction violated overtime laws in their First Amended Complaint is strengthened by Plaintiffs' statement in their Motion for Class Certification that their Response at issue "describe[es] how the $3.00 deduction violates the FLSA." (Docket No. 139 at 3.) Plaintiffs could have and should have described this in the First Amended Complaint if they wanted to bring a plausible claim for relief on this theory.

(10th Cir. 1995). Plaintiffs did not make that argument and therefore they have not stated a plausible claim that Plaintiff Simon was denied rest breaks.

Plaintiff Valverde, on the other hand, did allege that he did not receive the mandatory 10 minute breaks during the workweek evidenced by his one attached pay stub. (Docket No. 52 ¶ 78.) Accordingly, the Court rejects Defendants' claim that this bare assertion was nothing more than a formulaic recitation of the law and finds that Plaintiff has adequately stated a claim for relief.

Accordingly, the Court RECOMMENDS that Defendants' motion to dismiss Count IV of Plaintiffs' First Amended Complaint be GRANTED as to Plaintiff Simon and DENIED as to Plaintiff Valverde.

### 4.  Paycheck Deduction

Defendants next insist that Plaintiffs' claim for unlawful deductions pursuant to the Colorado Wage Act ("CWA"), § 8-4-105, C.R.S., fails as a matter of law because Plaintiffs signed agreements agreeing to the deductions. Defendants also argue that Plaintiffs fail to allege how the Omni, Hyatt, and Marriott Defendants can be liable for these deductions. Plaintiffs maintain that the $3.00 deductions are unlawful and that all Defendants are liable under the joint employment doctrine.

Section 8-4-105(1)(b), C.R.S., provides that "[n]o employer shall make a deduction from the wages or compensation of an employee except . . . [d]eductions for loans, advances, goods or services, and equipment or property provided by an employer to an employee pursuant to a written agreement between such employer and employee, so long as it is enforceable and not in violation of law . . .."

23

Defendants argue that Plaintiffs signed written contracts agreeing to the $3.00 deduction for an administrative charge. In their Complaint, Plaintiffs state that "Plaintiff Valverde signed a contract, written in Spanish, that refers to a $3.00 deduction in each check without explaining the purposes of the $3.00 deduction." (Docket No. 52 ¶ 57.) The First Amended Complaint is silent as to whether Plaintiff Simon signed such an agreement. In their Motion, Defendants attached a document purporting to be this contract, along with one in English allegedly signed by Plaintiff Simon. (Docket No. 69.)

Notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Here, Plaintiffs do object to the authenticity of the proffered agreements. (Docket No. 91 at 25 n. 36.) The Plaintiffs provide no grounds for their objection, nor do they deny that Plaintiffs signed contracts regarding the deductions.

The Court hopes that Plaintiffs have legitimate reasons to challenge the authenticity of the contracts and their objection is not merely a litigation tactic. However, given Plaintiffs' objection, the Court will not consider the two purported contracts found at Docket No. 69. Therefore, the Court cannot determine at this stage whether enforceable and legal written agreements existed between Xclusive and Plaintiffs that provide for the deductions at issue.

24

As to the other client Defendants, the Court agrees with Defendants that "Plaintiffs make absolutely no factual allegations regarding how those Defendants are liable for such deductions." (Docket No. 65 at 29.) Plaintiffs rely on the "joint employment doctrine," which they state is recognized under Colorado law. However, the only case Plaintiffs cite for this proposition refers to joint employment in passing. *See Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 703 (Colo. 2009) (finding that, due to an order striking an answer and affirmative defenses, the defendant was precluded from "contest[ing] the issues of liability, willful non-payment of wages, and [its] status as an alleged joint employer"). Even if Colorado law does recognize joint employment, Plaintiffs do not state what elements are required in order for individuals or entities to be considered joint employers. Rather, they merely assert that "Xclusive's clients also rely on and help control the work of the workers provided by Xclusive," that the USDOL has found that the workers are "an integral part of the clients' business activities," and that "client supervisors take part in training, controlling, and inspecting the work of Xclusive's employees." (Docket No. 52 ¶ 4.) How this makes all Defendants joint employers goes unexplained. Therefore, Plaintiffs have not sufficiently alleged that Xclusive and its client hotels were joint employers.

For the above reasons, the Court RECOMMENDS that Defendants' motion to dismiss Count V of Plaintiffs' First Amended Complaint be GRANTED as to Omni Interlocken Company, LLC, Omni Hotels Management Corporation, and Marriott International, Inc., and DENIED as to Defendant Xclusive.

**D.  Contract/Quasi Contract**

Defendants seek dismissal of Plaintiffs' breach of contract and equitable claim for relief. Plaintiffs allege that Defendants breached an implied-in-fact contract. In the alternative, Plaintiffs allege that Defendants are liable under the quasi-contract theories of promissory estoppel and unjust enrichment. The Court finds that the contract and unjust enrichment claims are preempted by the FLSA and that Plaintiffs have failed to state a claim for promissory estoppel.

An implied-in-fact contract is one that is inferred from the statements or conduct of the parties. *Atsepoyi v. Tandy Corp.*, 51 F. Supp. 2d 1120, 1124 (D. Colo. 1999). *See also Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1192 (Colo. 2001), *as modified on denial of reh'g* (July 2, 2001). Plaintiffs allege that they entered into hourly, implied-in-fact contracts for a fixed amount of money which incorporated state and federal wage and hour law, and that Defendants breached the contracts by not compensating employees for all hours worked, "among other things." (Docket No. 52 ¶¶ 193-96.) This is plainly only a restatement of Plaintiffs' FLSA claim, which, as discussed above, is preempted by due to the comprehensive remedial nature of the FLSA. *See Barnett*, 2015 WL 4245822, at *5 (holding that breach of contract claim which is clearly just a restatement of their FLSA claims is preempted).

As to the quasi-contract claims, Plaintiffs merely state that "as a result of accepting work without providing proper compensation, Defendants received a benefit at the expense of Plaintiffs . . . that would make it unjust for Defendants to retain the benefit without commensurate compensation." (*Id.* ¶ 199.) Plaintiffs' unjust enrichment

26

claim is barred by the FLSA as it is a claim for unpaid overtime wages ("commensurate compensation"). *See Chytka*, 925 F. Supp. 2d at 1173 (finding that the plaintiff's unjust enrichment claim was preempted to the extent that she claimed she was not paid overtime). Moreover, an unjust enrichment cause of action cannot be maintained where the parties have reached an agreement between themselves as to the terms upon which compensation will be paid, absent an allegation that the agreement is invalid or unenforceable, neither of which is alleged here. *Perez*, 2013 WL 1149567, at *9.

The only thing stopping Plaintiffs' promissory estoppel claim from also be preempted is that the Court cannot determine any of the facts giving rise to the cause of action. The First Amended Complaint does not identify a promise that Plaintiffs reasonably relied on to their detriment. *See Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987) (stating the elements of promissory estoppel). Plaintiffs' argument in their Response that they relied on Xclusive's public statements about wage policies in deciding to work for Xclusive is wholly unsupported by anything in the First Amended Complaint. Plaintiffs do not state that they were even aware of Xclusive's public communications, much less that those statements were the reason they decided to seek employment there.

For these reasons, Plaintiffs have failed to state a claim for breach of contract or quasi-contract. Therefore, the Court RECOMMENDS that Defendants' motion to dismiss Count VI of Plaintiffs' First Amended Complaint be GRANTED.

## E.  Compatibility of Class and Collective Action Claims

Finally, Defendants assert that the opt-in nature of FLSA collective actions

inherently conflicts with the opt-out nature of Rule 23 class actions. Defendants argue that because all of Plaintiffs' Rule 23 claims are entirely dependent on their FLSA claim, adjudicating rights under the FLSA might prejudice the rights of employees who do not wish to opt-in to the collective action but do not opt-out of the class action.

This issue is more properly addressed in a ruling on certification because it is premature: class certification may not take place which would, in turn, moot the issue. It is not even obvious what relief Defendants are seeking. However, the Court will note that the most recent cases arising in this District tend toward approving "hybrid" class actions, in which the court presiding over a FLSA collective action also exercises supplemental jurisdiction over a Rule 23 state law class. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016); *Bass v. PJCOMN Acquisition Corp.*, 2011 WL 2149602, *5 (D. Colo. June 1, 2011); *Lozoya v. AllPhase Landscape Constr., Inc.*, 2015 WL 1524639, at *1 (D. Colo. Mar. 31, 2015). *But see In re American Family Mut. Ins. Co. Overtime Pay Litigation,* 638 F.Supp.2d 1290, 1298–1302 (D. Colo. 2009) (declining to exercise supplemental jurisdiction over state law Rule 23 portion of "hybrid" class action because doing so would "would undermine Congress's intent to limit the number of plaintiffs in a FLSA action").

With this in mind, to the extent that Defendants are requesting that the Court decline to exercise supplemental jurisdiction over Plaintiffs' Rule 23 class claims, the Court RECOMMENDS that the motion be DENIED.

## IV.  Recommendation

It is hereby **RECOMMENDED** that:

- Defendants Xclusive Staffing, Inc., Xclusive Management, LLC d/b/a Xclusive Staffing, Xclusive Staffing of Colorado, LLC, Diane Astley, Omni Interlocken Company, LLC, Omni Hotels Management Corporation, and Marriott International, Inc.'s Motion to Dismiss Plaintiffs' Complaint (Docket No. 65) be **GRANTED** in part and **DENIED**. Specifically, the Court RECOMMENDS:

  o  GRANTING the motion and DISMISSING WITH PREJUDICE Count I of Plaintiffs' First Amended Complaint (Docket No. 52);

  o  GRANTING the motion and DISMISSING WITH PREJUDICE Counts II, III, and IV of Plaintiffs' First Amended Complaint (Docket No. 52) as they relate to Plaintiff Simon;

  o  DENYING the motion to dismiss Counts II, III, IV of Plaintiffs' First Amended Complaint (Docket No. 52) as they relate to Plaintiff Valverde;

  o  GRANTING the motion and DISMISSING WITHOUT PREJUDICE Counts III, IV, and V of Plaintiffs' First Amended Complaint (Docket No. 52) to the extent the class action claims are based on conduct occurring outside the state of Colorado;

  o  GRANTING the motion and DISMISSING WITH PREJDUICE Count V of Plaintiffs' First Amended Complaint as to JMIR DTC Operator LLC ("Hyatt"), Omni Interlocken Company, LLC, Omni Hotels Management Corporation, and Marriott International, Inc.;

29

- o DENYING the motion to dismiss Count V as it relates to Defendant Xclusive;

- o GRANTING the motion and DISMISSING WITH PREJUDICE Count VI of Plaintiffs' First Amended; and

- o DENYING WITHOUT PREJUDICE the motion to dismiss to the extent it asks the Court to decline to exercise supplemental jurisdiction over Plaintiffs' Rule 23 class claims.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:      February 23, 2017             */s/ Michael J. Watanabe*
            Denver, Colorado              Michael J. Watanabe
                                          United States Magistrate Judge