**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-00671-RM-MJW

ISABEL VALVERDE;
MARIA SONIA MICOL SIMON; and those similarly situated,

Plaintiffs,

v.

XCLUSIVE STAFFING, INC.; *et al.*,

Defendants.

---

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION ON MOTION FOR COLLECTIVE ACTION CERTIFICATION**

---

Defendants Xclusive Staffing, Inc. ("Xclusive"); Xclusive Management, LLC d/b/a Xclusive Staffing; Xclusive Staffing of Colorado, LLC; Diane Astley; Omni Interlocken Company, LLC; Omni Hotels Management Corporation; Marriott International, Inc.; and JMIR DTC Operator, LLC (collectively "Defendants") submit these Objections to Magistrate Judge Watanabe's Report and Recommendation on Plaintiffs' Motion for Collective Action Certification of their FLSA Claims Against All Defendants Other Than HCA-HealthOne LLC [Dkt. No. 207, hereinafter "Recommendation"].

## INTRODUCTION

The named Plaintiffs in this case are two Colorado residents who have worked for Xclusive only in Colorado; they have not worked in other states for Xclusive, or for any of its alleged subsidiaries. Am. Compl. [Dkt. No. 52] ¶¶ 3, 36, 37, 43.  As relevant here, Plaintiffs allege Defendants violated the Fair Labor Standards Act ("FLSA") by (1) deducting $3.00 from each paycheck, and (2) automatically deducting 30 minutes from workers' time sheets for meal periods, whether or not those breaks were taken.  On December 9, 2016, Plaintiffs filed a Motion for Collective Action Certification of these FLSA Claims Against All Defendants Other Than HCA-HealthOne LLC [Dkt. No. 139, "Motion"].  Plaintiffs' Motion seeks certification of a

nationwide FLSA class consisting of "all current and former hourly employees of Xclusive Staffing, Inc., or one of its subsidiaries, that worked at one of its clients' locations." Motion at 11. The Motion also seeks certification of three subclasses, consisting of all current or former hourly employees who worked at three hotels in the Denver area. *Id.*

On October 31, 2017, Magistrate Judge Watanabe issued his Recommendation, which suggests, among other things, that (1) the Court certify all of Plaintiffs' proposed FLSA classes and subclasses for their two FLSA claims, without any temporal limits on the classes and subclasses; and (2) the FLSA statute of limitations be tolled from December 9, 2016 until 90 days after the opt-in plaintiffs receive notice. Recommendation at 9–10.

The Court should not adopt the Recommendation and should deny Plaintiffs' Motion. Plaintiffs have failed to make substantial allegations that putative class members were together the victims of a single decision, policy, or plan that violated the FLSA and, therefore, conditional certification is inappropriate. Even if Plaintiffs' proposed FLSA class could be conditionally certified, Plaintiffs have not shown that certification should extend nationwide to all states in which Xclusive operates. Furthermore, any potential class or subclass must be limited in temporal scope, and there is no basis upon which to equitably toll the statute of limitations. [1]

## ARGUMENT

### A. The Court may reject the Magistrate Judge's recommendations under a *de novo* standard of review.

A district court may refer pending motions to a magistrate judge for entry of a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). The district court must "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to," and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

[1] A second matter, *Trejo et al., v. Xclusive Staffing Inc., et al.*, Case No. 17-cv-06102-RM-MJW, was recently filed and consolidated with this case for purposes of discovery. The *Trejo* plaintiffs are putative class members of Plaintiffs' proposed classes.

In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate," including a *de novo* standard. *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

**B.    Plaintiffs fail to meet the requirements for conditional certification.**

1.    The general legal standard for conditional certification of a collective action.

To gain conditional certification, Plaintiffs must demonstrate they are "similarly situated" to other putative plaintiff-employees.  29 U.S.C. § 216(b).  The Tenth Circuit has endorsed the *ad hoc* method of determining whether putative class members are "similarly situated." *Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001).  Under this approach, the Court "makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated'" to putative class members, which requires "substantial allegations that . . . class members were together the victims of a single decision, policy, or plan" that violates the FLSA.  *Id.* at 1102.  If this threshold is met, putative class members may be notified of the action and given an opportunity to opt in to the litigation.  *See generally Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Then, after discovery, "the court makes a second [certification] determination, utilizing a stricter standard of 'similarly situated.'" *Thiessen*, 267 F.3d at 1102–03.

2.    Plaintiffs have not presented substantial allegations of a single decision, policy, or plan relating to their FLSA claims.

"Conditional certification . . . is by no means automatic." *Eagle v. Freeport-McMoran, Inc.,* 2016 U.S. Dist. LEXIS 103362, *6 (D.N.M. 2016).  *See also Hoffman-LaRoch, Inc.*, 493 U.S. at 169 (conditional certification and permission to send notice to an approved class should be awarded only "in appropriate cases," where the plaintiffs have met their burden).  Indeed, the Court should consider all the allegations, evidence, and declarations before deciding whether Plaintiffs have shown that they and putative opt-in plaintiffs are "similarly situated" victims of

an illegal and common policy or plan. *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011). However, "conclusory declarations [or allegations] or those based on hearsay or speculation are insufficient to grant conditional FLSA collective action certification." *Beall v. SST Energy Corp.*, 2016 WL 286295, *1 (D. Colo. 2016); *see also Eagle*, 2016 U.S. Dist. LEXIS 103362 at *6 ("At least some evidence beyond unsupported factual assertions must be asserted.").

In this case, the question at this stage is whether Plaintiffs have come forward with "substantial allegations" that Defendants have implemented a policy or practice, applicable to all of the employees in the putative classes, that violates the FLSA. *Theissen*, 267 F.3d at 1102; *Saarela v. Union Colony Protective Servs., Inc.*, 2014 WL 3408771, *3 (D. Colo. 2014). The Magistrate Judge suggests that Plaintiffs have done so, first by alleging that Defendants "automatically deduct[] 30 minutes from workers' time sheets for meal breaks, whether or not the breaks were actually taken," and second, by alleging that Defendants "deduct[] $3.00 from each employee's paycheck." Recommendation at 2–6. However, as explained below, Plaintiffs have not presented substantial allegations that these alleged policies *violated the FLSA*, or that the two named Plaintiffs – let alone an entire nationwide class – were subjected to these policies.

(a) <u>*The automatic meal break deduction policy does not support certification.*</u>

An alleged policy of automatically deducting a 30-minute meal break from each employee's workday does not, by itself, establish a single policy or plan that violates the FLSA. *See, e.g., White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) ("An automatic meal deduction system is lawful under the FLSA."); *Harp v. Starline Tours of Hollywood, Inc.*, 2015 WL 4589736, *6 (C.D. Cal. 2015) ("[T]he weight of authority holds that 'standing alone, automatic meal deduction policies are not *per se* illegal under the FLSA.'") (citing cases); *Folger v. Medicalodges, Inc.*, 2014 WL 2885363, *4 (D. Kan. 2014) ("[T]he mere existence and implementation of a policy or practice of making automatic deductions for

scheduled meal breaks in and of itself does not violate the FLSA.").  Indeed, where an employer has an automatic meal deduction policy, it may legally shift the burden to employees to report when they have worked through a meal break so that the automatic deduction can be reversed. *Gessele v. Jack in the Box, Inc.*, 2013 WL 1326563, *23 (D. Or. 2013), *recommendation adopted*, 2013 WL 1326538 (D. Or. 2013). Under these circumstances, "it is [only] the failure to compensate an employee who worked ***with the employer's knowledge*** through an unpaid meal break . . . that potentially violates the FLSA." *Id.* (emphasis added) (citing additional cases).

Thus, in the conditional certification context, when an employer has an automatic meal deduction policy but also a policy requiring employees to report and be paid for all time worked, plaintiffs seeking conditional certification must show the existence of "policy-to-violate-the-policy" requiring employees to report and be paid for all time worked.  *Gessele*, 2013 WL 1326563, *23 (citing additional cases).  In addition, plaintiffs must show that the "policy-to-violate-the policy" was applied in overtime weeks, thereby depriving employees of required overtime compensation.  *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012) (plaintiff asserting an overtime claim must allege she worked more than 40 hours for a specific week in which she did not receive adequate overtime compensation); *Perez v. Pinon Mgmt., Inc.*, 2014 WL 5596261, *7 (D. Colo. 2014) (same).

Here, Xclusive maintains and distributes to all employees a policy regarding "Work Schedules and Recording of Work Time" and "Wage Overpayment/Underpayment." *See* Exhibit A, attached hereto.  Pursuant to that policy, employees are required to properly report their time worked, and Xclusive is required to pay employees for all time reported.  *Id.*  Thus, employees are not permitted to work through their meal period without reporting their failure to take a meal break, and Xclusive is not permitted to refuse payment for work time that is reported.  In fact, to ensure that all time records are accurate and that all employees are properly paid, Xclusive requires that "[a]t the end of each pay period, the employee must sign a certification on the time

record that the record accurately and completely reflects all time worked during the period in question and that no hours were worked that do not show up in the record." *Id.*[2]

Plaintiffs have failed to present substantial evidence that Xclusive did not comply with this policy requiring employees to report their work time and be paid for all time worked, or that there was a single policy or plan of automatically deducting meal periods despite **knowing** that employees did not take a meal break. Although the Magistrate Judge notes that the Amended Complaint alleges the existence of an automatic meal break deduction policy and that Plaintiff Valverde and other employees were "consistently and systematically required to work through meal breaks" (*see* Recommendation at 5), the allegations are irrelevant to the class certification question because they fail to establish any policy or plan **for violating the FLSA**. Plaintiffs do not allege in the Amended Complaint – or anywhere else – that Xclusive followed a policy that failed to pay employees for working during a meal period **after employees notified the company** they worked during a meal break, or that any such policy resulted in employees being routinely denied overtime compensation. *See Gessele*, 2013 WL 1326563 at *23 (automatic deductions are not unlawful; "it is the failure to compensate an employee who worked with the employer's knowledge through an unpaid meal break . . . that potentially violates the FLSA"). *See also Brown*, 700 F.3d at 1230 (valid overtime claim must allege specific week in which plaintiff did not receive adequate overtime compensation); *Perez*, 2014 WL 5596261 at *7 (same).

Likewise, although the Magistrate Judge cites to a declaration submitted by Jose Trejo – another Xclusive employee who alleges the existence of an automatic meal break deduction policy – the declaration stops short of alleging that Xclusive followed a policy that failed to pay him for working through meal breaks **after** he notified the company that he had done so. *See*

---

[2] There is no evidence supporting the Magistrate Judge's assertion that this process for certifying employee time records is an attempt to "require[e]" employees to sign inaccurate time sheets," rather than a final opportunity for employees to report any unrecorded worktime and help Xclusive ensure proper payment for all time worked. *See* Recommendation at 5.

Recommendation at 5; Declaration [Dkt. No. 196-1].  Similarly, reports issued by the United States Department of Labor ("USDOL") and referenced by the Magistrate Judge are unavailing. *See* Recommendation at 5 (*citing* Dkt. No. 139-1 at pp. 11, 23).   Both reports relate to isolated events at single client locations, and neither report alleges that Xclusive failed to pay employees for work performed during meal breaks *that employees properly reported*.  *See* Dkt. No. 139-1 at pp. 11–35.  In addition, one report relates to events occurring more than five years ago, which is outside any conceivable limitations period under the FLSA.  *Id*. at p. 11.

Even if the Court accepted an argument that conditional certification of Plaintiffs' FLSA overtime claim only requires Plaintiffs to show that (1) Defendants had a single automatic meal deduction policy applicable to all putative class members, and (2) putative class members worked through their meal breaks without compensation during weeks in which they worked greater than 40 hours, Plaintiffs have failed to present substantial allegations that all putative class members experienced such circumstances.  As noted below, Plaintiffs have not put forth any "substantial allegations" that all putative class members were subjected to an automatic meal deduction policy.  *See* Argument, Section C, *infra*.[3]  Furthermore, Plaintiffs do not allege in the Amended Complaint – or anywhere else – that all putative class members were required to work during their meal breaks without compensation during overtime weeks.  Plaintiffs, in fact, only allege that they would occasionally and sporadically miss their meal breaks, depending on where they worked, when they worked, and who was supervising them, s*ee, e.g.*, Am. Compl. at ¶¶ 61, 67, and these allegations cannot support conditional certification. *See In re Bank of Am. Wage & Hour Empl. Litig.*, 286 F.R.D. 572, 593 (D. Kan. 2012) (certification of rest period claim denied where evidence indicated the occasions when employees missed rest periods were sporadic). In

---

[3] Moreover, Plaintiffs allege that Xclusive uses three substantially different timekeeping systems to make automatic meal break deductions, two electronic and one handwritten, depending on the client location.  Am. Compl at ¶¶ 115, 124-127.  The fact that Xclusive uses three separate timekeeping programs is further evidence that the putative plaintiffs are not similarly situated.

short, there are no substantial allegations that putative class members are similarly situated.

Thus, in summary, conditional certification based on an automatic meal deduction policy should be denied because Plaintiffs have not shown that employees were subjected to a single "policy-to-violate-the-policy" requiring employees to report (and be paid for) all time worked – *i.e.*, there are no allegations that Xclusive has a single policy or practice of failing to reverse automatic meal deductions once employees notify the company that meal breaks were not taken. *See, e.g., Folger*, 2014 WL 2885363 at *4–5 (denying conditional certification based, in part, on lack of substantial allegations that requests to reverse automatic meal break deductions were not honored by employer) *Saleen v. Wast Mgm't, Inc.,* 649 F.Supp.2d 937, 942 (D.Minn. 2009) (same). Even if the Court were to only focus on whether an automatic meal deduction policy caused employees to work through meal breaks without compensation during overtime weeks, Plaintiffs have failed to present substantial allegations that all potential opt-in employees in the proposed classes and subclasses are similarly situated.

*(b) The $3.00 deduction policy does not support certification.*

The Magistrate Judge recommends conditional certification of an FLSA class based, in part, on the fact that a report by the USDOL "recognized the existence of a $3.00 deduction policy." Recommendation at 6. However, the USDOL report related to an investigation that occurred *in 2011*, that concerned *only housekeeping employees* at a *single* hotel in *Texas*, that noted the existence of the policy as part of *a minimum wage investigation* (rather than an overtime investigation), and that *did not* find the policy violated the FLSA and *did not* require alteration of the policy as part of the agency's "disposition" of the case. *See* Dkt. 139-1 at pp. 5–10. The USDOL report should provide no support for conditionally certifying a class based on an alleged $3.00 deduction policy; it fails to provide "substantial allegations" that *all* putative class members with potential claims *during the time period relevant to this case* were together "victims" of a single $3.00 deduction policy *that violated the FLSA's overtime provisions*. The

USDOL report is, in fact, unsubstantiated hearsay that cannot be used to support a motion for conditional certification.  *Beall*, 2016 WL 286295 at *1.

The Magistrate Judge also recommended conditional certification because "Plaintiffs allege that 'all members of the class and subclasses suffered from the same policies of Defendants, including . . . the $3.00 weekly deduction." Recommendation at 6 (*citing* Am. Compl. at ¶ 159).  This allegation is, however, entirely conclusory and cannot support certification.  *Haynes v. Singer Co.,* 696 F.2d 884, 887 (11th Cir. 1983) (affirming denial of conditional certification, noting "unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores"); *Beall*, 2016 WL 286295 at *1.

Nearly all the other allegations in the Amended Complaint relating to a $3.00 deduction policy are limited to the named Plaintiffs – Mr. Valverde and Ms. Simon – who only allege that they personally had $3.00 deducted from each of their paychecks.  *See* Am. Compl. at ¶¶ 4, 50–59.[4]  The allegations obviously fail to rise to the level of "substantial allegations" that ***other*** putative class members (whether working in Colorado or in other states) were also the victims of a single $3.00 deduction policy that violated the FLSA.[5]  The Court should, therefore, reject the Recommendation and decline to certify any class based on the alleged $3.00 deduction policy.

**C.      Plaintiffs cannot certify a class of employees who worked outside of Colorado.**

The Magistrate Judge not only urges conditional certification of FLSA classes based on the alleged meal deduction policy and alleged $3.00 deduction policy, but certification of

---

[4] The only other allegation in the Amended Complaint is a hearsay allegation regarding the alleged $3.00 deduction policy.  Am. Compl. at ¶ 52.  This allegation, along with a similar one relating to the alleged automatic meal break deduction policy (*see id.* at ¶ 65) should be disregarded.  *See Saarela*, 2014 WL 3408771 at *3 (considering FLSA certification and giving no weight to hearsay statements allegedly made by other employees).

[5] In addition, although Plaintiffs have alleged that whether a $3.00 deduction policy violated the FLSA depends on a number of factors, including whether employees subjected to the policy agreed to the deductions, Plaintiffs' Amended Complaint does not address those factors and, therefore, does not contain "substantial allegations" that all putative class members were subjected to a $3.00 deduction policy that violates the FLSA.  *See* Plaintiffs' Reply to Response to Plaintiffs' Motion [Dkt. No. 151] at 7–8; Dkt. No. 91 at 26–28.

*nationwide* FLSA classes. The Magistrate Judge bases this recommendation on a single paragraph of analysis. *See* Recommendation at 7.

First, the Magistrate Judge notes that "Plaintiffs allege that Xclusive's national pay policies are controlled centrally from its Colorado headquarters, noting in support that payroll for all its branches are handled here, . . . that Defendant Astley creates policies affected all branches from Colorado," and that "paystubs are issued by Xclusive Staffing" and signed by Defendant Astley. *Id*. But none of these *general* allegations constitute "*substantial allegations*" that putative class members outside of Colorado were subjected to *the specific policies alleged in this case* – the automatic meal break deduction policy and the $3.00 deduction policy.

Indeed, Plaintiffs have put forth no specific, non-conclusory, and non-speculative allegations that FLSA violations occurred at locations other than those in which they worked. In particular, Plaintiffs have failed to present substantial allegations that employees working in other states and at other client locations were subjected to the deduction policies alleged in the Amended Complaint, or compensated in ways that violate the FLSA's overtime provisions. As noted above with regard to the alleged $3.00 deduction policy, any non-conclusory allegations in the Amended Complaint regarding the deduction policy focus on Plaintiffs' experiences alone, and are insufficient to certify *any* class of similarly situated Xclusive employees, much less any *nationwide* class. *See* Argument, Section B.2.(b), supra; Am. Compl. at ¶¶ 50–59. The same holds true for allegations concerning the automatic meal break deduction policy. *See, e.g.*, Am. Compl. at ¶¶ 60–74. In other words, the *only* allegations regarding putative class members at client locations in other states are conclusory and purely speculative. *See, e.g.,* Am. Compl. at ¶ 159. As noted above, it is well-settled that conclusory allegations and ones based on speculation are insufficient to meet Plaintiffs burden at the conditional certification stage.

This case is, therefore, similar to *Avendano v. Averus, Inc.*, 2015 WL 1529354 (D. Colo. March 31, 2015). In that case, the court denied conditional certification of a national class on the

basis that Plaintiff failed to provide "substantial allegations" that the allegedly unlawful wage

policy was implemented in other locations.  *Id*.  The court stated:

> [Plaintiffs] do not establish anything as to **[a nationwide] overtime compensation policy or practice**; rather, the Court would have to improperly **assume** that employees in other locations a) worked over 40 hours **and** b) that any allegedly unlawful practice in Denver as to failure to properly pay for overtime hours was consistent with Averus' policies in its other locations. Indeed, more generally, Plaintiff has presented no allegations or evidence from which Court could infer that employees in Defendants' other branches were also not paid overtime.

*Id*. at *7 (emphasis in original). Similarly, here, there are no substantial allegations regarding

what occurred at locations outside of those in which the two named Plaintiffs worked.

Thus, in essence, Plaintiffs' Motion suffers from the same deficiency as the Court

found with regard to their Motion for Protective Order [Doc. 27].  At the October 13,

2016 hearing regarding that motion, the Court stated:

> I have no idea what happened in other offices. I have no idea what happened with other employees. I have no idea whether a majority, a minority, a minuscule number, the overwhelming majority, a hundred percent of employees signed, didn't sign or mysteriously had their signature appear on Spanish versions [on arbitration agreements] as is the status of the evidence, with respect to Ms. Simon.

October 13, 2016 Hearing Transcript at p. 111, attached hereto as Exhibit B.  Because there was

insufficient evidence relating to what occurred with other employees, at other locations, and in

other states, the Court concluded, "what I am being asked to do is to, in essence, make these

enormous leaps of faith that the evidence just doesn't support." *Id.*  Plaintiffs ask the Court to

make the same leaps of faith with regard to their current Motion, and numerous courts have

denied conditional certification in similar circumstances.  *See, e.g., Braun v. Superior Indus.

Int'l, Inc*., 2010 WL 3879498, *6 (D. Kan. 2010) (certifying class at one facility only, because

"[n]one of the named plaintiffs or the opt-in plaintiffs purport to have any knowledge of the pay

practices in defendant's [other] facilities").  *See also Anjum v. J.C. Penney Co.,* 2015 WL

3603973, *8 (E.D.N.Y. 2015) (plaintiffs' "belief" that employees working at other locations

under different supervisors were "similarly situated" was insufficient for conditional certification

absent "firsthand evidence" that those employees were denied proper wages); *Trinh v. JP*

*Morgan Chase & Co.*, 644 F. Supp. 2d 653 (S.D. Cal. 2008) (plaintiffs' declarations were insufficient; they "provided no real evidence, beyond [plaintiffs'] own speculative beliefs").

The Magistrate Judge also based his recommendation for nationwide FLSA classes on (1) a belief that Defendants do not dispute that $3.00 were deducted from each employee's paycheck regardless of their work location, and (2) findings by the USDOL "in other states." Recommendation at 7. Defendants do, however, dispute that $3.00 were deducted from each employee's paycheck regardless of their work location. *See* Answer [Dkt. No. 198] at ¶ 159.

Furthermore, findings by the USDOL "in other states" in no way support a nationwide class. Texas is the only "other state" outside of Colorado covered by the USDOL reports. *See* Dkt. No. 139-1. The reports do not, therefore, address operations in numerous other states where putative class members allegedly work. Regarding the two reports from Texas, the first one – as noted above – concerns an investigation that occurred in 2011 and related only to housekeeping employees at a single hotel. *Id.* at pp. 5–10. The investigation also related to minimum wage payments, rather than overtime payments, and ***did not even note the existence of any automatic meal deduction policy***; it also ***did not*** find any alleged $3.00 deduction policy violated the FLSA. *Id.* Indeed, the 2011 report from Texas ***is the only USDOL report (from either Colorado or Texas) that mentions a $3.00 deduction***, thus belying any allegation that the $3.00 deduction policy is widespread. *See* Dkt. No. 139-1. The second Texas report concerns an investigation in which the USDOL found ***no FLSA violations whatsoever***. *Id.* at pp. 43–50. Furthermore, the second report did not mention the existence of any automatic meal period deduction policy or $3.00 deduction policy. The USDOL reports, therefore, fall well short of establishing the propriety of a nationwide FLSA class. If anything, they support a finding that a nationwide class is entirely inappropriate.

The Court should, therefore, deny Plaintiffs' request for certification of a nationwide FLSA class and, for that matter, deny certification of ***all*** proposed classes or subclasses.

However, if the Court certifies any classes or subclasses, the Court should limit the temporal scope of the classes, as the Recommendation fails to do so.  Specifically, the Court should limit any classes or subclasses to employees who worked for Xclusive within three years of any final order approving conditional certification, as this Court has done in other cases.  *See Abdulina v. Eberl's Temp. Servs., Inc.*, 2015 WL 4624251, *2 (D. Colo. 2015).  The Court should also refuse to toll the statute of limitations for potential opt-in plaintiffs, for the reasons discussed below.

**D.     The statute of limitations should not be tolled, as even the Plaintiffs concede.**

A claim accrues under the FLSA when an employer fails to pay compensation required by the statute.  29 U.S.C. § 255.  An employee must commence a claim for unpaid compensation within two years of accrual, or within three years if the failure to pay the required compensation was willful, or else the claim is barred by the FLSA's statute of limitations.  *Id.* at § 255(a).  In a collective action, a claimant whose name does not appear on the initial complaint commences an FLSA action when he or she files a written consent to opt-in to the case. 29 U.S.C. § 256(b).  However, equitable tolling may be applied to toll the statute of limitations, when circumstances warrant.  *Coldwell v. RiteCorp Envtl. Prop. Sols.*, 2017 WL 1737715, *11 (D. Colo. 2017).

Magistrate Judge Watanabe recommends tolling the FLSA's statute of limitations for future opt-in plaintiffs "in the best interests of justice."  Recommendation at 8–9.  He also recommends that tolling occur from the date Plaintiffs filed their certification Motion – December 9, 2016 – until 90 days after opt-in plaintiffs receive notice of this action.  *Id.* at 9.

These recommendations should be rejected.  They are inconsistent with Supreme Court and Tenth Circuit authority, as well as the approach taken by other courts in this district.  Moreover, tolling is completely unwarranted given the facts described below and is, instead, a gratuitous expansion of Defendants' potential liability that severely prejudices Defendants.

The Tenth Circuit has not specifically addressed equitable tolling of the statute of limitations under the FLSA.  However, it has held that, in general, "equitable tolling is [to be]

granted sparingly," such as "when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and likewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights." *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012) (*citing United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001)).  Indeed, both the Supreme Court and the Tenth Circuit have held that equitable tolling is only available to litigants who have acted diligently in asserting their rights, because "one who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."  *Baldwin Cnty. Welcome Center v. Brown,* 466 U.S. 147, 151 (1984); *Everplay Installation Inc. v. Guindon*, 471 Fed. Appx. 812, 818 (10th Cir. 2012) (holding that there must be "a showing of diligence to invoke equitable tolling").

In light of these principles, courts in this district have consistently held that equitable tolling is available for an opt-in FLSA plaintiff "**only** when [the plaintiff] diligently pursues his claims **and** demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.'" *Geiger v. Z-Ultimate Self Def. Studios LLC*, 2015 WL 1139843, *3 (D. Colo. 2015) (quotation marks omitted and emphasis added); *Kinne v. Rocky Mt. EMS, Inc.*, 2013 WL 4871751, *2 (D. Colo. 2013) (same).  *See also Avendano v. Averus, Inc.*, 2015 WL 1529354, *9 (D. Colo. 2015) ("[R]egardless of the standard employed, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline **unavoidably arose** from circumstances **beyond that litigant's control**.") (emphasis in original and quotation marks omitted); *Maiteki v. Marten Transp., Ltd.*, 4 F. Supp.3d 1249, 1255 (D. Colo. 2013) ("[E]quitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.").  Thus, for example, in *Geiger*, the court declined to toll the statute of limitations for potential opt-in plaintiffs when it conditionally certified an FLSA collective action, explaining that: (1) a cause of action generally accrues when a plaintiff knows, or has reason to know, of the injury that forms the basis for the

cause of action; (2) a plaintiff's cause of action under the FLSA is based on the facts and circumstances surrounding the plaintiff's employment; and FLSA plaintiffs are presumed to be aware of the facts and circumstances surrounding their own employment; (3) such plaintiffs are free to pursue a claim under the FLSA by filing individual lawsuits on their own behalf, or by choosing to opt-in to an existing FLSA collective action; and (4) absent any evidence that potential opt-in plaintiffs were "deceived, misled, lulled into inaction, or otherwise faced extraordinary circumstances that made it impossible for them to file a timely FLSA claim," there is no basis to equitably toll, *en masse*, the statute of limitations for every potential opt-in plaintiff. *Geiger*, 2015 WL 1139843 at *2–3.

This Court should follow the same reasoning. Here, any potential opt-in plaintiffs are presumed to know the details of their own compensation and any other facts that form the basis for Plaintiffs' FLSA claims. In fact, Plaintiffs even allege that they have spoken to other potential opt-in plaintiffs about Xclusive's pay practices and "many of them have complained of the [$3.00] deductions" and the 30-minute meal break deductions. Am. Compl. ¶¶ 53, 65.

Any of these potential opt-in plaintiffs have been free to diligently pursue their FLSA claims by filing a separate FLSA lawsuit, or by opting in to this case. And they have, in fact, done so. On June 30, 2017, while the Plaintiffs' certification Motion was still pending, four individuals – Jose Trejo, Marisol Trejo, Obdulla Julie Cortes, and Vilma De Jesus Alvarenga Carranza – filed a separate lawsuit asserting FLSA claims identical to the ones at issue in this matter. *See* Compl. [Dkt. No. 1] in *Trejo et al. v. Xclusive Staffing, Inc., et al.*, Case No. 17-CV-01602-RM-MJW. In addition, on October 5, 2017, before the Magistrate Judge issued his Recommendation, three individuals – Eloisa Galdamez, Emerita Martinez, and Sonia Maravilla – opted in to this case to assert claims under the FLSA. [Dkt. No. 202].

Clearly, potential opt-in plaintiffs who have wanted to diligently pursue their FLSA claims have been able to do so. Indeed, as found by the Magistrate Judge, "***nothing*** in the

record shows that **any** potential opt-in plaintiff was deceived, misled, lulled into inaction or otherwise faced extraordinary circumstances that made it impossible for them to file a timely FLSA claim." Recommendation at 8 (emphasis added).  An order that tolls the limitations period for every opt-in plaintiff is, therefore, unsupported by the facts and is completely unwarranted.

This same conclusion was reached by this same Court in a similar case.  In *Abdulina v. Eberl's Temp. Servs., Inc.*, 2015 WL 12550929 (D. Colo. Apr. 27, 2015), the Magistrate Judge issued a recommendation explaining that "potential opt-in plaintiffs [were] presumed to be aware of the facts and circumstances of their employment with [the defendant], and it is these facts and circumstances that would form the basis of [their] FLSA claims against [d]efendant." *Id.* at *6. The recommendation suggested there was no reason to abandon the presumption that potential opt-in plaintiffs were aware of their ability to assert FLSA claims, as the plaintiff had failed to identify "any specific facts [to] support the application" of equitable tolling. *Id.*  In particular, the plaintiff failed to identify "any wrongful conduct that deceived, misled, or lulled her into inaction, or that she met with any extraordinary circumstances that made it impossible for her to exercise her rights under the FLSA." *Id.*  Accordingly, the Magistrate Judge recommended that equitable tolling be denied, *see id.*, and this Court adopted the recommendation, finding that it was "thorough and sound." *See Abdulina*, 2015 WL 4624251 at *2.

The Magistrate Judge's Recommendation in this case fails to address this Court's holding in *Abdulina* and fails to adhere to the equitable tolling standards described above.  Instead, the Magistrate Judge recommends tolling "in the best interests of justice," citing to *Stransky v. HealthOne of Denver, Inc.*, 868 F. Supp.2d 1178, 1182 (D. Colo. 2012).  *See* Recommendation at 8.  However, *Stransky* should hold no sway over this Court, for several reasons.

Although *Stransky* recognized that tolling should be applied sparingly and "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control," *see* 868 F. Supp.2d at 1181, the court ignored those principles.

Instead, it relied on an unpublished District of Kansas decision for the proposition that "the unique circumstances of a collective action 'is not only significant but justifies tolling of the limitations period for the FLSA putative class until the court authorizes the provision of notice to putative class members." *Id.* (*citing In re Bank of America Wage and Hour Empl. Litigation*, 2010 WL 4180530, *5 (D. Kan. 2010)). Thus, *Stransky* disregarded relevant Supreme Court and Tenth Circuit authority and relied primarily on a non-binding case from outside this district.

*Stransky* also misread the court's order in the *Bank of America* case.  The Kansas court did not, as *Stransky* suggested, hold that "the unique circumstances of a collective action" are significant and justify tolling of the statute of limitations.  Rather, it held that "unique circumstances" were presented by that particular "multidistrict litigation consolidating lawsuits from across the country," where one of the cases had – before consolidation – tolled the statute of limitations for all potential opt-in plaintiffs in a nationwide class until the issuance of formal opt-in notices. *See* 2010 WL 4180530 at *1, 5.  The court was, in fact, careful to note that it was not suggesting "that equitable tolling is appropriate through the notice phase in every FLSA putative collective action or even every one that becomes an MDL," but only under the circumstances presented in that particular multidistrict litigation. *Id*. at *5.

*Stransky* also suggested that equitable tolling is justified merely because potential opt-in plaintiffs may have their claims diminish or expire before receiving a formal opt-in notice, citing to the Tenth Circuit's decision in *Gray v. Phillips Petroleum Co*., 858 F.2d 610, 616 (10th Cir. 1988).. *See* 868 F. Supp.2d at 1181.  However, the Court should not find this argument persuasive.  In *Gray*, the critical fact that supported equitable tolling was the EEOC misleading the plaintiffs into believing that their charges of discrimination under the Age Discrimination in Employment Act would be timely if filed with the agency on a certain date when, in fact, the date was outside the applicable limitations period. *See Gray*, 858 F.2d at 616.  Furthermore, as explained by one court in this district:

17

> FLSA collective actions are typically punctuated by a delay between the filing of the complaint and the court's conditional certification of the case as a collective action. Many courts have determined that the occurrence of this delay, on its own, is not sufficient to warrant equitable tolling of the statute of limitations because it does not demonstrate that any plaintiff or any potential opt-in plaintiff was deceived, misled, lulled into inaction, or otherwise faced extraordinary circumstances that made it impossible for them to file a timely FLSA claim. Without a specific showing that potential plaintiffs have been misled or lulled into inaction, they are presumed to be aware of the facts and circumstances of their employment, and it is those facts and circumstances that allegedly form the basis of the FLSA claims of the plaintiffs.

*Coldwell*, 2017 WL 1737715 at *11 (internal quotation marks and citations omitted).

Finally, *Stransky* placed great emphasis on the fact that the defendant would not be prejudiced by tolling. However, equitable tolling focuses not on the potential prejudice to defendants, but on whether potential plaintiffs have diligently pursued their claims and have only failed to raise a timely claim because of circumstances beyond their control. *See Impact Energy,* 693 F.3d at 1246; *Everplay,* 471 Fed. Appx. at 818. Indeed, there seems to be no Supreme Court authority or Tenth Circuit authority allowing a potential plaintiff to take advantage of equitable tolling based merely on the lack of prejudice to the defendant, when no circumstances beyond the plaintiff's control impeded the plaintiff's ability to file a timely claim. On the contrary, "it is clearly established that 'although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply ***once a factor that might justify such tolling is identified***, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Tinker AFB v. FLRA*, 321 F.3d 1242, 1246 (10th Cir. 2002) (emphasis added) (*citing Baldwin Cnty. Welcome Ctr.*, 466 U.S. at 152).

Even if prejudice were a factor to be considered in this case, adopting the Recommendation and tolling the statute of limitations for more than a year – from December 9, 2016, until 90 days after potential opt-in plaintiffs receive notice – would severely prejudice Defendants. In particular, the potential liability period facing Defendants would be greatly expanded – more than a year beyond the FLSA's maximum three-year limitations period – even though there is ***no evidence*** that Defendants misled any of the potential opt-in plaintiffs or lulled

them into inaction, and ***no evidence*** that potential opt-in plaintiffs were otherwise prevented from pursuing their claims based on factors beyond their control.   Furthermore, while Mr. Valverde's FLSA claims are limited to events occurring after he was hired by Xclusive in Fall 2014 (*see* Am. Compl. at ¶¶ 36–37), and while Ms. Simon's claims are limited to events occurring after she was hired by Xclusive in late 2015 (*see id*. at ¶ 41), potential opt-in plaintiffs may be able to assert claims reaching as far back as December 2013, if the Court adopts the Recommendation.   Defendants would be significantly prejudiced if forced to defend against this new timeframe for potential liability, including stale claims based on events occurring more than a year after the FLSA's maximum three-year limitations period.   *See Coldwell*, 2017 WL 1737715 at *12 (declining to toll FLSA's statute of limitations for potential opt-in plaintiffs because, in part, defendant would be prejudiced by the "uncertain period of potential exposure, and being forced to defend stale claims").

This court should, therefore, reject the approach taken in *Stransky*, just as other courts have done.   *See Avendano*, 2015 WL 1529354 at *9 (declining plaintiff's request to toll statute of limitations for future opt-in plaintiffs "in the interests of justice" where plaintiff failed to show that future opt-in plaintiffs were unable to assert FLSA claims earlier based on circumstances beyond their control); *Kinne v. Rocky Mountain EMS, Inc.*, 2013 WL 4871751, *2 (D. Colo. 2013) (rejecting plaintiff's argument that the statute of limitations period should be tolled because "potential opt-in plaintiffs could not know about the facts that are the basis of their possible FLSA claim until they receive notice of a collective action.").   As explained by the *Geiger* court, the better approach may be to "wait and see" whether particular opt-in plaintiffs can establish facts that justify equitable tolling in their particular cases, and then apply equitable tolling to those opt-in plaintiffs when it is warranted.   *Id*. at *3.   This is, in fact, the exact approach requested by the Plaintiffs in their Motion, as Plaintiffs acknowledged that immediate tolling of the statute of limitations for all potential opt-in plaintiffs is inconsistent with "this

Court's guidance in other cases." *See* Motion at 12 ("Importantly, Plaintiffs ***do not*** here ask the Court to toll the statutes of limitation of all potential opt-in plaintiffs. Rather, consistent with this Court's guidance in other cases, Plaintiffs urge the Court to take a wait-and-see approach to the temporal scope of the potential opt-in class.") (emphasis in original). *See also* Plaintiffs' Reply to Response to Plaintiffs' Motion [Dkt. No. 151] at 10–11 ("Here, Plaintiffs merely request that the Court take a 'wait-and-see approach' in deciding whether or not Defendants have a valid statute of limitations defense to any opt-ins. . . .. Plaintiffs ***do not*** yet request an order actually tolling the statute of limitations for any Plaintiff, named or opt-in.") (emphasis in original).[6]

In sum, the Court should decline to adopt the Magistrate Judge's recommendation for tolling the statute of limitations.  Tolling was never requested by Plaintiffs.  It is contrary to Supreme Court authority, Tenth Circuit authority, and the approach taken by this Court and other courts when faced with similar cases.  And it could unjustifiably award opt-in plaintiffs at least an extra year of damages – a financial windfall never contemplated by the FLSA's maximum three-year limitations period – while also imposing severe prejudice on Defendants.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court decline to adopt the Magistrate Judge's Recommendations and deny Plaintiffs' Motion.

Dated: November 21, 2017.

> *s/ Matthew M. Morrison*
> Jonathon M. Watson
> Matthew M. Morrison
> 633 Seventeenth Street, Suite 3000
> Denver, CO  80202
> Telephone:  (303) 297-2900
> *Attorneys for Defendants*

---

[6] The Recommendation did not address Plaintiffs' proposed "wait and see" approach, and Plaintiffs have not filed any objections to the Recommendation.  Defendants, therefore, need not address in this filing the propriety of any such "wait and see" approach under the circumstances that exist in this case.  However, if the Court is inclined to adopt such an approach, Defendants would request an opportunity for additional briefing on the issue.

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 21st day of November, 2017, I electronically filed the foregoing **DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTION FOR COLLECTIVE ACTION CERTIFICATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

> Alexander Hood
> David Seligman
> TOWARDS JUSTICE
> 1535 High St., Suite 300
> Denver, CO  80218
> *Attorneys for Plaintiffs*
> alex@towardsjustice.org
> david@towardsjustice.org

> *s/ Louisa Boyte*

Active/47243862.1