**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 16-cv-00671-RM-MJW

ISABEL VALVERDE;
MARIA SONIA MICOL SIMON; and those similarly situated

    Plaintiffs,

v.

XCLUSIVE STAFFING, INC.; *ET AL.*,

    Defendants.

---

**RESPONSE TO OBJECTION [ECF DOC. 212] TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF DOC. 207] REGARDING PLAINTIFFS' MOTION FOR COLLECTIVE CERTIFICATION OF THEIR FLSA CLAIMS AGAINST ALL DEFENDANTS EXCEPT FOR HCA-HEALTHONE LLC[1]**

---

**INTRODUCTION**

Magistrate Judge Watanabe recommended that Plaintiffs' motion to conditionally certify FLSA classes against all Defendants except for HCA-Healthone be granted. *See generally* ECF Doc. 207 ("R&R"). The R&R recommends conditional certification of the proposed classes and subclasses, and that the statute of limitations for the opt-ins be tolled from the date the conditional certification motion was filed until ninety days after notice is sent to the opt-ins. *Id.* Defendants object, arguing that Plaintiffs' allegations do not amount to the "substantial allegations" necessary for conditional certification, that any certified class should be limited to Colorado, and that the

---

[1] Plaintiff Simon settled her claims against HCA-Healthone and HCA-Healthone has been dismissed from the case. *See* ECF Doc. 222.

recommended tolling is inappropriate. *See generally* ECF Doc. 212 ("Obj."). These arguments fail to address the well-reasoned R&R and ignore the import of the allegations in the complaint, exhibits, and declaration offered in support of the motion. Most notably, the objection ignores that Plaintiffs attached to their motion Xclusive's standard, company-wide application packet for 2015 and 2016, which expressly states that Xclusive will deduct $3.00 from every paycheck. For the reasons stated in the R&R, Plaintiffs' motion, and Plaintiffs' reply, the objection should be overruled and the R&R should be adopted.

I.     ARGUMENT

A. **The Standard of Review is "Clearly Erroneous or … Contrary to Law" Pursuant to Fed. R. Civ. P. 72(a)**

Defendants erroneously urge the Court to review the R&R *de novo* under Rule 72(b), which applies to dispositive motions. *See* Obj. at 2-3. But this is not a dispositive motion. The Court should instead apply the "clearly erroneous or … contrary to law" standard for non-dispositive motions under Rule 72(a).

District courts in the Tenth Circuit are split as to whether magistrate judges' reports and recommendations on motions for FLSA conditional certification are dispositive (requiring *de novo* review) or non-dispositive (requiring application of the clearly erroneous or contrary to law standard) pursuant to Fed. R. Civ. P. 72. *Compare Perez v. Pinon Mgmt., Inc.*, No. 12-CV-00653-MSK-MEH, 2013 WL 792693, at *3 (D. Colo. Mar. 1, 2013); *Geer v. Challenge Fin. Inv'rs Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *5 (D. Kan. Oct. 17, 2005); *Foster v. Nova Hardbanding*, LLC, No. CV 15-1047 CG/LAM, 2016 WL 4492829, at *1 (D.N.M. Apr. 20, 2016) *with Giuffre v. Marys Lake Lodge,* LLC, No. 11-CV-00028-PAB-KLM, 2012 WL 5199427, at *1 (D. Colo. Oct. 1, 2012); *Cannon v. Time Warner NY Cable LLC*, No. 13-CV-02521-RM-MJW, 2014 WL 4401313,

at *1 (D. Colo. Sept. 5, 2014); *Abdulina v. Eberl's Temp. Servs., Inc.*, No. 14-CV-00314-RM-NYW, 2015 WL 12550929, at *1 (D. Colo. Apr. 27, 2015). However, the only court to consider the matter in depth found that conditional certification motions are non-dispositive. *Turner v. ACD Direct, Inc.*, No. 1:12-CV-00208-DB, 2013 WL 12110065, at *1 (D. Utah May 16, 2013) (adopting *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2005)).

To be sure, motions for Rule 23 class certification are specifically exempted from a magistrate judge's powers under 28 U.S.C. § 636(b)(1)(A) ("a judge may designate a magistrate [magistrate judge] to hear and determine any pretrial matter pending before the court, **except a motion** … to permit maintenance of a class action….") (emphasis added). But this is not a motion for Rule 23 certification; it is not even a motion for second-stage certification under the FLSA. It is merely a motion to determine whether notice should go out to similarly situated employees notifying them of their opportunity to join into the case subject to a later determination that they may not be similarly situated enough to proceed in the litigation. "The only decision the motion presents is whether the members of a proposed class are similarly situated enough to permit the discovery of their names and addresses … and the sending of a notice alerting them of their right to opt in to the class pursuant to 29 U.S.C. § 216(b)." *Patton*, 364 F. Supp. 2d at 265-66. As such, the motion should be considered non-dispositive pursuant to Rule 72 and the "clearly erroneous or is contrary to law" standard mandated by Rule 72(a) for non-dispositive motions should apply to the Court's review of this objection.

Under this standard,

> [a]n order is **clearly erroneous** only if a reviewing court, considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed; an order is **contrary to law** when it fails to apply or misapplies relevant statutes,

3

> case law, or rules of procedure. This standard is highly deferential, imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused his discretion.

*Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010) (citations and quotations omitted, emphasis added) (citing *E.E.O.C. v. First Wireless Group, Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004); *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2001); *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002).

**B. The R&R Recommending Conditional Certification is not Clearly Erroneous or Contrary to Law**

Plaintiffs moved the Court to conditionally certify the classes and subclasses based on two policies: (1) the $3.00 deduction policy and (2) the 30-minute automatic meal deduction policy. *See* ECF Doc. 139 at 3-4. The R&R rightly recommends conditional certification based on both policies. *See* R&R at 4-6.

In their objection, Defendants' main gripe is that Plaintiffs have not established that either policy violates the FLSA. Plaintiffs disagree and their FLSA claims have already withstood Defendants' motion to dismiss. But for present purposes, that disagreement is beside the point. Defendants cannot dispute that, with respect to both policies, Plaintiffs have asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

**1. The $3.00 Deduction Policy**

In their response to the motion, Defendants argued only that it is a legal impossibility for Plaintiffs to pursue a FLSA overtime claim for the $3.00 deductions. The R&R rightly rejects that argument. It notes that after considering this same argument in the motion to dismiss, this Court allowed the $3.00 deduction FLSA overtime claim to proceed. *See* R&R at 6 (citing ECF Doc. 193

at 13-14); ECF Doc. 151 at 7-8 (explaining legal basis for FLSA overtime claim based on $3.00 deduction). Defendants make no other arguments regarding the $3.00 deduction policy in response to the motion. The R&R therefore concludes that "Defendants ignore Plaintiffs' claim that Defendants' $3.00 pay check policy violates the FLSA." R&R at 5.

In their objection, Defendants' make two new arguments: (1) the Texas USDOL investigation cited by Plaintiffs is irrelevant because it finds the $3.00 deduction policy during a minimum wage investigation instead of an overtime investigation; and (2) Plaintiffs' allegations are too conclusory and individualized to support certification. *See* ECF Doc. 212 at 8-9. These arguments are raised for the first time in the objection and are therefore waived. *See United States v. Garfinkle,* 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

But even if the Court were to consider these arguments, certification should still be permitted. As in their response to the motion, Defendants' objection ignores dispositive evidence that the $3.00 policy is applied nationwide: the "Standard Application Packet" for both 2015 and 2016, which Xclusive disclosed at the outset of this litigation and that Plaintiffs attach to their motion. *See* ECF Doc. 139 at 10, 139-2 (standard application packets). Each packet includes an employment policies document ***that explains to all Xclusive employees*** that "[a] $3.00 Placement/process fee will be deducted on each check …." ECF Doc. 139-2 at 6, 8 (DEF 00005, 00053).

That alone should be sufficient for certification. But, as the R&R points out, there is more:

> Plaintiffs allege that "all members of the class and subclasses suffered from the same policies of Defendants, including: . . . Deductions for costs that are primarily for the benefit of the employer including the $3.00 weekly deduction for the cost of

5

> issuing a pay check." The USDOL also recognized the existence of this policy.

R&R at 6 (citing ECF Docs. 52 ¶ 159, 139-1 at 7) (citations omitted). And while Defendants attempt to minimize the importance of the USDOL investigation in Texas because it was a minimum wage investigation, what kind of investigation it was makes no difference. The alleged nationwide policy is deducting $3.00 from paychecks in overtime workweeks, and the USDOL investigation found that Xclusive deducted $3.00 from every paycheck at the Xclusive client location in Texas. ECF Doc. 139-1 at 7. This is consistent with the experience of the Plaintiffs and Mr. Trejo, ECF Doc. 52 ¶¶ 50-59, 196-1,[2] and consistent with Xclusive's "Standard Application Packets." ECF Doc. 139-2.

Finally, Defendants attempt to claim they denied the existence of this policy in their answer is both irrelevant and disingenuous at best. *See* Obj. 12 (citing ECF Doc. 198 ¶ 159). The actual allegation denied by Defendants is that all Defendants' employees are similarly situated for the purposes of FLSA conditional certification. *See* ECF Doc. 52 ¶ 159. Given the ink spilled on this motion, one would certainly hope Defendants denied that allegation.

2. **The 30-Minute Automatic Meal Deduction Policy**

Defendants focus the majority of their attention on the 30-minute automatic meal deduction policy, and in particular on merits issues as opposed to whether Plaintiffs have mounted substantial allegations to support conditional certification of their claims related to that policy. Obj. at 4-8.

---

[2] The declaration of Jose Trejo was submitted as supplemental authority by motion over Defendants' objection. ECF Docs. 196, 196-1. The Court referred the motion to supplement to the magistrate judge. *See* ECF Doc. 197. The magistrate judge granted the motion before issuing the R&R and relied on the declaration in the R&R. *See* Doc. 206. Defendants did not object to the magistrate judge's order on the motion to supplement.

As for the merits issues, Defendants misstate the law. There is no disagreement that auto-deducting meal breaks alone is not *per se* a violation of the FLSA. But, as the R&R points out, "while the policy of automatically deducting meals may not, in and of itself, violate the FLSA, forcing employees to work through the meal breaks and then deducting that time anyway certainly may." (citing *Perez v. Pinon Mgmt., Inc.*, No. 12-CV-00653-MSK-MEH, 2013 WL1149567, at *8 (D. Colo. Mar. 19, 2013) ("Neither case stands for the proposition that the Defendants appear to assert: that automatic deductions for meal breaks are, as a matter of law, permissible, even though the employee nevertheless is required to work during some or all of that break period.").

Plaintiffs are careful to allege both the existence of the auto-deducted time *and* that they consistently worked instead of taking a 30-minute break. *See* ECF Doc. 52 ¶¶ 60-74. Moreover, another Xclusive employee submitted a declaration in support of the motion declaring that he suffered from the 30-minute deduction policy and that agents of Xclusive, including the President of Xclusive, told him that auto-deducting 30-minute breaks regardless of whether they were given or taken ***was company policy.*** ECF Doc. 196-1 ¶¶ 7-16. Plaintiffs also offer findings from USDOL investigations describing the illegal policy at Xclusive client locations. ECF Docs. 52 ¶¶ 72-73 (describing the investigations and findings in the complaint), ECF Doc. 139-1 at 17 ("The violations resulted from the employer not counting missed lunch breaks …."), 31 ("[O]vertime violations resulted from lunches which were automatically deducted even though the employee worked.").

In both the response to the motion and the objection, Defendants attempt to save themselves by submitting an exhibit that they assert shows a policy of requiring Xclusive employees to properly account for their own time and, according to Defendants, therefore requires employees to

7

tell Xclusive when they do not take the 30-minute break that is auto-deducted from their time. *See* ECF Docs. 212-1, 150-1. This document, according to Defendants, effectively shifts the legal burden that Plaintiffs must meet at trial by requiring Plaintiffs to show that they complained to Xclusive about not receiving breaks and then that Xclusive ignored these complaints. *See* Obj. at 5-7.

That is not the law. Showing a policy requiring employees to maintain accurate time records alone, even specific to 30-minute breaks, is not sufficient to defeat liability. The USDOL requires more:

> [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. ***The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.***

29 C.F.R. § 785.13. Thus, Defendants must show the existence of the policy ***and their active enforcement of the policy.*** At best, that is a fact question for after Plaintiffs have been entitled to discovery and should have no bearing on conditional certification.

Further, Defendants' exhibit simply does not say what they say it says. Nowhere in the document Defendants submit is there any indication of any notice to Defendants' employees that 30-minutes is auto-deducted every day. *See* ECF Docs. 212-1. A reasonable employee might think that it would be necessary to clock-out when taking a break, but it is hard to see how such an employee would understand that she needs to inform her supervisors that she continues to work through an auto-deducted break period. Under this policy, employees are apparently left to smoke-out the existence of the 30-minute auto-deductions and then report to Xclusive when they do not receive breaks.

Even if it were possible to shift the burden onto Plaintiffs to inform Defendants when they do not receive a break, the vague policy outlined in Defendants' exhibit cannot be enough. As the R&R explains

> the mere existence of an Xclusive policy that employees must certify their timekeeping records is largely irrelevant for the Court's purposes here and appears to be an attempt to shift the burden of ensuring fair pay from employers to employees. Automatically deducting the 30-minute break after its employees have entered their time and then requiring them to sign an inaccurate time sheet is hardly a mark in Xclusive's favor.

R&R at 5

But all of this is, of course, beside the point at this stage. Even if Defendants were right on the law, their arguments would not defeat conditional certification. Here, "[p]laintiffs are required merely to present 'substantial allegations' that all members of the putative class were subject to a single decision, policy or plan." *Lysyj v. Milner Distribution All., Inc.*, 2014 WL 273214, at *1 (D. Colo. Jan. 24, 2014) (Moore, J.). For the purposes of this motion, that "single decision, policy or plan" is the auto deduction of 30-minute lunch breaks whether or not employees receive those breaks. And for the reasons explained by the R&R, Plaintiffs have put forth substantial allegations of that policy.

Defendants rely heavily on *Gessele v. Jack in the Box, Inc.*, 2013 WL 1326563, *23 (D. Or. 2013) to heighten the burden on Plaintiffs at the conditional certification stage. *See* Obj. at 5-6. But, importantly, even that case undermines Defendants' point. In *Gessele*, the Court considered both first- and second-stage FLSA certification, but only declined to certify under the second-stage certification standard. As to the first-stage—the issue here—the court found, "[a]t this first step, plaintiffs satisfy the relatively lenient standard of being similarly situated by demonstrating a

9

common policy or practice regarding breaks." *Gessele,* 2013 WL 1326563 at 25.

Plaintiffs' substantial allegations are enough to meet the requirements of conditional certification. Indeed, the Court should disregard the exhibits attached to the response to the motion and the objection entirely. *See Miller v. Startek USA, Inc.*, No. 11-CV-00017-REB-CBS, 2011 WL 1883012, at *2 (D. Colo. May 17, 2011) ("Given that lenient standard, and the fact that little discovery has yet occurred in this case, I find that it would be both legally erroneous and simply unfair to accept the invitation implicit in defendant's voluminous evidentiary submission to investigate further the potential efficacy of the allegations at this stage…."). This is especially true given that, over their objection, Plaintiffs were barred from discovery during the pendency of the motion. *See* ECF Doc. 124 (staying discovery pending the decision on the motion to dismiss).

**C. The R&R's Recommendation that Notice Should be Distributed Company-Wide is not Clearly Erroneous or Contrary to Law**

Defendants next argue that, if notice is distributed, it should be limited to Colorado. Obj. at 9-13. Without citation, Defendants attempt to argue that allegations—supported by findings from the USDOL—that Xclusive's pay policies are centrally controlled by Defendant Astley out of Xclusive's Westminster, Colorado corporate office are somehow not "substantial allegations" sufficient to support conditional certification. Obj. at 10. The R&R disagrees and explains this central control:

> Plaintiffs allege that Xclusive's national pay policies are controlled centrally from its Colorado headquarters, noting in support that payroll for all its branches is handled here, that the USDOL has previously determined that Defendant Astley creates policies affecting all branches from Colorado, that all paystubs are issued by Xclusive Staffing, and that Defendant Astley signs each pay check."

R&R at 7.

These allegations are far from conclusory. Rather, findings from USDOL investigations of Xclusive received in response to a FOIA are attached as an exhibit to the motion and Plaintiffs point to quotes from the USDOL findings in their motion:

> [C]ompany-wide notice is particularly appropriate given that Xclusive and its employment policies are centrally controlled by Defendant Astley out of Xclusive's Westminster, Colorado headquarters. [ECF Doc. 52 ¶ 30] ("Xclusive's operations throughout the country are controlled centrally out of its Westminster, Colorado headquarters."); [ECF Doc. 139-1], USDOL Investigations at 13 ("Owner Diane Astley and President Eloy Yanez set company policies and procedures, direct the work of all employees, and hire and fire employees."), 26 ("Ms. Astley owns all establishments and she and Mr. Yanez create policies affected all establishments."), 27 (Ms. Astley creates all administrative policies affecting employees…."), 46 ("Diane Astley … oversees all aspects of the daily business operations, including employment issues related to hiring, firing, promotion and rates of pay.").

ECF Doc. 139 at 9-10; *see also* ECF Doc. 139-1 at 13, 26, 27, 46 (USDOL investigation findings).

These are substantial allegations sufficient to make conditional certification company-wide. But there is more. As previously noted, Xclusive's "Standard Application Packets" warn ***all*** Xclusive employees that they will be subject to the $3.00 deduction policy, *supra* at 5 (citing ECF Doc. 139-2), and Plaintiffs submit a declaration in support of their motion from an Xclusive employee who confirmed the ubiquity of the 30-minuted deduction policy with agents of Xclusive, ***including the President of Xclusive***, *see supra* at 7 (citing ECF Doc. 196-1).

Moreover, once again, the cases Defendants cite for support undermine their arguments. While Defendants cite *Avendano v. Averus* for the proposition that certification should be limited to a particular branch of a defendant employer when plaintiff employees only experienced a policy at a particular branch, the FLSA claims in that case were later certified on a company-wide basis, notwithstanding that the plaintiff had himself only worked at a single defendant location, after

11

plaintiff offered statements from defendants confirming that the policies were company-wide. Obj. at 10-11; *Compare Avendano v. Averus, Inc.,* 2015 WL 1529354 (D. Colo. March 31, 2015) (limiting certification to Colorado) *with Avendano v. Averus, Inc.*, 14-cv-01614-CMA-MJW, ECF Doc. 91 (D. Colo. Sept. 29, 2016) (expanding certification company-wide). As with the eventual company-wide certification in *Avendano,* the central control of Xclusive's pay practices confirmed by the USDOL coupled with the Standard Application Packets and declaration confirming statements from Xclusive agents similarly establishes that the policies experienced by Plaintiffs are company-wide.

Finally, Defendants attempt to cite to the transcript from the hearing on the *Gulf Oil* motion—*i.e.*, the hearing on the motion for a protective order regarding alleged improper coercive distribution of arbitration agreements to the putative class—is irrelevant here. *See* Obj. at 11 (quoting ECF Doc. 212-2 at 111). There, Plaintiffs had the burden of proving, with admissible evidence, that arbitration agreements were distributed by branch managers at each of Xclusive's branches in the same coercive manner that they were distributed to Plaintiff Simon. Here, Plaintiffs face a notably more "lenient" burden. They must merely show "'substantial allegations' that all members of the putative class were subject to a single decision, policy or plan." *Lysyj*, 2014 WL 273214, at *1 (emphasis added). Plaintiffs have done that.

D. **The R&R's Recommended Tolling is not Clearly Erroneous or Contrary to Law**

The R&R rightly recommends that the Court exercise its discretion to toll the statute of limitations from the date of the motion until after potential opt-ins receive notice. *See* R&R 8-9 (recommending tolling "from the date of the filing of the subject Motion, December 9, 2016, until 90 days after the opt-in plaintiffs receive notice of this lawsuit."); *Stransky v. HealthONE of*

*Denver, Inc.,* 868 F. Supp. 2d 1178,1182 (D. Colo. 2012) (ordering same). As in *Stransky*, Plaintiffs are unable to contact any potential opt-in Plaintiffs without Defendants' records of their names and contact information because Defendants are "in sole possession of the names and last known physical addresses of all potential Opt-in Plaintiffs." *Id* at 1181. Because notice to putative class members is central to the FLSA's enforcement scheme, tolling is appropriate when defendant has control of the notice mechanism, particularly where, as is the case here, the vast majority of putative class members would unlikely be able to perceive the illegal conduct that forms the basis of Plaintiffs' claims. Moreover, as was the case in *Stransky*, Defendants' response to the motion is devoid of any claims of prejudice resulting from the tolling. *See* ECF Doc. 150 at 18-20; *Stran*sky, 868 F. Supp. 2d at 1181-82 (citing *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 616 (10th Cir.1988); *Baden-Winterwood v. Life Time Fitness*, 484 F.Supp.2d 822, 828-29 (S.D. Ohio 2007)).

Further, the interests of absent putative class members, who receive special protection under § 216(b) of the FLSA, weigh heavily in favor of tolling. *Stransky,* 868 F. Supp. 2d at 1181. As the Court is well aware, the statute of limitations for FLSA opt-ins does not stop until they opt in. *See* R&R at 7-8 (quoting *Abdulina v. Eberl's Temp. Servs., Inc.*, No. 14-CV-00314-RM-NYW, 2015 WL 4624251, at *3 (D. Colo. Aug. 4, 2015)). And given the Court's busy docket and Defendants' vigorous litigation of the certification issue, it will be well over a year before this motion is finally determined. Many opt-in claims are likely to expire during the pendency of the motion. Allowing those claims to expire because of Defendants vigorous efforts to avoid certification would defeat a core purpose of the statute: offering injured plaintiffs with the right to stand up for other mistreated workers by bringing suit "in behalf of . . . other employees similarly situated." 29 U.S.C. § 216(b); *Turner v. Chipotle Mexican Grill, Inc.,* 123 F. Supp. 3d 1300, 1309

(D. Colo. 2015) ("I would like to see Plaintiffs' allegations rise or fall on their merits, rather than as a result of procedural maneuvering, piecemeal litigation, or attrition."). The right to a collective action in this regard was central to Congress's purposes in passing the FLSA, which is designed to ensure that "no [individual employee] need stand alone in doing something likely to incur the displeasure of an employer." *Pentland v. Nat'l Dravo Corp.*, 152 F.2d 851, 853 (3d Cir. 1945).

Finally, as Plaintiffs point out in their Motion, the circumstances of Xclusive's purported violations weigh heavily in favor of tolling.

> When employees enter time, Xclusive adjusts that time, and then employees are provided a paycheck only showing total hours worked, but without revealing, on their face, the auto-deducted lunch break. This, if true, is exactly the type of concealment that could plausibly support tolling.

ECF Doc. 139 at 16 (citing *U.S. v. Clymore,* 245 F.3d 1195, 1199 (10th Cir. 2001)). At the very least, the Court should follow the "wait and see" approach, urged by Plaintiffs in their motion, by issuing notice to all of those whose claims are potentially timely and then allowing further fact-finding to determine whether the facts warrant tolling. *See* ECF Doc. 139 at 12-18; *see Beltran v. Interexchange,* 14-cv-03074-CMA-KMT, ECF Doc. 525 at 15 n. 4 (D. Colo., Mar. 31, 2017) (Conditionally certifying FLSA classes and expanding notice back to 2009 in a 2017 certification decision for a case originally filed in 2014 based on the potential for a future tolling finding) ("At this stage, the Court reserves ruling on the issue [of tolling], because there is no prejudice to Defendants in notifying putative plaintiffs that may have a claim, and no significant additional burden associated with the accompanying discovery.").[3]

---

[3] *Beltran* was accepted as supplemental authority by the Magistrate Judge prior to issuing the R&R. *See* ECF Docs. 196 (motion to supplement), 196-2 (*Beltran*), 197 (referral), 206 (order).

## II.     CONCLUSION

For the forgoing reasons, the objection should be overruled, and the R&R should be adopted.

Respectfully Submitted,

*s/Alexander Hood*
David H. Seligman
Alexander Hood
Towards Justice
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-248-8426
Fax: 303-957-2289
Email: david@towardsjustice.org

Attorneys for Plaintiffs

**Certificate of Service**

I hereby certify that on December 12, 2017, I served a true and correct copy of the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5.

<u>*s/Alexander Hood*</u>
Alexander Hood