**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 16-cv-00671-RM-NRN
Consolidated for Settlement Approval with Civil Case No. 17-cv-01602-RM-NRN

ISABEL VALVERDE *ET AL.,*

     Plaintiffs,

v.

XCLUSIVE STAFFING, INC., *ET AL,*

     Defendants.

---

**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS AND COLLECTIVE ACTION SETTLEMENT AGREEMENT**

---

**Certificate of Compliance with D.Colo.LCivR 7.1A**

The undersigned conferred with Defendants' counsel and Plaintiff Simon prior to filing this motion. Defendants **do not oppose** the relief sought in the motion. Plaintiff Simon **does not consent** to the Motion.

## I.     INTRODUCTION

*Valverde v. Xclusive Staffing*, 16-cv-00671-RM-NRN and *Trejo v. Xclusive Staffing*, 17-cv-01602-RM-NRN (together, the "Consolidated Cases") were consolidated for settlement approval by this Court. *See Valverde*, ECF Doc. 270, *Trejo*, ECF Doc. 81-82. Plaintiffs in the Consolidated Cases are all former employees of Defendant Xclusive Staffing, Inc. and/or Xclusive Staffing of Colorado, LLC (together, "Xclusive"), a staffing agency based in Colorado, who worked at one or more of Xclusive's client locations in Colorado. The other Defendants in the

Consolidated Cases are Xclusive affiliates or clients of Xclusive where Plaintiffs performed work. One of the original Defendants has already settled the claims against it.[1]

Plaintiffs and Defendants (together, the "Parties") have reached a global settlement that seeks to settle all claims in the Consolidated Cases on a class and collective action basis. *See* Exhibit 1 ("Settlement").[2] Plaintiffs Isabel Valverde, Jose Trejo, Marisol Trejo, Vilma de Jesus Alvarenga Carranza Obdulia Julie Cortez (hereinafter, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), submit this Motion for Preliminary Approval of Proposed Class and Collective Action Settlement Agreement (the "Motion"). Plaintiff Maria Simon is no longer represented by Plaintiffs' counsel and does not join this motion. *See infra* at 13.

Plaintiffs' claims arise from allegations that Xclusive had the following allegedly illegal pay policies: (1) deducting $3.00 from every paycheck to employees; (2) denying employees meal breaks while automatically deducting 30 minutes of work from every workday for meals; and (3) failing to provide 10-minute breaks for every four hours worked as required under Colorado law.[3]

---

[1] Plaintiff Simon already settled her claims with Defendant HCA-HealthONE LLC d/b/a Sky Ridge Medical Center on a class-wide basis. *See Valverde*, ECF Doc. 217 (finally approving the settlement).

[2] Plaintiffs note that Ms. Simon's signature does not appear on the Settlement provided with this Motion. *See* Exhibit 1. Plaintiffs also note that Ms. Simon did sign the term sheet at mediation which is enforceable on its own. Exhibit 2. Plaintiffs take no position as to whether Ms. Simon signed the final merged settlement and there will be subsequent litigation regarding that issue. *See, e.g., Valverde*, ECF Docs. 293 (motion to quash subpoena demanding signature page), 295 (order setting hearing on same). Despite this, the Parties believe the Settlement can and should be approved without Ms. Simon's signature and without Ms. Simon as a class representative.

[3] Plaintiffs in *Trejo* also brought claims based on an alleged policy of paying employees with two paychecks in a single workweek to avoid paying overtime. Through discovery, Plaintiffs have determined that, though two checks were paid on certain workweeks, overtime was properly paid during those workweeks.

Plaintiffs have investigated these policies during discovery. And while Xclusive denies the existence of all but the $3.00 deduction policy (Plaintiffs' investigation shows that policy ended in June 2016), the Parties have worked diligently to resolve Plaintiffs' claims on a Colorado class-wide basis. In this motion, Plaintiffs request that the Court preliminarily approve the Settlement so that notice may be sent to the putative class, a fairness hearing may be set, and the Parties can move toward final approval.

## II.    PROCEDURAL HISTORY

Plaintiffs filed several claims against Defendants, including under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat.§§ 8-4-101, *et seq.*[4] Here, they submit a proposed class and collective action settlement based on those claims for preliminary approval.

### A.    The Proposed Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b) Classes

As part of this Settlement, and for the purposes of Settlement only, the Parties to the proposed settlement stipulate to the certification of the following Fed. R. Civ. P. 23 class and subclass, and preliminary certification of the following FLSA opt-in class:

**a.    The Fed. R. Civ. P. 23 Class (the "Class"):**

ALL CURRENT AND FORMER HOURLY EMPLOYEES OF XCLUSIVE STAFFING, INC., XCLUSIVE STAFFING OF COLORADO, LLC, OR ANY OF THEIR AFFILIATES, WHO WORKED AT ONE OF THEIR CLIENTS' COLORADO LOCATIONS (EXCEPT SKY RIDGE MEDICAL CENTER HCA-HEALTHONE LLC) AND WERE EMPLOYED ON OR AFTER MARCH 22, 2013 AND UP TO AND INCLUDING FEBRUARY 3, 2019.

**b.    The $3 Deduction Subclass (the "$3 Subclass"):**

---

[4] Plaintiffs filed additional claims, but these additional claims have either been dismissed or are duplicative of the FLSA and CWCA claims.

ALL CURRENT AND FORMER HOURLY EMPLOYEES OF XCLUSIVE STAFFING, INC., XCLUSIVE STAFFING OF COLORADO, LLC, OR ANY OF THEIR AFFILIATES, WHO WORKED AT ONE OF THEIR CLIENTS' COLORADO LOCATIONS (EXCEPT SKY RIDGE MEDICAL CENTER HCA-HEALTHONE LLC) AND WERE EMPLOYED ON OR AFTER MARCH 22, 2013 AND UP TO AND INCLUDING JULY 1, 2016.[5]

c.  **The FLSA Class:**[6]

ALL CURRENT AND FORMER HOURLY EMPLOYEES OF XCLUSIVE STAFFING, INC., XCLUSIVE STAFFING OF COLORADO, LLC, OR ANY OF THEIR AFFILIATES, WHO WORKED AT ONE OF THEIR CLIENTS' COLORADO LOCATIONS (EXCEPT SKY RIDGE MEDICAL CENTER HCA-HEALTHONE LLC) AND WERE EMPLOYED ON OR AFTER MARCH 22, 2013 AND UP TO AND INCLUDING FEBRUARY 3, 2019.

All members of the putative classes worked for Xclusive at one of Xclusive's client locations and all members were allegedly affected by the alleged policies. With regard to the FLSA opt-in class, the Parties recognize that putative claimants will need to affirmatively opt-in to take part in the settlement. By submitting claim forms, the putative claimants are giving their consent, in writing, to take part in the suit. The Notice (Exhibit 3) and the Claim Form (Exhibit 5) make this clear to the Class.

## III.   THE FED. R. CIV. P. 23 CLASS SHOULD BE CERTIFIED

In deciding whether to certify a Fed. R. Civ. P. 23 class action, "the court's first inquiry is whether the plaintiff can show the existence of the four threshold requirements of Rule 23(a) [*i.e.,* numerosity, commonality, typicality, and adequacy]." *Shook v. El Paso County,* 386 F. 3d 963, 971 (10th Cir. 2004) (internal citations and quotations omitted). If the court finds that a plaintiff

---

[5] Discovery has revealed that Xclusive ended the policy of deducting $3 from every paycheck in June 2016.
[6] The Court has already conditionally approved substantially the same FLSA class for Colorado. *See Valverde*, ECF Doc. 248 at 13.

has met these threshold requirements, it must then find "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See Shook,* 386 F.3d at 971; Fed. R. Civ. P. 23(b)(3).

### 1.  Numerosity

Pursuant to, Fed. R. Civ. P. 23(a)(1), "the class is so numerous that joinder of all members is impracticable." In the Tenth Circuit, "[t]here is no set formula to determine if the class is so numerous that it should be so certified. Indeed, because it is such a fact-specific inquiry, [the Tenth Circuit] grant[s] wide latitude to the district court in making this determination." *Trevizo v. Adams*, 455 F. 3d 1155, 1162 (10th Cir. 2006).

Here, based on payroll and billing data provided by Defendants, there are 9,981 workers currently or formerly employed by Xclusive that are members of the proposed classes. *See* Exhibit 9 ¶ 2 (Declaration of Statistician). This is more than sufficient to establish numerosity. *See* Alba Conte, Herbert B. Newberg, & William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2011) (suggesting that a class of 40 or more members should presumptively satisfy numerosity).

### 1.  Commonality

Plaintiffs' challenge to Defendants' pay policies meets the commonality requirement of Fed. R. Civ. P. 23(a)(2) because "there are questions of law or fact common to the class." "A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir.2010). "[E]very member of the class need not be in a situation identical to that of the named plaintiff." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).

### 2.    Typicality

Pursuant to Fed. R. Civ. P. 23(a)(3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *In re Qwest Savings And Investment Plan ERISA Litigation*, No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, at *14-15 (D. Colo. Sept. 24, 2004). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

All Plaintiffs and any members of the $3 Subclass experienced the $3.00 deduction policy, and the other alleged policies, if true, were experienced uniformly across the Class. As such, the class members all worked under the same policies, and the success, or lack thereof, of potential class members' claims will depend on the merits of the same legal theories on which Plaintiffs rely. Because Plaintiffs' claims challenge the same conduct under the same legal and remedial theories as do the claims of the absent class, their claims are typical under Fed. R. Civ. P. 23(a)(3).

### 3.    Adequacy

Pursuant to Fed. R. Civ. P. 23(a)(4), "the representative parties will fairly and adequately protect the interests of the class." Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020* (9th Cir. 1998). The second factor implicates "the experience and competence of the attorney[s] representing the class….." *United*

*Food & Commer. Workers Union v. Chesapeake Energy* Corp., 281 F.R.D. 641, 654 (W.D. Okla. 2012) (internal citations omitted). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of the upholding the class, subject to later possible reconsideration, or the creation of subclasses initially." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo.1998).

There is no apparent conflict of interest between the potential class members and either the Plaintiffs or their counsel. Plaintiffs can only recover if they succeed on legal theories that would also lead to recovery for the class. Moreover, Plaintiffs' attorneys' incentives are also aligned with the Class and $3 Subclass as they work for a non-profit legal organization that will only recover its fees and costs if Plaintiffs and the class recover damages for their claims. *See* Ex. 7 ¶ 14.

Finally, Plaintiffs' attorneys are staff attorneys at Towards Justice and Towards Justice's attorneys are uniquely qualified to prosecute this action. Towards Justice has bilingual staff members that can communicate with the class that in part likely speaks Spanish as a first language. *See* Ex. 7 ¶ 7. Moreover, Towards Justice's attorneys have the experience necessary to competently pursue this litigation. Attorneys Hood and Seligman have extensive experience in wage and hour class claims similar to those at issue here. *See* Ex. 7 ¶¶ 10-13; Ex. 15 ¶¶ 8-10.

### 4.     Predominance

To the knowledge of Plaintiffs, no other potential class member has filed any claim in any court or administrative proceeding for unpaid wages against Defendants. Thus, no other potential class members have demonstrated an interest in controlling this litigation and no litigation has been commenced against a class member. *See* Fed. R. Civ. P. 23(b)(3)(A)-(B). The District of Colorado is ideal for the concentration of this litigation because all Parties reside in this district

and all claims arose in this district. *See* Fed. R. Civ. P. 23(b)(3)(C). The class action is unlikely to be difficult to manage because underlying all claims are common policies that would have equally impacted all class members for each workweek worked and Xclusive's records precisely show how many workweeks each class member worked. *See* Fed. R. Civ. P. 23(b)(3)(D).

Finally, the class action vehicle is the superior method for adjudicating this controversy because it involves small claims of low-wage workers. Courts in the District of Colorado have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are unlikely to be otherwise pursued. *See, e.g., Maez*, 268 F.R.D. 391, 397 (D. Colo 2010); *Cook v. Rockwell International Corp.,* 181 F.R.D. 473, 482 (D. Colo. 1998).

**d.**     <u>**Summary of Settlement Terms**</u>

**Consideration:** Defendants have agreed to pay Plaintiffs and the classes a total of $1,520,000.00. This entire amount shall be paid into a class fund and all other payments and expenses resulting from this Settlement—including attorney's fees, expenses, taxes, and payments to the classes—shall be made from this class fund.

**No Retaliation:** Defendants acknowledge their obligation under the FLSA and Colorado law to not discharge, in any manner discriminate against, and/or interfere with Plaintiffs and Claimants for asserting their rights, as required by 29 U.S.C. § 215(a)(3) and C.R.S. § 8-4-120.

**Attorneys' Fees and Costs:** Plaintiffs' counsel will separately petition the Court for its fees and costs. Plaintiffs' counsel expects that its costs will not exceed $30,000 and expects that its fee request will be for 25% of the class fund, or $380,000.00. This fee and cost request will be publicly filed well in advance of the final approval hearing in order to give class members the chance to object if they see fit.

**Denial of Liability**:  Defendants have agreed to the terms of the Settlement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' businesses due to the pendency and expense of litigation. Nothing in the Settlement shall be deemed, construed or used as an admission of liability by Defendants.

**B.**     **Notice, Notice Plan, Claim Form and Opt-Out Form are Reasonable and Should be Approved**

When a court determines that a settlement warrants preliminary approval, Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." The notice provided to a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Notice is sufficient "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted). The notice should inform class members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B). Mailing notice to each member of a settlement class "who can be identified through reasonable effort" is presumptively reasonable and sufficient. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The notice, claim form, and opt-out form inform the putative class of the nature of the settlement and their rights in simple language. *See* Exhibits 3-6 (notice for mailing and text, notice for publication, claim form, and opt-out form). Moreover, because at least some of the classes are composed of native Spanish speakers, the documents will be provided in both English and Spanish.

9

### 1.      Notice by Mailing

The notice for mailing, claim form, and opt-out form, Exhibits 3-6, will be mailed to all class members at their last known addresses, which will be provided to the class administrator by Xclusive from Xclusive's employee records. All addresses will be updated through the U.S. Postal Service by the class administrator prior to mailing.

### 2.      Notice Distributed with Pay Checks

Xclusive has also agreed to have the notice, claim form, and opt-out form distributed in pay envelopes to current employees that are members of the class on the pay day subsequent to the date notices are mailed.

### 3.      Notice by Text

A notice will also be sent via text messages to each class member at the phone numbers that Xclusive has on file for each class member. The text messages will be sent manually by the class administrator and every number will be checked against the national do not call registry prior to a text message being sent to it.

The text message will include an internet link, which will open a digital version of the notice, claim form, and opt-out form used for mailing. Class members will be able to complete and digitally sign the forms from their phones or a computer. If a class member has difficulty with the digital submission, the class members are instructed to contact the class administrator at a dedicated number.

Plaintiffs propose two text messages, one in English and one and Spanish, to be sent manually to each person individually from an individual mobile phone with the following language:

> You may be a member of a class of individuals certified by a court to receive wages in a settlement regarding work you did for Xclusive Staffing. Go here to read about your rights: [INSERT URL]. [7]

If there are any responses to the text message via a text message response from a class member, Plaintiffs propose that the Court authorize the class administrator to manually send from an individual mobile phone a single reply in the same language, English or Spanish, as the response with the following language:

> Thank you for the response. Please call or email the class administrator with any questions at [INSERT TOLL FREE NUMBER] or [INSERT EMAIL].

### 4.    Notice by Publication

Finally, the Plaintiffs propose that a shortened notice, Exhibit 4, be published in El Semanario in English and Spanish for four consecutive weeks. El Semanario is a weekly publication that has a circulation of 25,000 in print and 60,000 online reaching up and down the front range of Colorado, the geographic location where most of Xclusive's employees in Colorado work and live. *See* http://www.elsemanario.us/.

### C.    Payment to the Settlement Class Members

Xclusive's employment records contain a list of all members of the classes and the number of weeks worked by every member of the classes. The alleged policies would have affected each class member equally during each workweek. Thus, for every workweek worked by a member of the Class, class members, on average, would have received the same 30-minute deductions and the

---

[7] The class administrator will develop a URL link for use with this text message and Plaintiffs' counsel will confer with Defendants regarding the URL to ensure it is not objectionable prior to the text messages being sent.

same lack of 10-minute breaks. For every workweek worked by a member of the $3 Subclass, class members would have experienced the same $3.00 deduction.

Because of this uniformity of harms across workweeks, the Parties intend to distribute the Settlement proportionally based on weeks worked. However, because of the transient nature of the classes, Plaintiffs are not comfortable simply mailing checks to the last known address of all class members. Instead, Plaintiffs intend to utilize a claims-made process to ensure that checks actually end up in the hands of class members.

Finally, while the Parties are hopeful that the notice and claims process will result in a high claims rate, they cannot be sure. And the Parties agree that a significant portion of the class fund should be paid to class members rather than *cy pres.* If the residual exceeds $175,000.00 (*i.e.*, approximately 11.5% of the class fund) the Parties have agreed to confer and return to the Court with proposals for distributing additional amounts to class members.

Finally, despite the robust notice process, there will likely be some amount of the class fund remaining as a residual after settlement payments have been made to the class. Parties agree that this residual shall be distributed *Cy Pres*. And while ultimately the decision of who a *Cy Pres* should be is up to the Court,[8] the Parties recommend the following two entities as *cy pres* and recommend that any residual be divided equally among them:

**PLAINTIFFS' SUGGESTION:** Centro Humanitario Para Los Trabajadores.[9]

---

[8] *See* American Law Institute (ALI), Principles of the Law of Aggregate Litigation § 3.07, *available at* http://www.lfcj.com/uploads/3/8/0/5/38050985/_307cy_pres_settlements.pdf.
[9] *See* https://www.centrohumanitario.org/about-us/.

**DEFENDANTS' SUGGESTION:** The Boulder Jewish Community Center, which will use any cy pres donations to benefit low-income individuals.

## IV.   PLAINTIFF SIMON

Plaintiff Simon has terminated her attorneys, is proceeding *pro se*, and has indicated she is no longer happy with the settlement. *See Valverde*, ECF Docs. 277, 282, 283 (filings by Ms. Simon and order permitting Plaintiffs' counsel to withdraw as attorneys for Ms. Simon). Plaintiff Simon therefore does not join this motion. However, this motion and the settlement approval process will provide Ms. Simon ample opportunity to air any objection she might have.

After 13 hours of mediation and extensive discussions with counsel, Ms. Simon signed an abbreviated term sheet outlining the material terms of the settlement and indicating its independent enforceability. *See* Ex. 8 ¶ 13, Dec. of Mediator Todd McNamara ("It was my very clear impression that the Settlement Committee fully understood the arguments presented by both sides, the strengths and weaknesses of each parties' position and the settlement terms and conditions, both monetary and non-monetary which were being exchanged."); Ex. 2 (Executed Term Sheet).

Now, Ms. Simon has changed her mind and is signaling her intention to object to the agreement that she has, in effect, already signed. *See* Ex. 2 (executed term sheet); ECF Docs. 277, 283 (filing by Ms. Simon). She has also expressed frustration with Plaintiffs' counsel. The undersigned Plaintiffs' counsel strongly disputes many of the assertions Ms. Simon has made in her filings and is concerned and surprised by the sudden shift in her feelings about the settlement and about her communications with Plaintiffs' counsel. Nonetheless, objecting to the settlement is Ms. Simon's right. However, the time for her objection is at the final approval hearing, when the Court can hear Ms. Simon's objection along with the objections of any class members.

Finally, while Ms. Simon may now be seeking to derail this settlement, Plaintiffs' counsel has no reason to believe that Ms. Simon is acting in bad faith and, therefore, should not be excluded from any service award. *See infra* at 18-20.

## V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED PURSUANT TO FED. R. CIV. P. 23

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Securities Litig.*, 2013 WL 4547404, at *3 (D. Colo. 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)); *see* Manual for Complex Litigation, Fourth, § 21.61 ("The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it. The judge cannot rewrite the agreement.") (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety.")). "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.* (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)). The standards for preliminary approval of a settlement class are not as stringent as those applied for final approval. *Id.*

### A.   The Settlement is the Product of Informed, Non-Collusive Negotiations

There is a presumption that settlements are informed and non-collusive if the class is represented by experienced counsel, the settlement is the result of arms-length negotiation before an experienced mediator, and substantial discovery occurs prior to the settlement. *Newberg on*

*Class Actions* 4th § 13:14 ("Courts also find an absence of collusion when settlement negotiations are conducted by a third-party mediator.") (citing *In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. 2013) (granting preliminary approval of proposed settlement reached through negotiations that involved formal mediation, finding that the proposed settlement is non-collusive, as a settlement "reached with the help of third-party neutrals enjoys a 'presumption that the settlement achieved meets the requirements of due process'" (quoting *Johnson v. Brennan,* 2011 WL 4357376, at *8 (S.D.N.Y. 2011)))); *see also Beaulieu v. EQ Indus. Services, Inc.,* 2009 WL 2208131, at *24–25 (E.D.N.C. 2009) (finding settlement procedurally adequate for the purposes of preliminary approval, in light of the fact that settling parties had participated in "substantial" discovery that "facilitat[ed] an informed decision" and moreover had engaged in adversarial negotiations that were "at arm's length and without collusion").

Here, all Parties were represented by experienced counsel and the Settlement was reached after a 13-hour mediation in front of Todd McNamara, an experienced mediator. *See generally* Ex. 8, Dec. of Mediator Todd McNamara. Proposed class counsel specialize in collective and class action wage and hour litigation on behalf of immigrant workers. They have substantial experience litigating FLSA § 216(b) collective actions and Rule 23 class actions on behalf of low-wage, Spanish-speaking workers. *See generally* Exs. 7 and 15 (declarations of Plaintiffs' attorneys).

**B.** **The Settlement Does Not Improperly Grant Preferential Treatment to Any Class Members**

The Settlement and distribution plan ensure that every member of the Class is entitled to a portion of the class fund based on workweeks worked. This objective, proportional by workweek criteria for determining each class member's allocation assures equal treatment.

C.      **The Fed. R. Civ. P. 23(e) Factors**

Although compliance with the requirements of Fed. R. Civ. P. 23(e) is not absolutely required at the preliminary approval stage, the settlement must meet those standards at the fairness hearing in order to obtain Court approval. Pursuant to Fed. R. Civ. P. 23(e), for final approval the Court must make a "finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *In re Crocs, Inc. Securities Litig.*, 2013 WL 4547404 (D. Colo. 2013) (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). These factors are supported by the following:

1.      **The Settlement Was Fairly and Honestly Negotiated**

The Settlement was reached after a 13-hour mediation in front of an experienced mediator. *See generally* Ex. 8 (dec. of mediator Todd McNamara).

2.      **Serious Questions of Law and Fact Exist**

Serious questions of law and fact drove this settlement. Defendants do not concede the existence or illegality of the alleged illegal pay policies but agree to the Settlement to create certainty and to finally end this litigation.

3.      **The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief after Protracted and Expensive Litigation**

$1,520,000.00 is a significant recovery for Plaintiffs and the Class. When divided among the class the amount may seem small. Based on Xclusive's payroll and billing records, Plaintiffs estimate a total of 199,149 workweeks worked by the class within the statute of limitations and the $1,520,000.00 divided by that number equals roughly $7.63 per workweek. But the claims themselves are relatively small for each workweek worked, *e.g.*, a $3.00 deduction for each workweek and small amounts of unpaid time resulting from the alleged automatic meal break deductions and alleged failure to provide 10-minute breaks. Of importance, Plaintiffs' did not allege, and discovery did not find, that Plaintiffs and the class *always* worked off the clock during lunch and *never* received 10-minute breaks. Instead, Plaintiffs alleged, and discovery showed, that Plaintiffs and the class *sometimes* worked off the clock during lunch breaks and *sometimes* did not receive 10-minute breaks.

In order to be assured of the fairness of the settlement amount, Plaintiffs' counsel asked Defendants for, and received, employment data for every member of the classes for the entire class period. Plaintiffs' counsel then hired a statistician to review the class employment data to calculate potential class-wide actual damages if Plaintiffs were successful on all of their theories at trial. The statistician created a model that provided damages estimates based on the percentage of time, on average, that the class missed their lunch and 10-minute breaks. His findings were as follows:

| % of Time 10-Minute and Lunch Breaks Were Received | Best Case Class-Wide Actual Damages at Trial |
|---|---|
| 50% | $4,432,605.82 |
| 60% | $3,596,461.04 |
| 70% | $2,766,265.84 |
| 80% | $1,942,728.73 |
| 90% | $1,126,689.12 |

*See generally* Exhibit 9 (declaration of statistician).

Given the uncertainty and expense necessary to litigate these claims on a class-wide basis through judgment, the $1,520,000.00 value of immediate recovery outweighs continued litigation. This is particularly true given the uncertainty of the outstanding motion to dismiss, the outstanding motions for judgment on the pleadings regarding the existence of a private right of action for the 10-minute breaks, an opposed motion for class certification, and, most significantly, trial. *See Trejo*, ECF Docs. 45 (objection), 50 (judgment on the pleadings); *Valverde*, ECF Doc. 241 (judgment on the pleadings). At this preliminary approval stage, the settlement amount is surely sufficient to proceed to notice and an approval hearing, as

> ***Preliminary approval*** requires a determination whether the proposed settlement is within the range of fairness, reasonableness and adequacy so as to justify notifying the class members of the proposed settlement and ***final approval*** requires a determination whether the proposal is indeed fair, reasonable and adequate in the ultimate sense.

*See In re Amino Acid Lysine*, 1996 U.S. Dist. LEXIS 5308, at *11 (N.D. Ill. Apr. 19, 1996) (quotations and citations omitted, emphasis added).

### 4.      The Parties Believe the Settlement is Fair and Reasonable

Plaintiffs represent that they believe the settlement is fair and reasonable. Moreover, the mediator, who is an experienced litigator in this area of law, believes the settlement is fair and reasonable. *See* Ex. 8 ¶¶ 9-19 (dec. of mediator Todd McNamara).

## VI.      PRELIMINARY CERTIFICATION OF THE FLSA OPT-IN CLASS

The Court has already conditionally certified the FLSA class that is part of this Settlement. *See Valverde*, ECF Doc. 248 at 13.

## VII.    SERVICE PAYMENTS TO PLAINTIFFS

Plaintiff requests that the Court preliminarily approve service awards to Plaintiffs.

Defendants do not oppose this request.  "[N]amed plaintiffs…are eligible for reasonable incentive

payments" as part of a class action settlement. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003).

When evaluating the reasonableness of a service award, courts may consider factors such as

> 'the actions the plaintiff has taken to protect the interests of the class, the degree to
> which the class has benefited from those actions, . . . the amount of time and effort
> the plaintiff expended in pursuing the litigation. . . and reasonabl[e] fear[s of]
> workplace retaliation.'

*Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Ultimately, the amount of the service award is up to the Court's discretion. However, in

wage and hour class actions like this, awards of $10,000 to $30,000 are not unreasonable because

of "the fear and risk of retaliation and embarrassment in the workplace, on top of the time and

administrative commitment that is commonly shared in all cases." *Scovil v. FedEx Ground*

*Package Sys., Inc.,* No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6–7 (D. Me. Mar. 14, 2014)

(citing Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An

Empirical Study, 53 UCLA L.Rev. 1303, 1308 (2006) (considering 374 cases from 1993–2002

and finding that then—between 26 and 17 years ago—the median incentive payment was $4,357

and the mean incentive payment was $15,992)).

Moreover, even if she objects, Ms. Simon should not be excluded from a service award

unless her objection is made in bad faith. *See Scovil*, 2014 WL 1057079, at *7 ("Although Scovil,

McMullen, Nylund and Esposito all objected to the settlement, that does not disqualify them for

an award if they performed exceptional service and if they made their objections in good faith

based upon their judgment of the class's best interest."). Plaintiffs' counsel currently believe Ms. Simon is acting in good faith and will inform the Court if that belief changes.

Plaintiffs bringing this motion submit declarations showing their exceptional efforts, in both service and sacrifice, in bringing this case on behalf of the proposed classes. *See* Ex. 10-14. Moreover, Plaintiffs' counsel proffers that Ms. Simon's service was significant, as she spent substantial time in meetings with counsel, responded to written discovery, sat for two depositions, and attended the day-long mediation that ultimately resulted in this settlement. All Plaintiffs, including Ms. Simon, should therefore be granted service awards between $10,000 and $30,000.

## VIII.   APPROVAL OF THE SETTLEMENT ADMINISTRATOR

Plaintiffs' counsel have selected Optime Administration, LLC ("Optime) as settlement administrator. Optime has administered more than fifty (75) class and collective actions. Ex. 16 ¶ 2 (Optime dec.). Also, Optime specializes in distributing funds to non-English speaking workers. *Id.* ¶ 3. Optime has provided an estimate of approximately $36,000.00 to fully administer this settlement. *See* Ex. 17 (estimate). Plaintiffs therefore request that Optime be approved.

## IX.   CONCLUSION

For the forgoing reasons, Plaintiffs request that the Court preliminarily approve their settlement and enter the proposed order submitted with this motion.

s/Alexander Hood
Alexander Hood
David Seligman
Towards Justice
1410 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Email: alex@towardsjustice.org
*Attorneys for Plaintiffs*

20

**Certificate of Service**

I hereby certify that on May 10, 2019, I served a true and correct copy of the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5.


s/Alexander Hood
Alexander Hood