IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-cv-00671-RM-NRN

ISABEL VALVERDE
MARIA SIMON; and those similarly situated

    Plaintiffs,

v.

XCLUSIVE STAFFING, INC.;
XCLUSIVE MANAGEMENT, LLC d/b/a XCLUSIVE STAFFING;
XCLUSIVE STAFFING OF COLORADO, LLC;
DIANE ASTLEY;
OMNI INTERLOCKEN COMPANY, L.L.C.;
OMNI HOTELS MANAGEMENT CORPORATION;
JMIR DTC OPERATOR L.L.C.; and
MARRIOTT INTERNATIONAL, INC.

    Defendants.

Civil Case No. 17-cv-01602-RM-NRN

JOSE TREJO;
MARISOL TREJO;
OBDULIA JULIE CORTES;
VILMA DE JESUS ALVARENGA CARRANZA; and those similarly situated

    Plaintiffs,

v.

XCLUSIVE STAFFING, INC.;
XCLUSIVE MANAGEMENT, LLC d/b/a XCLUSIVE STAFFING;
XCLUSIVE STAFFING OF COLORADO, LLC;
DIANE ASTLEY; and
WESTIN DIA OPERATOR, LLC,

    Defendants.

**SETTLEMENT AGREEMENT AND RELEASE**

1

**Exhibit C**

1. This Settlement Agreement and Release ("Settlement" or "Agreement") is entered into, on the dates indicated below, by and between (i) the Plaintiffs (as defined below), on behalf of themselves and Settlement Class Members (as defined below); and (ii) the Defendants (as defined below), subject to Court approval and other conditions identified herein.

## RECITALS

2. In *Valverde et al. v. Xclusive Staffing, Inc. et al.*, 16-cv-00671-RM-NRN (D. Colo.) ("*Valverde*"), Plaintiffs Isabel Valverde and Maria Simon, on behalf of themselves and Settlement Class Members, have asserted various claims against Xclusive Staffing, Inc.; Xclusive Management, LLC d/b/a Xclusive Staffing; Xclusive Staffing of Colorado, LLC; Diane Astley; Omni Interlocken Company, L.L.C.; Omni Hotels Management Corporation; JMIR DTC Operator L.L.C.; and Marriott International, Inc. In addition, Plaintiffs also originally asserted claims against HCA-Healthone LLC. However, those claims have been dismissed prior to the execution of this Agreement and HCA-Healthone LLC is not a party to this Agreement.

3. In *Trejo et al. v. Xclusive Staffing, Inc. et al.*, 17-cv-01602 (D. Colo.) ("*Trejo*"), Plaintiffs Jose Trejo, Marisol Trejo, Obdulia Julie Cortes, and Vilma De Jesus Alvarenga Carranza, on behalf of themselves and Settlement Class Members, have asserted various claims against Xclusive Staffing, Inc.; Xclusive Management, LLC d/b/a Xclusive Staffing; Xclusive Staffing of Colorado, LLC; Diane Astley; and Westin DIA Operator, LLC.

4. In *Valverde* and *Trejo*, Plaintiffs, individually and on behalf of Settlement Class Members, assert that Defendants violated state and federal statutory law and/or common law by (1) deducting $3.00 from each employee's paycheck; (2) deducting 30 minutes' worth of pay from each employee's work day for a 30-minute meal break, regardless of whether employees actually took a 30-minute break; (3) failing to provide employees with compensated ten-minute rest breaks for every four hours worked; and (4) paying employees with two paychecks for a single workweek in order to avoid paying overtime.

5. In *Valverde*, the district court has conditionally certified a nationwide FLSA opt-in class for FLSA claims related to alleged $3.00 deductions. Opt-in notices have not been sent to the conditionally certified class.

6. In *Valverde*, the district court has conditional certified a Colorado-only FLSA opt-in class for FLSA claims related to alleged 30-minute meal break deductions. Opt-in notices have not been sent to the conditionally certified class.

7. The district court has consolidated *Valverde* and *Trejo* for the purposes of pretrial discovery, as both cases involve common questions of law and fact. The district court has also consolidated both cases for the purposes of the settlement approval process.

8. As a result of arms-length negotiations, the Parties (as defined below) have agreed to settle *Valverde* and *Trejo* (the "Consolidated Cases") according to the terms of this Agreement.

9. Plaintiffs' Counsel (as defined below) has made a thorough and independent investigation of the facts and law relating to the allegations in the Consolidated Cases. In agreeing to this Settlement, Plaintiffs' Counsel has considered: (a) the facts developed during discovery and the Parties' settlement negotiations, and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims asserted against Defendants; and (c) the benefits to Plaintiffs and Settlement Class Members of consummating this Settlement according to the terms of this Agreement. Plaintiffs' Counsel and Plaintiffs have concluded that the terms of this Settlement are fair, reasonable, and adequate, and that it is in the best interests of the Plaintiffs and Settlement Class Members to settle their claims against Defendants pursuant to the terms set forth herein.

10. Defendants deny the allegations asserted by Plaintiffs in the Consolidated Cases and deny that they have violated the law or engaged in any wrongdoing whatsoever. Defendants are entering into this Agreement because it will eliminate the burden, risk and expense of further litigation. Except for purposes of this Settlement, neither this Agreement nor any document referred to herein, nor the negotiations resulting in this Agreement, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession or indication by or against Defendants of any fault, wrongdoing or liability whatsoever.

11. The Parties recognize that final Court approval of this Settlement is required to effectuate the Settlement, and that the Settlement will not become effective until final Court approval occurs and other conditions set forth herein are met.

12. In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, it is hereby agreed that, subject to final Court approval and the other conditions set forth herein, Plaintiffs' claims against Defendants in the Consolidated Cases shall be settled, compromised and dismissed, on the merits and with prejudice, and that the Released Claims (as defined below) shall be finally and fully compromised, settled, waived, and released as to the Released Parties (as defined below), in the manner and upon the terms and conditions set forth below.

## DEFINITIONS

13. The following terms used in this Agreement shall have the meanings ascribed to them below:

    a. "Claims Administrator" means the firm retained by Plaintiffs' Counsel, accepted by Defendants, and approved by the Court to provide Notice(s) to Settlement Class Members and administer the Settlement.

    b.  "Class Settlement Amount" means One Million Five-Hundred and Twenty Thousand Dollars ($1,520,000), which is the maximum amount that Defendants shall pay in connection with this Settlement.

    c.  "Consolidated Cases" means the *Valverde* lawsuit pending in the United States District Court for the District of Colorado, Civil Case No. 16-cv-00671-RM-NRN, and the *Trejo* lawsuit pending in the United States District Court for the District of Colorado, Civil Case No. 17-cv-01602-RM-NRN.

    d.  "Court" means the court or courts that have jurisdiction, or may have jurisdiction in the future, over the Consolidated Cases, including the United States District Court for the District of Colorado, the Tenth Circuit Court of Appeals, and the United States Supreme Court.

    e.  "Defendants" means Xclusive Staffing, Inc.; Xclusive Management, LLC d/b/a Xclusive Staffing; Xclusive Staffing of Colorado, LLC; Diane Astley; Omni Interlocken Company, L.L.C.; Omni Hotels Management Corporation; JMIR DTC Operator L.L.C.; Marriott International, Inc.; and Westin DIA Operator, LLC, each named Defendants in the Consolidated Cases.

    f.  "Defendants' Counsel" means Sherman & Howard L.L.C. and its attorneys.

    g.  "Effective Date" means the first date with all the conditions set forth below in Paragraph 43 have occurred.

    h.  "Fairness Hearing" means the hearing set by the Court under Fed. R. Civ. P. 23(e) to consider final approval of the Settlement.

    i.  "Fee Award" or "Attorneys' Fee Award" means an award of attorneys' fees that the Court may authorize to be paid to Plaintiff's Counsel for services they provided to Plaintiffs and Settlement Class Members in the Consolidated Cases.

    j.  "Final," with respect to a court order, means the later of: (i) the expiration of the time for the filing or noticing of any appeal or petition for certiorari from the order; (ii) if there is an appeal from a court order, the date of final affirmance of the order on appeal and the expiration of the time for any further judicial review, whether by appeal, reconsideration, or a petition for a writ of certiorari and, if certiorari is granted, the date of final affirmance of the order following review pursuant to the grant; or (iii) the date of final dismissal of any appeal from the order or the final dismissal of any proceeding on certiorari to review the order.

    k.  "Litigation Expenses" means the reasonable costs and expenses incurred by Plaintiffs' Counsel in connection with commencing and prosecuting the Consolidated Cases, and for which Plaintiffs' Counsel intends to apply to the Court for payment from the QSF.

l.  "Notice" means a notice of class action and settlement that is agreed upon by the Parties and approved by the Court, and which is to be sent to Settlement Class Members.

m.  "Notice and Administration Expenses" means the costs, fees, and expenses that are incurred in connection with providing Notice(s) to Settlement Class Members.

n.  "Order and Final Judgment" or "Judgment" means an order and/or judgment finally approving this Settlement and dismissing with prejudice all remaining claims in the Consolidated Cases.

o.  "Participation Bonuses" means additional compensation approved by the Court to be paid to Plaintiffs for their efforts in bringing and prosecuting the Consolidated Cases.

p.  "Parties" means (i) Plaintiffs, on behalf of themselves and each Settlement Class Member, and (ii) the Defendants.

q.  "Person" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity, as well as each of their spouses, domestic partners, heirs, predecessors, successors, representatives, agents, trustees, estates, administrators, executors, or assigns.

r.  "Plaintiffs" means Isabel Valverde, Maria Simon, Jose Trejo, Marisol Trejo, Obdulia Julie Cortes, and Vilma De Jesus Alvarenga Carranza, each named Plaintiffs in the Consolidated Cases.

s.  "Plaintiffs' Counsel" means Towards Justice and its attorneys.

t.  "Plan of Allocation" means the proposed plan for allocating funds from the QSF to Settlement Class Members, which shall be subject to approval of the Court.

u.  "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement, approving dissemination of the Notice(s), and scheduling the Fairness Hearing.

v.  "Qualified Settlement Fund" or "QSF" has the meaning set forth below in Paragraph 25.

w.  "Released Claims" means any and all claims, causes of action, liabilities, and demands of any kind or character whatsoever, whether known or unknown, arising on or before the Effective Date from the same or similar facts or circumstances alleged in the operative complaints in the Consolidated Cases, against the Released Parties for alleged unpaid wages,

5

improper deductions, unpaid overtime, liquidated or other damages, costs, penalties, interest, attorneys' fees, injunctive or equitable relief, restitution and any other compensation or relief of any kind whatsoever arising under any federal law, including but not limited to the Fair Labor Standards Act ("FLSA"), or any state or local law, or arising under common law, and in any way based upon or related to any of the facts, allegations, acts, events, transactions, occurrences, conduct, or circumstances referenced in the Consolidated Cases.

        x.     "Released Parties" means Defendants and their past, present and future parent companies, subsidiaries, predecessors, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, heirs, predecessors, successors, transferees, assigns, and insurers.

        y.     "Settlement Class" means the classes identified below in Paragraph 15.

        z.     "Settlement Class Member" means any Person that is a member of the Settlement Class. Any Settlement Class Member that submits a valid and timely opt-out request will neither be bound by the terms of this Settlement, nor receive any of the benefits of this Settlement.

        aa.     "Taxes" means any taxes due and payable with respect to the income earned by the QSF, including any interest or penalties thereon.

        bb.     "Tax Expenses" means any expenses and costs incurred in connection with the payment of Taxes (including, without limitation, expenses of tax attorneys, accountants, and other advisors and expenses relating to the filing or failure to file all necessary or advisable tax returns).

## SETTLEMENT CLASSES

        14.     The Parties stipulate and agree that, for settlement purposes only, the requirements for establishing class action certification under Rule 23 of the Federal Rules of Civil Procedure and conditional certification under the FLSA are met with respect to the Settlement Class defined below in Paragraph 15. Should this Settlement not become final or effective, such stipulation to class action certification and conditional certification under the FLSA shall become null and void and shall have no bearing on and shall not be admissible in connection with the issue of whether or not certification or decertification of classes in these proceedings is necessary or appropriate.

        15.     The Settlement Class is defined, for the purposes of both Rule 23 claims and FLSA opt-in claims, as follows: ALL CURRENT AND FORMER HOURLY EMPLOYEES OF XCLUSIVE STAFFING, INC., XCLUSIVE STAFFING OF COLORADO, LLC, OR ANY OF THEIR AFFILIATES, THAT WORKED AT ONE OF THEIR CLIENTS' COLORADO LOCATIONS (EXCEPT SKY RIDGE MEDICAL CENTER) AND WERE EMPLOYED ON OR AFTER MARCH 22, 2013.

## RELEASES

16. In consideration of the benefits to be received by Plaintiffs and Settlement Class Members under this Settlement, upon the Effective Date:

    a. All Plaintiffs and Settlement Class Members shall be deemed to have released and forever discharged the Release Parties from any and all Released Claims.

    b. In addition, Plaintiffs shall be deemed to have released the Released Parties, and Defendants shall be deemed to have released Plaintiffs, from any and all claims, causes of action, liabilities, and demands of any kind or character whatsoever arising up to the Effective Date of this Agreement. This release applies to all claims, known or unknown, whether negligent or intentional. It includes claims arising because of the continued effects of any acts that occurred on or before the Effective Date of this Agreement. It includes all claims arising from or relating or attributable to Plaintiffs' relationships with Defendants and the termination of Plaintiffs' relationships with Defendants. Without limiting the generality of the foregoing, this release applies to any and all matters which could have been asserted by Plaintiffs or Defendants in the Consolidated Cases, or in any other state or federal judicial or administrative forum, up to the Effective Date of this Agreement. Specifically, but not by way of limitation, it includes claims under:

- The Equal Pay Act.
- The Fair Labor Standards Act, as amended.
- The National Labor Relations Act, as amended.
- Title VII of the Civil Rights Act of 1964, as amended.
- The Post-Civil War Reconstruction Acts, as amended (42 U.S.C. §§ 1981-1988).
- The Americans with Disabilities Act of 1990, as amended, including the ADAAA.
- The Rehabilitation Act of 1973, as amended.
- The Employee Retirement Income Security Act of 1974, as amended.
- The Civil Rights Act of 1991, as amended.
- The Family and Medical Leave Act of 1993, as amended.
- The Age Discrimination in Employment Act, as amended.
- Any other federal statute.
- Any state civil rights act or state employment statute.
- Any state statutory wage claim.
- Any claim of retaliatory treatment.
- Any claim of wrongful discharge against public policy.
- Any claim in tort, contract, or for violation of a covenant of good faith and fair dealing.
- Any claim seeking declaratory, injunctive, or equitable relief.
- Any other claim of any type whatsoever, arising out of federal law, the common law of any state, any state statute, or local law.

This provision, however, shall not be interpreted to waive or release, and does not waive or release, any claim arising out of or related to any charge of discrimination filed by Plaintiffs with the EEOC, including any claims arising out of or related to EEOC Charge No. 541-2017-00850 (Jose Trejo); EEOC Charge No. 541-2017-01695 (Vilma De Jesus Alvarenga Carranza); and EEOC Charge No. 541-2017-01697 (Marisol Trejo).

17. This Agreement shall not be interpreted as a waiver of any claim that cannot lawfully be waived. Nothing in this Agreement is intended to or does limit or infringe any rights to file a charge of discrimination or complaint with the EEOC or any federal, state, or local agency responsible for investigating alleged violations of federal, state, or local laws, or from participating in investigations, proceedings, or litigation conducted by any such agency.

18. Plaintiffs, on behalf of themselves and Settlement Class Members, acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true, with respect to the Released Claims and the additional claims released above by Plaintiffs. Nevertheless, it is the intention of Plaintiffs, on behalf of themselves and Settlement Class Members, in executing this Agreement that they fully, finally, and forever settle and release all such above-referenced claims which exist or might have existed (whether or not previously or currently asserted in any action or proceeding) against the Released Parties.

19. By executing this Agreement, Plaintiffs, on behalf of themselves and Settlement Class Members, acknowledge that they are each represented by counsel and they each have been specifically advised by his or her counsel of the consequences of the above waivers and releases, and of this Agreement generally.

## NO RE-EMPLOYMENT OF PLAINTIFFS

20. As a free and voluntary act, each Plaintiff agrees that he or she will never seek or accept employment with any of the Defendants. If the provisions of this Paragraph are breached by any Plaintiff, his or her application may be rejected by Defendants, without any resulting liability to Defendants or the Released Parties.

## SETTLEMENT CONSIDERATION

21. The total settlement payment shall be in the amount of the Class Settlement Amount. The Class Settlement Amount shall constitute the only payment required by Defendants pursuant to this Settlement. No further payment from Defendants shall be required with respect to this Settlement or the Released Claims, including for Plaintiffs' attorneys' fees or costs, for administration of the QSF, for the provision and administration of the Notice(s), or for any other purpose.

22. Within fourteen (14) days after the Effective Date, Plaintiffs' Counsel shall provide Defendants' Counsel with wiring instructions and a Form W-9 for the QSF, and any other

documents reasonably required by the Defendants to process the funding of the QSF. Defendants will pay the Class Settlement Amount to the QSF, by wire transfer or otherwise, within thirty-five (35) days after the Effective Date.

23. If Defendants fail to meet their obligations under Paragraph 22, above, Plaintiffs shall have the right of termination set forth below in Paragraph 36, and to be returned to the pre-Agreement status quo.

24. Other than the obligation of Defendants to pay the Class Settlement Amount into the QSF, neither the Defendants nor any other of the Released Parties shall have any obligation to make any other payment pursuant to this Agreement. Any interest earned on the Class Settlement Amount after having been paid into the QSF shall be for the benefit of the Settlement Class, except as set forth in Paragraph 26, below.

## THE QUALIFIED SETTLEMENT FUND

25. The Parties agree that at the time set forth above in Paragraph 22, Defendants shall pay the Class Settlement Amount into a Qualified Settlement Fund ("QSF") within the meaning of Treasury Regulation § 1.468B-1, established by Plaintiffs' Counsel pursuant to an order of the Court, which the Claims Administrator will be solely responsible for maintaining and administering, including with respect to all distributions. The Claims Administrator shall be classified as the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3) and shall be responsible, on behalf of the QSF, for filing any and all required federal, state, and local tax returns; for filing all required federal, state, and local information returns; and for ensuring compliance with all tax payment, notice, and withholding requirements with respect to the Class Settlement Amount. For the avoidance of doubt, the Released Parties will not be responsible for any payment, reporting, or withholding of taxes with respect to the Class Settlement Amount, and any taxes due shall be the responsibility of the Releasing Parties and the QSF. The Parties agree to take all steps necessary to ensure that the QSF established by the Court will qualify as, and remain, a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code and Treasury Regulations Sections 1.468B-1 through 1.468B-5 promulgated thereunder, and effectuate its intended purpose. All fees and costs related to the creation and administration of the QSF shall be paid from the QSF, and no additional funds shall be required of the Released Parties.

26. The QSF shall be used to pay: (i) Taxes and Tax Expenses; (ii) Notice and Administration Expenses; (iii) any Fee Award and Litigation Expenses awarded by the Court; (iv) any Participation Bonuses awarded by the Court; (v) any other fees, costs, or expenses approved by the Court; and (vi) amounts paid to Settlement Class Members. No Released Party shall bear any further or additional responsibility to the Settlement Class or their counsel for any fees, costs or expenses beyond payment of the Class Settlement Amount.

### ATTORNEYS' FEES AND LITIGATION EXPENSES

27. Plaintiffs' Counsel intends to seek a percentage of the Class Settlement Amount as a Fee Award, and also seek payment of Litigation Expenses and Participation Bonuses from the QSF. Defendants will take no position with respect to these requests.

### PLAN OF ALLOCATION AND CY PRES DISTRIBUTION

28. Funds shall be distributed to Settlement Class Members as provided in the Plan of Allocation approved by the Court, and amounts paid to Settlement Class Members shall be administered and/or determined by the Claims Administrator in accordance with the Plan of Allocation and any applicable Court orders.

29. The Claims Administrator shall establish a "Void Date," meaning a date on which any checks issued to Settlement Class Members that have not been cashed will be void. The Void Date shall be no later than 120 days after the issuance of all settlement checks to Settlement Class Members.

30. To the extent unclaimed funds remain in the QSF after the Void Date, the Parties agree that they will each select a charitable entity or entities to receive such funds, which shall be used only for purposes consistent with the interests of the Settlement Class (i.e., low-wage workers). Plaintiffs' selection of entity(ies) shall receive fifty percent (50%) of such funds and Defendants' selection of entity(ies) shall receive fifty percent (50%) of such funds. The Parties understand that any such entities will use the funds only in a manner that aligns with the interests of the Settlement Class. Defendants further agree that, before any unclaimed funds are distributed to their selected charitable entity(ies), such entity(ies) will describe in writing how such funds will be used solely for purposes consistent with the interests of the Settlement Class, and such writing shall be provided to Plaintiffs' Counsel.

### OBJECTIONS

31. Any Settlement Class Member wishing to object to the Agreement may do so only according to the process ordered by the Court.

32. The Parties agree not to file, and to oppose, any objection to this Agreement.

### MOTION FOR APPROVAL FROM COURT AND SUBSEQUENT DEADLINES

33. Plaintiffs' counsel shall file a motion for preliminary approval of this Agreement on or before the deadline ordered by the Court. Such motion shall seek a Preliminary Approval Order that will, *inter alia*, preliminarily approve this Settlement, set the date for a Fairness Hearing, and approve or prescribe the method for giving Notice(s) to the Settlement Class.

34. The Parties agree to the following deadlines after the Court's entry of a Preliminary Approval Order:

| Deadline | Event |
| --- | --- |
| Within fourteen (14) calendar days after entry of a Preliminary Approval Order. | Defendants will provide the Claims Administrator with a list, in electronic form, of the names, addresses, and telephone numbers of Settlement Class Members. |
| Within thirty-five (35) calendar days after entry of a Preliminary Approval Order. | The Claims Administrator will issue Notice(s) of this Settlement to all Settlement Class Members in a form or forms approved by the Court. |
| Within one hundred and twenty-six (126) calendar days after entry of a Preliminary Approval Order. | Any opt-out forms, FLSA opt-in forms, or claim forms must be post-marked or received by the Claims Administrator. |
| Within one hundred and twenty-six (126) calendar days after entry of a Preliminary Approval Order. | Any objections must be post-marked or received by the Claims Administrator. |
| Within one hundred and forty-seven (147) calendar days after entry of a Preliminary Approval Order. | The parties shall file a joint motion with the Court for final approval of the Settlement, which shall also seek dismissal with prejudice of all claims remaining in the Consolidated Cases. |

## RIGHT TO TERMINATE

35. Plaintiffs or Defendants shall have the right to terminate this Settlement in its entirety by providing written notice of their election to do so ("Termination Notice") to counsel for all other Parties hereto within fourteen (14) calendar days of:

    a. the Court's refusal to enter a Preliminary Approval Order;

    b. the Court's refusal to enter an Order and Final Judgement that (i) provides final approval this Settlement, and (ii) dismisses with prejudice all remaining claims in the Consolidated Cases;

    c. the date upon which any Order and Final Judgment is vacated, modified, or reversed in any material respect by a Final order of any Court, including the Tenth Circuit Court of Appeals or the United States Supreme Court; or

    d. the date the Court orders issuance of any FLSA opt-in notices in either of the Consolidated Cases to potential FLSA opt-in plaintiffs outside of Colorado.

    36. Plaintiffs shall have the right to terminate the Settlement in its entirety by providing Termination Notice to Defendants' Counsel within fourteen (14) calendar days of Defendants' failure to satisfy their obligations in Paragraph 22, above.

    37. Plaintiffs or Defendants shall have the right to terminate this Settlement in its entirety by providing Termination Notice if the Parties fail to reach an agreement resolving, for an amount not to exceed $1,000, the pending claim(s) of Irene Hernandez.

    38. No Party shall have the right to terminate this Settlement due to any decision, ruling, or order regarding a Fee Award, Participation Bonuses, Litigation Expenses, or the Plan of Allocation.

    39. If an option to terminate this Settlement arises under the terms of this Agreement, neither Plaintiffs nor Defendants will be required to exercise that option.

    40. In the event the Settlement is terminated, the provisions of Paragraphs 41, 42, and 44 shall survive termination.

    41. Except as otherwise provided herein, in the event the Settlement is terminated in its entirety, the Settlement will be without prejudice, and none of its terms shall be effective or enforceable, except as specifically provided herein. Plaintiffs and Defendants shall be deemed to have reverted to their pre-Agreement status quo, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In such event, the fact and terms of this Agreement, or any aspect of the negotiations leading to this Agreement, shall not be admissible in this or any other litigation and shall not be used by Plaintiffs against Defendants in any court filings, depositions, at trial, or otherwise.

    42. In the event the Settlement is terminated in its entirety, or if the Effective Date is barred from occurring, pursuant to the provisions above, any portion of the Class Settlement Amount that already has been paid by or on behalf of the Defendants, including any funds disbursed in payment of a Fee Award, Participation Bonuses, and/or Litigation Expenses, together with any interest earnings or appreciation thereon, less any Taxes and Tax Expenses paid or due with respect to such income, and less Notice and Administration Expenses actually and reasonably incurred and paid or payable from the QSF, shall be returned to Defendants within fourteen (14) business days after written notification of such event in accordance with instructions provided by Defendants' Counsel to Plaintiffs' Counsel.

## EFFECTIVE DATE OF SETTLEMENT

    43. The Effective Date of this Settlement shall be the first date when all of the following shall have occurred:

  a. entry of a Preliminary Approval Order;

  b. final approval by the Court of the Settlement following Notice(s) to the Settlement Class and a Fairness Hearing;

  c. entry of an Order and Final Judgment,

  d. the Order and Final Judgment become Final.

## NO ADMISSION OF WRONGDOING

  44. Except in proceedings related to enforcement of this Settlement, this Agreement and any negotiations, proceedings, or agreements relating to this Agreement, the Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements, shall not be offered or received against the Parties or Released Parties and their counsel for any purpose, and in particular:

  a. do not constitute evidence, and shall not be offered or received against any Parties or Released Parties as evidence, of any presumption, concession, or admission by Released Parties with respect to the truth of any fact alleged by Plaintiffs or any other Settlement Class Member or the validity of any claim that has been or could have been asserted in the Consolidated Cases, including but not limited to the Released Claims, or of any liability, damages, negligence, fault, or wrongdoing of the Released Parties;

  b. do not constitute evidence, and shall not be offered or received against any Parties or Released Parties as evidence, of a presumption, concession, or admission of any fault, misstatement, or omission with respect to any statement or written document approved or made by Released Parties, or against the Plaintiffs, or any other Settlement Class Member as evidence of any infirmity in the claims or defenses that have been or could have been asserted in the Consolidated Cases;

  c. do not constitute evidence, and shall not be offered or received against any Parties or Released Parties as evidence, of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against Released Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; and

  d. do not constitute evidence, and shall not be offered or received against any Parties or Released Parties as evidence, of an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

## RESTRICTIONS ON MEDIA PUBLICITY

45. Plaintiffs and Plaintiffs' Counsel, individually and as a firm, agree that they shall not engage in any post-settlement publicity, including but not limited to issuing a press release or similar announcement, or posting any information related to this Settlement on any electronic media including any websites associated with Plaintiffs' Counsel and their firm, and will not provide any interviews concerning the Consolidated Cases or this Settlement, or communicate with any media outlets concerning the Consolidated Cases or this Settlement.

## MISCELLANEOUS PROVISIONS

46. For purposes of this Agreement, if any prescribed deadline by which to complete any required or permitted action falls on a Saturday, Sunday, or legal holiday (as defined by Fed. R. Civ. P. 6(a)(6)), such deadline shall be continued to the following business day.

47. Defendants' legal fees and expenses in the Consolidated Cases shall be borne by Defendants.

48. The Parties agree that no Party was or is a "prevailing party" in the Litigation.

49. This Agreement may not be modified or amended except by a writing signed by counsel or a representative for all the Parties (or their successors-in-interest) materially and adversely affected by any such modification, amendment, or waiver.

50. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

51. Plaintiffs have consulted with their counsel in these matters, as well as their immigration counsel, before signing this Agreement. Each Plaintiff executes this Settlement voluntarily, under their own free will, and without coercion.

52. Each Plaintiff warrants that he or she has had an adequate opportunity for this Agreement to be translated into an appropriate language they can understand.

53. The Parties agree that the terms of the Settlement were negotiated at arms-length, in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

54. The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

55. This Agreement constitutes the entire agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized

in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that the Party has not relied on any promise, representation or warranty, express or implied, not contained in this Agreement.

56. This Agreement may be executed in one or more counterparts, including by e-signature (as permitted by United States Electronic Signatures in Global and National Commerce (ESIGN) Act), signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

57. Each person signing this Agreement represents that such person has authority to sign this Agreement on behalf of Plaintiffs or Defendants, as the case may be, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms.

58. By entering into the Settlement, Plaintiffs represent and warrant that they have not assigned, conveyed, transferred, or otherwise granted or given any interest in the Released Claims, or any of them, to any other Person.

59. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party may merge, consolidate, or reorganize.

60. If any Party is required to give notice to the other Parties under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, e-mail, facsimile, or in person to each of the signatories below.

61. All materials provided by Defendants to Plaintiffs' Counsel and the Claims Administrator for the purposes of administering this Settlement shall be kept confidential and used only for purposes of administering the Settlement.

62. The construction, interpretation, operation, effect, and validity of this Agreement and all documents necessary to effectuate it shall be governed by the laws of the State of Colorado without regard to conflicts of laws.

63. This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arms-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Agreement.

**[The remainder of this page has been intentionally left blank]**

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Agreement as follows:

**PLAINTIFFS:**

_____  Date: _____, 2019
Isabel Valverde

_____  Date: 2/22/2019, 2019
Maria Simon

_____  Date: _____, 2019
Jose Trejo

_____  Date: _____, 2019
Marisol Trejo

_____  Date: _____, 2019
Obdulia Julie Cortes (a.k.a. Julie Rivera)

_____  Date: _____, 2019
Vilma De Jesus Alvarenga Carranza

**FOR PLAINTIFFS AND THE SETTLEMENT CLASS:**

_____  Date: _____, 2019
David Hollis Seligman
Alexander Neville Hood
TOWARDS JUSTICE
1535 High Street
Suite 300
Denver, CO 80218
Telephone: (720) 248-8426

(720) 239-2606

**FOR ALL DEFENDANTS:**

_____    Date: _____, 2019
Diane Astley, on behalf of herself, for
all Xclusive entities, and as indemnitor
for all other Defendants.
Title:   Owner of all Xclusive entities


_____    Date: _____, 2019
Jonathon Watson
Matthew M. Morrison
Sherman & Howard L.L.C.
633 Seventeenth St., Suite 3000
Denver, Colorado 80202
Telephone: 303-297-2900
Facsimile: 303-298-0940
Counsel for all Defendants



## Certificate Of Completion

Envelope Id: 7F8F893A67A640ADAB823E8FC02181B8
Subject: Please DocuSign: Xclusive Settlement [FINAL][FINAL].pdf
Source Envelope:
Document Pages: 17
Certificate Pages: 4
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 1
Initials: 0

Status: Completed

Envelope Originator:
Towards Justice
1410 High Street, Suite 300
Denver, CO 80218
docusign@towardsjustice.org
IP Address: 107.77.169.9

## Record Tracking

Status: Original
    2/22/2019 2:28:39 PM

Holder: Towards Justice
    docusign@towardsjustice.org

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Mariasonia m simon<br>gemmaandsean@yahoo.com<br>Security Level:<br>  DocuSign.email<br>  ID: 1<br>  2/22/2019 2:28:41 PM | [DocuSigned by signature]<br>—08EDED3C44244C7...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 107.77.169.9<br>Signed using mobile | Sent: 2/22/2019 2:28:40 PM<br>Viewed: 2/22/2019 2:29:01 PM<br>Signed: 2/22/2019 2:29:54 PM |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 2/22/2019 11:33:27 AM<br>  ID: 40b50685-d06c-444f-bf71-dc335ba3c7ac | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2/22/2019 2:28:40 PM |
| Certified Delivered | Security Checked | 2/22/2019 2:29:01 PM |
| Signing Complete | Security Checked | 2/22/2019 2:29:54 PM |
| Completed | Security Checked | 2/22/2019 2:29:54 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**