1

```
1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
     Case No. 16-cv-00671-RM-NRN
3    _____

4    ISABEL VALVERDE; MARIA SONIA MICOL SIMON; and those similarly

5    situated,

6         Plaintiffs,

7    vs.

8    XCLUSIVE STAFFING, INC., et al.,

9         Defendants.
     _____
10

11        Proceedings before N. REID NEUREITER, United States

12   Magistrate Judge, United States District Court for the

13   District of Colorado, commencing at 9:35 a.m., May 17, 2019,

14   in the United States Courthouse, Denver, Colorado.
15   _____

16        WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18   _____

19                        APPEARANCES

20        DAVID SELIGMAN and ALEXANDER HOOD, Attorneys at

21   Law, appearing for the Plaintiffs.

22        MATTHEW MORRISON, Attorney at Law, appearing

23   for the Defendants.

24   _____

25                       MOTION HEARING
```

1             P R O C E E D I N G S

2             (Whereupon, the within electronically recorded

3   proceedings are herein transcribed, pursuant to order of

4   counsel.)

5             THE COURT:  We're on the record in Isabel Valverde,

6   Maria Sonia Micol Simon vs. Xclusive Staffing, 17 --

7   16-cv-00671, consolidated with 17-cv-1602.  Could I have

8   appearances, please.

9             MR. HOOD:  Your Honor, Alexander Hood for the

10  plaintiffs.  I'm also the party that filed the motion.

11            THE COURT:  Okay.

12            MR. HOOD:  And this is my first time appearing

13  before you.  Congratulations on your appointment.

14            THE COURT:  Thank you.

15            MR. MORRISON:  Good morning, Your Honor.  Matthew

16  Morrison of the law firm Sherman & Howard for the defendants.

17            THE COURT:  Okay.

18            MR. SELIGMAN:  Good morning, Your Honor.  David

19  Seligman from Towards Justice also for plaintiffs.

20            THE COURT:  All right.  So we got in this motion to

21  quash subpoena and for order to show cause by attorney

22  Alexander Hood.  In retrospect, I guess I could have issued

23  the order to show cause, but I tend to like to actually hold

24  hearings because it educates me about areas of the law that

25  I'm not terribly familiar with.  And in this instance, since

```
 1   Ms. Simon would have gotten notice, and she's now
 2   unrepresented, but she's a party -- she's pro se, right?
 3            MR. HOOD:  That's correct, Your Honor.
 4            THE COURT:  So she presumably received notice and
 5   could have come and I could have had a dialogue with her
 6   about -- about effectively her response to what the order to
 7   show cause would have been, but the record should note that
 8   Ms. Simon is not here.
 9            MR. HOOD:  Your Honor, to that point, Mr. Seligman
10   had a phone conversation with Ms. Simon yesterday, and we
11   would just like to tell you what she told us --
12            THE COURT:  All right.
13            MR. HOOD:  -- in that conversation.
14            THE COURT:  Why don't you come on up -- so that we
15   have this recorded. why don't you come on up to the podium
16   and let me know.
17            I did note in the motion that Ms. Simon did not
18   indicate opposition or lack of opposition to this motion
19   during the call, but that was presumably prior to discussion
20   yesterday.
21            MR. SELIGMAN:  That's right.  So Ms. Simon's father
22   passed away in the Philippines.  She told me that it was
23   possible that that was going to prevent her from coming
24   today, but she wasn't sure, she would still try to make it.
25   That's -- that's all the information that I have.
```

1          We provided her with the address again.  She is
2    clearly receiving notice and receiving all of the filings in
3    this case, but we haven't spoken to her about whether she --
4    anymore about whether she's able to come in today.
5          THE COURT:  Okay.  And just so that I can recite my
6    understanding of -- why don't I hear from the defendants
7    first about the reason for the subpoena.  You want to see her
8    signatures, right?  I guess there is some question about --
9    come on up to the podium and fill me in on that.
10          MR. MORRISON:  Yes, Your Honor.  In November, the
11   parties held a mediation with a private mediator, Todd
12   McNamara.  At the end of the mediation, there was an
13   agreement among all of the parties, including Ms. Simon, for
14   a class and collective action settlement.  There was a term
15   sheet signed at the mediation.  Over the next couple of
16   months, the parties worked on putting together a formal class
17   and collective action settlement agreement.
18          THE COURT:  Quick question about the term sheet.
19   Did everybody present sign?  For example, did Ms. Simon
20   actually sign the term sheet there at the mediation?
21          MR. MORRISON:  Yes, Your Honor, she did.
22          THE COURT:  That's a good mediator, making
23   everybody sign.  Okay, go ahead.
24          MR. MORRISON:  Eventually, we did put together a
25   formal class and collective action settlement agreement.  The

5

```
 1   defendant signed it.
 2           My understanding is that all of the plaintiffs,
 3   including Ms. Simon, also signed it.  Before those signature
 4   pages were provided to us, my understanding is that Ms. Simon
 5   began to raise objections to the settlement and have second
 6   thoughts.  At that point Mr. Hood and Mr. Seligman withdrew
 7   as her counsel.  And then we had an issue about, well, what
 8   do we do with her signature page?  Mr. Hood and Mr. Seligman
 9   provided defendants' counsel with the signature pages for the
10   remaining plaintiffs, but they took the position that they
11   could not provide the signature page for Ms. Simon.
12           I had several conversations with Mr. Hood about
13   that and we discussed how we would proceed.  And as a result
14   of those conversations, it was decided that I would subpoena
15   Mr. Hood for that signature page, which, to my understanding,
16   resides in the client file that is still being held by
17   Mr. Hood.
18           THE COURT:  Well, help me on the law on that,
19   because when my law clerk told me kind of the background,
20   which isn't recited too well in the motion to quash and the
21   subpoena, I was thinking, well, let's -- let's -- I mean, is
22   your position, well, she signed it, so therefore she's
23   legally bound?  Or -- I mean, I would think that your
24   position is, we reached an agreement as to all material
25   terms, which she did sign at the settlement agreement.
```

```
 1              My view is -- I mean, I would think that if I sign
 2     something and give it to my lawyer who is sort of my agent to
 3     hold until I give authorization to deliver to the other side,
 4     my signature on the document is not -- is not acceptance of
 5     the contract; it's not -- you know, going back to first
 6     principles of contract law, there has to be an offer and
 7     acceptance.  If I -- you know, sometimes I'll sign something
 8     for my law clerks and I'll say, Well, just hold off on --
 9     hold off on docketing it until we find out for sure.  You
10     know, I'm going to make a phone call to the Article III judge
11     to make sure he's okay with me going this way, hold off on
12     docketing it.
13              If somebody would say, No, no, Judge, you issued
14     the thing because there is somewhere in your file a written
15     document with your signature on it, I'm not sure that counts,
16     you know.
17              And so I'm curious as to -- I get what you're
18     trying to get, is that you'll be able to show somebody, oh,
19     look, I have now a signature page of not only opposing
20     counsel, but all their plaintiffs' counsel, but also all the
21     individual plaintiffs, but I'm not sure that gets you to the
22     point where you need to in terms of an actual agreement.
23              You probably got there at the mediation when she
24     signed the materials and you could probably move to enforce
25     the settlement that way, but -- so help me on that.  Does it
```

```
 1   really matter?  Do you really win if you're able to show the
 2   signed signature page, even if internally within their law
 3   firm they had discussions and she -- she signs it and they
 4   say, Well, hold off on sending it to them; I'm really having
 5   second thoughts?  I'm not sure that counts as acceptance to
 6   you if she signed it in the presence of her lawyers.
 7            MR. MORRISON:  I suppose there is a few points I
 8   would like to make in response to that.
 9            THE COURT:  Okay.
10            MR. MORRISON:  First, I think it is effective upon
11   signature.  Whether then that is actually provided to the
12   defendants in that case, I think it's immaterial.  Once she
13   signs the agreement, it's effective at that point.  And
14   that's, in fact, what the settlement agreement says is that
15   it's effective upon signature.
16            In a sense, though, I think that entire issue is
17   somewhat beside the point.  We've subpoenaed that document.
18   Rule 26 allows us to obtain discovery on any issue or topic
19   that's not privileged, but relevant to the subject matter of
20   the litigation.
21            Obviously, whether she signed the settlement
22   agreement or not would be relevant to the subject matter of
23   this case.  We can have a fight later on about whether --
24   whether it was effective upon signature or whether it was
25   effective once it was delivered to defendants' counsel or
```

1  whether she has some basis to revoke her signature, but I
2  think it's clearly relevant to the subject matter of this
3  case.  It's not privileged.  It's a signature on a signature
4  page of a document.  There is no attorney/client
5  communications involved, no work product involved.
6           The weight it should be given or the effect of it
7  is an issue that should be handled at some later point.
8           THE COURT:  In other words, you're saying -- what
9  if there is a stipulation that, yes, she signed it and it
10 exists and now you're going to fight about whether something
11 signed, but given to the lawyers, but without authorization
12 to deliver -- to deliver the other side -- you're going to
13 get a chance to talk by the way.
14          MR. HOOD:  Thank you, Your Honor.
15          THE COURT:  This is -- I always give the other side
16 an opportunity to speak.
17          But your position is, we need to establish the
18 facts.  And then the legal implications of those facts will
19 be decided by somebody else when we move to compel, you know,
20 enforcement of the settlement agreement, but we at least need
21 to understand for sure whether she did, in fact, sign it?
22          MR. MORRISON:  Yes, Your Honor, not only whether
23 she did, in fact, sign it, but whether then we can have a
24 copy of it that we can present to the Court.
25          One issue here, Your Honor, is that Judge Moore has

```
 1   set hearing on our motion for preliminary approval, which the
 2   parties signed.
 3           THE COURT:  No, I did see that.  And that's set for
 4   when?  It's pretty soon, right?
 5           MR. MORRISON:  July 3.
 6           THE COURT:  Okay.  Real nice of him that your 4th
 7   of July weekend is sort of shot, but, okay.  Well, I think I
 8   understand your argument.  Let's hear from plaintiff's
 9   counsel.
10           And my -- the impression I got from reading your
11   motion was you're sort of indifferent, but you're not going
12   to turn this over without a Court order?  You're indifferent
13   one way or the other to whether it should be turned over
14   because it's Ms. Simon's, it's her privilege to waive and --
15   but you're not going to do it without a Court order because
16   of your ethical obligations; is that right?
17           MR. HOOD:  That's right, Your Honor.  And I want to
18   be clear that, as I'm standing here and speaking, I'm
19   speaking on behalf of myself and my ethical obligations and
20   not the plaintiffs'.  And though there is no real conflict
21   between me and the plaintiffs, to the extent you want to hear
22   plaintiffs' position, we've sort of parsed it out, so
23   Mr. Seligman can speak so there is no confusion in the
24   record.
25           And I want to apologize for the lack of background
```

```
 1   of the motion.  Judge Moore had gotten -- it didn't seem like
 2   he wanted me reciting the background of the case anymore, and
 3   I did not anticipate this motion being referred, and so I
 4   apologize that it was sort of a short --
 5            THE COURT:  It's hard to predict sometimes what's
 6   going to be referred and what's not.
 7            MR. HOOD:  Exactly.  So anyway, I apologize, and to
 8   the extent I can sort of flush that out more, I'm happy to,
 9   but it sounds that you've sort of dug around yourself and
10   have a good context.
11            So I just want to be clear what my position is
12   here.  I -- first of all, I take no position on whether -- or
13   I am not standing here going to state whether or not I have a
14   signature page or do not have a signature page in my
15   possession.
16            If I have a signature page in my possession,
17   hypothetically, I still, after conferring with ethics counsel
18   as you recited, do not feel -- do not believe pursuant to the
19   Colorado ethics rules that I can respond to the subpoena
20   either by saying, I don't have a signature page or providing
21   the signature pages without an order of the Court, and that's
22   the counsel that I received from my ethics counsel.
23            With regard to the motion itself, while I'm not
24   taking a position on whether or not I should hand over any
25   signature page I have or not hand over any signature page I
```

1   have, I do agree with defendants' counsel that this is a
2   narrow motion or a narrow issue.
3           The question here isn't whether or not the
4   signature page is enforceable or not.  I think that's an
5   issue for another day.  The question here is whether or not I
6   need to hand over any signature page I have in my possession
7   or not.  In other words, whether there is some -- some reason
8   that I should not comply with the subpoena.
9           I again take no position on whether I should comply
10  with the subpoena or not.  What I really wanted to do, and
11  what I think I'm ethically bound to do, is to give Ms. Simon
12  an opportunity to object because it's her privilege -- even
13  though I'm not taking a position on whether she has
14  privilege, it would be her hypothetical privilege that could
15  potentially bar me complying.  I'm not going to argue for
16  that privilege and I'm not standing here today arguing for
17  that privilege, but I am arguing for Ms. Simon to have the
18  opportunity to argue for that privilege if she so sees fit.
19  I said that wrong, but anyway.
20          THE COURT:  But --
21          MR. HOOD:  Oh, go ahead.
22          THE COURT:  -- today is her opportunity, right?  No
23  question she got notice, she knew what was here.  There have
24  been multiple conversations with her informing her both of
25  your motion of the subpoena and the --

```
 1              MR. HOOD:  Oh, Your Honor.
 2              THE COURT:  Yes.
 3              MR. HOOD:  Could I -- so my --
 4              THE COURT:  Take your time, go and talk to whoever
 5   you need to.
 6              MR. HOOD:  Hold on one minute.
 7              THE COURT:  Yeah, yeah.
 8              MR. HOOD:  Your Honor, another attorney in my
 9   office who just came in through security saw Ms. Simon
10   downstairs and she was apparently directed next door by
11   security to the other courthouse.  I'm assuming to Judge
12   Moore's chambers, though I don't know.  Or Judge Moore's
13   courtroom.
14              THE COURT:  I'll tell you what.  Do you all have
15   her cell number?
16              MR. HOOD:  Sure.
17              THE COURT:  Tell you what, we'll take a ten-minute
18   recess, see if you can track her down.
19              MR. HOOD:  Okay.
20              THE COURT:  Feel free to run over there and just
21   let my courtroom deputy know.  I've got nothing else this
22   morning, so I want to -- you know, if she's here, then I want
23   to hear from her.
24              MR. HOOD:  Absolutely, Your Honor.
25              THE COURT:  Because it's the functional equivalent
```

```
 1   of the order to show cause that you all asked for, so.
 2             MR. HOOD:  Absolutely, Your Honor.
 3             THE COURT:  We'll take a short recess and we'll
 4   come back when Ms. Simon is here.
 5             (Recess was taken.)
 6             THE COURT:  Good morning, you may be seated.  So I
 7   guess the record should reflect that Maria Sonia Micol Simon
 8   is present; is that correct?
 9             MS. SIMON:  Yes.
10             THE COURT:  Okay.  So when we paused, plaintiffs'
11   counsel was in the middle of a thought.  So why don't I let
12   you conclude and then we'll sort of fill Ms. Simon in on what
13   has happened and I'll hear from her.
14             MR. HOOD:  Well, Your Honor, I'll be honest with
15   you, I don't remember what my thought was, but I will just
16   sum up and just say, the issue here today is a very narrow
17   one.  It's just whether or not if I were to be in possession
18   of any sort of signature page for the final approval
19   settlement agreement signed by Ms. Simon, I take no position
20   on whether I should hand it over, but the -- or whether I
21   should be compelled to hand it over in response to the
22   subpoena.
23             This is not a hearing on whether or not a
24   signature, if it were to exist, were valid, and this is not a
25   hearing on whether the settlement is adequate.  That's what
```

```
 1   the hearing on July 3 and eventual final approving hearing,
 2   if we get that far, would be for.
 3              The only question before the Court today is whether
 4   or not there is a valid reason for me to not hand the -- any
 5   signature page that might exist over in response to the
 6   subpoena.
 7              THE COURT:  Okay.  So, Ms. Simon, if you want to
 8   come up, please, to the podium, or the lecturn.  Somebody
 9   told me it's not a podium, it's a lecturn.  And just pull
10   that microphone down.
11              MS. SIMON:  Good morning, Your Honor.
12              THE COURT:  Good morning.  So do you understand why
13   we're here?  It is the defendants think that you may have
14   signed the settlement agreement and given the signature page
15   to your lawyers and they want the copy.  Your lawyers have
16   said, We don't take a position on whether we have to turn it
17   over or not, but we're not turning it over without a Court
18   order because it's Ms. Simon's signature page, if it exists,
19   and it's her privilege.
20              And so -- so now is your opportunity to explain why
21   you think, if such a document exists, it shouldn't be turned
22   over to the defendants.
23              MS. SIMON:  Well, in my opinion, at the beginning
24   we signed -- I signed -- I did not sign the paper because I
25   had different thought.  Then I filed a motion because I'm not
```

```
 1   so sure about my (inaudible) information, but when I look
 2   over doing the right thing, and when I look all the
 3   information, but it's not them is my problem.  It's what was
 4   done to all employees from Xclusive.  That's why I did not to
 5   sign the paper right away, but I signed the paper after I
 6   filed the motion, but I'm here today not to make any more
 7   complication.  I am okay for my lawyer to go ahead and give
 8   them my signature.
 9            THE COURT:  Okay, that's -- well, I appreciate
10   that.  And thank you very much for coming.
11            MS. SIMON:  So everything can go the way --
12            THE COURT:  But I want to make sure that you know
13   that -- we're just fighting about whether to give a sheet of
14   paper to the defendant, but it's going to be Judge Moore who
15   will decide whether or not this is a -- it's basically a fair
16   and adequate settlement agreement and whether you're bound by
17   that settlement agreement based on the paper that you signed.
18            It may not be, and you're going to -- if you have
19   second thoughts and you have concerns about whether this deal
20   is fair -- I understand the lawyers think the deal is fair,
21   the defendant thinks -- but if you have concerns about that,
22   you should share those with Judge Moore.  I can't decide
23   that.  And I don't want you to think by turning over this
24   paper somehow you're giving up your right to explain that to
25   Judge Moore.  Okay?
```

```
 1              MS. SIMON:  I do have my own opinion, especially
 2    when I met a person named Rosa.  She had told me more about
 3    the damage, what they have done, to Xclusive and, of course,
 4    to me.  And my signature got into (inaudible) that I did not
 5    sign.  That's another crime that they had made.
 6              And for me having all employees working for a
 7    little money and for eight hours a day not having a luncheon
 8    break, that's totally wrong.  That is my opinion to that and
 9    it happens many years in different country.
10              THE COURT:  And I get that, and Judge Moore, who is
11    across the street, will get to decide whether the settlement
12    is fair or not.  So I want you to hold those thoughts and
13    make sure that you tell those to Judge Moore.  Okay?
14              MS. SIMON:  Yes, I disagree.
15              THE COURT:  Okay, thank you very much, though.  I
16    very much appreciate your coming in today.
17              So with that, plaintiffs' counsel takes no
18    position.  Ms. Simon, whose privilege it is, has no problem
19    with such a document, if it exists, being turned over to the
20    defendant.  So the motion to quash is denied.  And the
21    plaintiffs' counsel is ordered to provide defendant with any
22    signature page, if it exists, if that makes sense.
23              Anything else from the plaintiff?
24              MR. HOOD:  No, Your Honor, thank you.
25              THE COURT:  Anything from the defendant?
```

1        MR. MORRISON:  No, Your Honor.
2        THE COURT:  And thank you, Ms. Simon, for taking
3   the time to come in today, I appreciate it.  All right, we'll
4   be in recess.
5            (Whereupon, the within hearing was then in
6   conclusion at 10:11 a.m.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

18

```
 1                  TRANSCRIBER'S CERTIFICATION
 2   I certify that the foregoing is a correct transcript to the
 3   best of my ability to hear and understand the audio recording
 4   and based on the quality of the audio recording from the
 5   above-entitled matter.
 6
 7   /s/ Dyann Labo                    June 17, 2019
 8   Signature of Transcriber          Date
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```